### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

---

WILLIAM W. MCGEE, on behalf of himself
and all others similarly situated,

                  Plaintiff,

     -against-

CONTINENTAL TIRE NORTH AMERICA,
INC.

               Defendant.

Civil Action No. 2:06-CV-06234
(GEB) (CCC)

---

# SETTLEMENT AGREEMENT

## TABLE OF CONTENTS

| Section | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | DEFINITIONS | 4 |
| III. | RELIEF TO THE CLASS | 10 |
| IV. | NOTICE TO THE CLASS AND COMMUNICATIONS WITH CLASS MEMBERS | 14 |
| V. | REQUESTS FOR EXCLUSION | 19 |
| VI. | OBJECTIONS TO SETTLEMENT | 20 |
| VII. | RELEASE AND WAIVER | 21 |
| VIII. | ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS | 26 |
| IX. | PRELIMINARY APPROVAL, FINAL ORDER AND JUDGMENT, AND RELATED ORDERS | 27 |
| X. | MODIFICATION OR TERMINATION OF THIS AGREEMENT | 29 |
| XI. | GENERAL MATTERS AND RESERVATIONS | 32 |

## TABLE OF EXHIBITS

**Document**                                                    **Exhibit Number**

Class Notice and Claim Form .................................................................................1

Escrow Agreement.................................................................................................2

Final Order ............................................................................................................3

Final Judgment......................................................................................................4

Preliminary Approval Order .................................................................................5

Summary Settlement Notice .................................................................................6

Notice and Settlement Administrator's Affidavit ................................................7

Confidentiality Agreement....................................................................................8

IT IS HEREBY STIPULATED AND AGREED, by, between and among Plaintiffs William W. McGee and Robert Reibstein and Continental Tire North America, Inc., with all terms as defined below, through their duly-authorized counsel, that the above-captioned Action, and the matters raised by the Action, are settled, compromised, and dismissed on the merits, and with prejudice, on the terms and conditions set forth in this Settlement Agreement and the release set forth herein, subject to the approval of the Court.

I. INTRODUCTION

A. On December 27, 2006, Plaintiff McGee filed a class action complaint captioned McGee v. Continental Tire in the United States District Court for the District of New Jersey. Plaintiff McGee alleged that, among other things, he purchased a Chrysler 300C equipped with the Eligible Tires in December 2004. Plaintiff McGee filed his Action on behalf of himself and others similarly situated and sought to certify two classes: (i) a class of all persons in New Jersey who purchased Eligible Tires (or received Eligible Tires as part of an automobile purchase or lease transaction), from 2004 to present; and (ii) a class of all persons in the United States who purchased Eligible Tires (or received Eligible Tires as part of an automobile purchase or lease transaction), from 2004 to present. Plaintiff McGee's counts included violations of the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2310 et seq.), breaches of express and implied warranties, and violation of the New Jersey Consumer Fraud Act (N.J.S.A. §§ 56:8-1 et seq.). Plaintiff McGee sought compensatory damages and declaratory relief, treble damages, and attorneys' fees and costs.

B. On February 28, 2007, Continental filed a Motion to Dismiss Count I (violation of the Magnuson-Moss Warranty Act) and IV (Declaratory Relief). On August 27, 2007, the Court issued a Memorandum Opinion and entered an Order denying Continental's Motion to Dismiss

and ordering Plaintiff McGee to file an Amended Complaint.   An Amended Class Action Complaint was filed on August 31, 2007.  Continental filed an Answer on September 20, 2007 and denied all material allegations in the Amended Class Action Complaint.

C.  Class Counsel also filed a motion to be appointed interim class counsel.  Continental opposed that motion and the Court denied the motion with leave to replead in an order dated August 27, 2007.

D.  At about the same time as the filing of McGee, another plaintiff, Robert Reibstein filed Reibstein v. Continental Tire North America, Inc. ("Reibstein") in the Court of Common Pleas for Philadelphia County.  This action was removed from state court to the United States District Court Eastern District of Pennsylvania on or about January 23, 2007.  The allegations in Reibstein are similar to the allegations in McGee and include: violations of the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2310 et seq.) and breaches of express and implied warranties.  The plaintiff in Reibstein sought compensatory damages, declaratory relief and attorneys' fees and costs.  The class sought to be certified in Reibstein was limited, however, to purchasers of the Eligible Tires (and persons who received Eligible Tires as part of an automobile purchase or lease transaction) in Pennsylvania from 2004 to the present.

E.  There was jurisdictional motion practice in Reibstein.  A Motion to Remand was denied on April 3, 2007.  An Amended Class Action Complaint was filed in Reibstein on April 26, 2007.  On June 15, 2007, Continental filed a Motion to Dismiss the Amended Complaint, which, to date, has not been decided.

F.  Continental AG, the German parent company of Continental, was originally named in both McGee and Reibstein.  However, after discussions, Continental AG was dismissed without prejudice by Stipulation on July 2, 2007 in McGee and June 28, 2007 in Reibstein.

G. During the pendency of the motions in <u>McGee</u> and <u>Reibstein</u>, the parties engaged in discovery and discovery-related matters. Rule 26 Initial Disclosures were exchanged by the parties in both <u>McGee</u> and <u>Reibstein</u>. Also, in July 2007, Discovery Confidentiality Orders were entered in both cases. Continental has responded to document requests, interrogatories and requests for admissions. Additionally, Continental has produced documents to Plaintiff McGee and Class Counsel has thoroughly reviewed the documents. Plaintiffs have also responded to document requests and interrogatories.

H. Discovery and Case Management Orders were entered in <u>McGee</u> on June 29, 2007 and <u>Reibstein</u> on June 25, 2007 and a subsequently issued Order filed on August 10, 2007. These deadlines were moved by agreement of the Parties to enable the Parties to conduct and complete settlement negotiations.

I. Based upon their extensive discovery, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, Plaintiffs and Class Counsel have agreed to settle the Action and the Related Action pursuant to the provisions of this Agreement, after considering, among other things: (1) the substantial benefits to Plaintiffs and the Class under the terms of this Agreement; (2) the risks, costs and uncertainty of protracted litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation; and (3) the desirability of consummating this Agreement promptly in order to provide effective relief to Plaintiffs and the Class.

J. After commencement of this Action and <u>Reibstein</u> and during the litigation and settlement negotiations, counsel for Continental conducted a thorough examination, investigation, and evaluation of the relevant law, facts and allegations to assess the merits of the

claims and potential claims to determine the strength of both defenses and liability for relief sought in the Action.

K. Continental expressly denies any wrongdoing alleged in the pleadings and does not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been or could have been alleged against it in the Action and Related Action. Even though Continental expressly denies any wrongdoing, Continental considers it desirable for the Action and Related Action to be settled and dismissed, because this settlement will finally put Plaintiffs' claims and the underlying matters to rest and will avoid the substantial expense, burdens, and uncertainties associated with the continued litigation of these claims and cases.

II. DEFINITIONS

A. As used in this Agreement and the attached exhibits (which are an integral part of this Agreement and are incorporated in their entirety by reference), the following terms have the following meanings, unless this Agreement specifically provides otherwise:

1.    "Action" means the above-captioned class action lawsuit.

2.    "Agreement" or "this Agreement" means this Settlement Agreement and the exhibits attached hereto or incorporated herein, including any subsequent amendments and any exhibits to such amendments.

3.    "Amended Complaint" means the Amended Class Action Complaint filed on or about August 31, 2007 in the Action, which was docket number 34 on the docket sheet.

4.    "Attorneys' Fees and Expenses" means such funds as may be awarded by the Court to Class Counsel to compensate them for their fees and expenses in connection with the Action and in the Related Action, as described in Section VIII of this Agreement.

5.      "Claim" means the claim or controversy of a Class Member or his or her representative submitted on a Claim Form as provided in this Agreement.

6.      "Claimant" means a Class Member who has submitted a Claim.

7.      "Claim Form" means the document, in substantially the same form, attached as Exhibit 1 to this Agreement.  The Claim Form shall, among others: (i) request certain information from the Claimant; (ii) indicate that the Claim Form is being signed under penalty of perjury, pursuant to 28 U.S.C. § 1746; and (iii) require that the Claimant either: (a) provide the requested documentation relating to the Eligible Tires at the time of the submission of the Claim Form; or (b) state that Claimants may be required to produce documents to substantiate and/or verify the information on the Claim Forms, and if the Claimants are unable to produce documents to substantiate and/or verify the information on the Claim Forms, the Claims shall be disqualified.

8.      "Claim Period" means the time period in which Class Members may submit Claims for review to the Claim Process.  The Claim Period shall run for two (2) years and shall begin on the last day to postmark timely and valid requests for exclusions.

9.      "Claim Process" means that process for submitting Claims described in this Agreement.

10.      "Class" or "Class Members" means, during the Class Period, all persons or entities that purchased or received Eligible Tires as part of an automobile purchase or lease transaction and/or purchased or received Eligible Tires to replace other tires, including, but not limited to, Eligible Tires.  The "Class" or "Class Members" does/do not include: (a) Continental or any of its Board members or executive-level officers, including its attorneys; (b) persons or entities who have a claim for personal injury or damage to property, other than for the Eligible

5

Tires themselves; (c) original equipment automobile manufacturers; (d) purchasers of Eligible Tires or of automobiles on which Eligible Tires were installed for the purpose of leasing, renting, resale or distribution; (e) the judge and magistrate judge and their immediate families presiding over the Action or the Related Action; (f) governmental entities; and (g) persons or entities that have timely and properly excluded themselves from the settlement as discussed in this Agreement.

11.    "Class Counsel" means the law firms of: (a) Lundy, Flitter, Beldecos & Berger, P.C.; and (b) Donovan Searles LLC.

12.    "Class Notice" means substantially in the form attached as Exhibit 1.

13.    "Class Period" means from January 1, 2003 up to and including the date of the first dissemination of the Summary Settlement Notice or Class Notice, whichever is earlier.

14.    "Continental" means Continental Tire North America, Inc.

15.    "Continental's Counsel" means Edwards Angell Palmer & Dodge LLP and Reed Smith LLP.

16.    "Court" means the United States District Court for the District of New Jersey.

17.    "Eligible Tire" means Continental's tires, with and without sealant, purchased or otherwise obtained as new tires by Class Members during the Class Period, as further identified as: (a) P215/65R17 98T Conti CT95 C*S with sealant; (b) P215/65R17 98T Tour CT95 CS with sealant; (c) P215/65R17 CT 95 with sealant; (d) P225/60R18 99H CH95 Conti with sealant; (e) P225/60R18 99H TL SL CH 95 with sealant; (f) P225/60R18 99H Tour CH95 CS with sealant; (g) P225/60R18 99H TL SL CH95 without sealant; and (h) P225/60R18 CH95 with and without sealant.  For illustrative purposes only and not by any way of limitation,

Continental's tires with and without sealant were original equipment on the following Chrysler (formerly DaimlerChrysler) car and truck models from model year 2003 up to and including model year 2008: (a) Charger SRT-8; (b) 300 AWD Touring; (c) 300 Sedan; (d) 300 Touring; (e) 300C Hemi AWD; (f) 300C Hemi Sedan; (g) 300C SRT-8; (h) Charger RT; (i) Charger SE; (j) Magnum R/T AWD; (k) Magnum R/T Wagon; (l) Magnum SE; (m) Magnum SRT-8; (n) Magnum SXT AWD; (o) 300C; (p) LX 300; (q) LX Magnum; (r) Magnum; (s) LX Charger; and (t) Charger.  For illustrative purposes only and not by any way of limitation, Eligible Tires may have been installed on makes and models of other cars during this same time period if the Eligible Tire(s) was/were purchased as proper replacement(s).  Eligible Tires shall not include the tires identified above that were purchased as used tires or were otherwise not new tires.

18.    "Eligible Tire Refund" means $60 for 17" tires and $120 for 18" tires, with the size of the tire identified on the Claim Form.  If no tire size is identified on the Claim Form or is not otherwise identifiable from the Claim Form, the Eligible Tire Refund shall be based on the 17" tire.

19.    "Escrow Account" means that fund established and funded pursuant to the Escrow Agreement, this Agreement and the Orders of the Court.  The Escrow Account shall constitute a "qualified settlement fund" within the meaning of Treasury Regulation Section 1.468B-1 promulgated under Section 468B of the Internal Revenue Code of 1986 as amended.

20.    "Escrow Agreement" means the agreement by and among Class Counsel, Continental's Counsel and PNC Bank, N.A with respect to the escrow of settlement funds deposited pursuant to this Agreement in the form attached hereto as Exhibit 2.

21.    "Fairness Hearing" means the hearing at or after which the Court shall make a final decision whether to approve this Agreement as fair, reasonable, and adequate.

22.     "Final Order and Judgment" means the Court's order(s) approving the settlement and this Settlement Agreement, and the judgment entered pursuant to the Court's order(s), as outlined in Section IX.B of this Agreement substantially in the forms attached hereto as Exhibits 3 and 4, respectively.

23.     "Final Settlement Date" means the date on which the Final Order and Judgment approving this Agreement becomes final.  For purposes of this Agreement:

a.  if no appeal has been taken from the Final Order and Judgment, "Final Settlement Date" means the date on which the time to appeal therefrom has expired; or

b.  if any appeal has been taken from the Final Order and Judgment, "Final Settlement Date" means the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing *en banc* and petitions for *certiorari* or any other form of review, have been finally disposed of in a manner that affirms the Final Order and Judgment; or

c.  if the Parties agree in writing, "Final Settlement Date" can occur on any other agreed date.

24.     "Notice and Settlement Administrator" means the Court-appointed third-party agent or administrator agreed to by the Parties, which Continental may retain to help implement the notice and settlement requirements of this Agreement.  The Notice and Settlement Administrator may be one or more than one person or entity.

25.     "Parties" means Plaintiffs, Class Members, and Continental, collectively, as each of those terms are defined in this Agreement.

26.     "Plaintiffs" means and includes William W. McGee and Robert Reibstein.

27.    "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving the settlement as outlined in Section IX.A of this Agreement and in the form attached hereto as Exhibit 5.

28.    "Related Action" means *Robert Reibstein v. Continental Tire North America, Inc.*, Civil Action No. 2:07-cv-302-LP pending in the United States District Court for the Eastern District of Pennsylvania.

29.    "Release" means the release and waiver set forth in Section VII of this Agreement and in the Final Order and Judgment.

30.    "Releasees" means Continental Tire North America, Inc., its past, present and future parents (including but not limited to Continental AG, and any intermediary and/or ultimate parents), officers, directors, employees, stockholders, agents, attorneys, administrators, successors, suppliers, distributors, reorganized successors, spin-offs, assigns, holding companies, related companies, subsidiaries, affiliates, joint-ventures, partners, members, divisions, predecessors, authorized dealers and all purchasers of an Eligible Tire for resale, including, without limitation, original-equipment manufacturers, including but not limited to Chrysler Corporation, tire dealerships, tire merchandisers and other retailers of the Eligible Tires.

31.    "Summary Settlement Notice" means the published summary of the Class Notice (including notice of the proposed settlement, the Fairness Hearing and Class Members' exclusion, objection and appeal rights), substantially as attached hereto as Exhibit 6.

B.    Other capitalized terms used in this Agreement but not defined in this Section II shall have the meanings ascribed to them elsewhere in this Agreement.

C.    The terms "he or she" and "his or her" include "it" or "its" where applicable.

9

III.   RELIEF TO THE CLASS

A.  Continental shall pay not less than $5 million and not more than $8 million to resolve timely and valid Claims submitted to the Claim Process.  Unless the timely, valid and approved Claims submitted amount to or exceed $8 million, all funds deposited into the Escrow Account by Continental shall be used to pay: (i) timely, valid and approved Claims; (ii) any incentive awards to Plaintiffs; (iii) Class Counsel's fees and costs awarded by the Court; (iv) any and all notice and claim processing administrative fees and costs; and (v) any other administrative- and/or bank-related applicable fees and costs, provided, however, that the Escrow Account may not be used to pay defense counsel's fees and costs.

1.    Within thirty (30) days after the entry of the Preliminary Approval Order by the Court, Continental shall deposit into the Escrow Account $5 million.  During the Claim Period, if the funds in the Escrow Account drop below $250,000, the Notice and Settlement Administrator shall notify Continental and Continental, within ten (10) business days, shall make additional $1 million deposit(s), up to the maximum of $8 million, into the Escrow Account.

2.    Any interest earned on the funds deposited into the Escrow Account shall be credited to the Class minus any fees and costs charged by the bank holding the Escrow Account, unless either: (a) this Agreement is terminated, pursuant to Section X, in which case, any funds deposited and any interest earned shall be returned to Continental; or (b) Continental pays the maximum $8 million cited in the first sentence of Section III.A.

B.  Claim Relief

1.  All Class Members may submit a Claim to the Claim Process for each Eligible Tire during the Claim Period.  The relief provided to the eligible Claimants shall depend upon the number of miles driven on the Eligible Tires prior to replacement, the number of timely and

10

valid Claims received, an offset or deduction for any prior relief paid by Continental relating to the Eligible Tires, and other relevant factors discussed in the Agreement.

2. For each Eligible Tire, eligible Claimants shall receive, subject to any timing adjustments discussed in Section III.D below, the following relief:

a. For Eligible Tires driven more than 0 miles, but less than or equal to 12,000 miles, 75% of the Eligible Tire Refund.

b. For Eligible Tires driven at least 12,001 miles, but less than or equal to 20,000 miles, 50% of the Eligible Tire Refund.

c. For Eligible Tires driven at least 20,001 miles, but less than or equal to 30,000 miles, 25% of the Eligible Tire Refund.

C. <u>Claim Form Submission and Review</u>

1. A Class Member shall be eligible for cash relief provided that the Class Member completes and timely submits the Claim Form to the Notice and Settlement Administrator, together with any required documentation, within the Claim Period demonstrating compensable damages during the Class Period to an Eligible Tire.

2. The Notice and Settlement Administrator, selected by the agreement of the Parties and approved by the Court, shall review, prepare, and forward the Claim Forms to Continental within fourteen (14) days after receipt.

3. Within ninety (90) days after receipt of Claim Forms, Continental or its agents may review the timely submitted Claim Forms and approve or contest any of the Claims, <u>provided, however,</u> that Continental's review period shall not commence any earlier than sixty (60) days after the Final Settlement Date.

11

a.     If a Claim Form is not contested by Continental, that Claim shall be paid by the Notice and Settlement Administrator as specified in Section III.D.

b.     If a Claim Form is contested by Continental, including but not limited to, requesting supporting documentation, Continental shall notify the Notice and Settlement Administrator. The Notice and Settlement Administrator shall mail, within ten (10) business days, a letter that advises the Claimant of the reason(s) why the Claim Form was contested and request, if applicable, any and all additional information and/or documentation, to validate the Claim and have it submitted for payment. The additional information and/or documentation can include, for example, receipts evidencing purchase of the Eligible Tires. The Claimant shall have thirty-five (35) days from the date of the postmarked letter sent by the Notice and Settlement Administrator to respond to the request from the Notice and Settlement Administrator and the Claimant shall be so advised.

(i)     In the event the Claimant timely provides the requested information and/or documentation, the Claim shall be deemed validated and shall be paid by the Notice and Settlement Administrator from the Escrow Account.

(ii)     In the event the Claimant does not timely and completely provide the requested information and/or documentation, the Notice and Settlement Administrator shall send the Claimant a letter stating that the Claim has been denied.

4.    The Notice and Settlement Administrator's denial of a Claim pursuant to Section III.C.3.b(ii) above is final and may not be appealed by the Claimant, Class Counsel, Continental or Continental's Counsel.

5.    The Notice and Settlement Administrator shall provide periodic updates to Class Counsel and Continental regarding Claim Form submissions beginning one week before the Fairness Hearing date and continuing on a monthly basis thereafter.

D.  Determination and Payment of Relief

12

1.   The payment of eligible Claims shall be measured according to four Claim determination periods, which shall be at the sixth, twelfth, eighteenth and twenty-fourth month marks during the Claim Period and shall be measured from the last day to postmark timely and valid requests for exclusions, but in no event shall any payment for Claims be made prior to the occurrence of the Final Settlement Date.

2.   If, at the end of six months after the beginning of the Claim Period, the total amount of timely, valid and approved Claims is less than $4 million, all of the pending Claims in this group shall be paid in full.

3.   If the total amount of timely, valid and approved Claims to be paid during the sixth through twelfth month period is less than $2 million, all of the pending Claims in this group shall be paid in full.

4.   If the total amount of timely, valid and approved Claims to be paid during the twelfth through eighteenth month period is less than $1 million, all of the pending Claims in this group shall be paid in full.

5.   If the total amount of timely, valid and approved Claims to be paid during the eighteenth through twenty-fourth month period is less than $1 million, all of the pending Claims in this group shall be paid in full.

6.   If, during any of the four Claim determination periods, the total amount of timely, valid and approved Claims exceeds the amount specified for that reporting period, then the latest filed Claims, the payment of which would exceed the specified amount, shall be placed into the next Claim determination period for payment until the maximum amount specified for the affected Claim determination period is not exceeded.  If, during the last Claim determination period, there are too many eligible Claimants, each Claimant's award shall be reduced pro rata.

7. Not later than sixty (60) days after the end of each of the Claim determination periods identified in Section III.D, the Claimant shall be notified of the relief he or she has been awarded along with a check in that amount, provided, however, that, if there are a large number of Claims to be paid during any of the Claim determination periods, the Notice and Settlement Administrator shall use its best efforts to provide relief to each eligible Class Member within that sixty (60) day period. The Parties shall agree upon the form and contents of the award letter and check.

8. If, after the distribution of funds from the Escrow Account, there are any funds remaining and the Escrow Account has paid out less than $5 million for all purposes for which the Escrow Account has been established, the Parties may either: (a) return to the Court with a recommendation for their distribution as part of a cy pres award; or (b) upon mutual written agreement of the Parties and to the extent that the amount expended from the Escrow Account does not exceed $5 million, agree to extend the period in which Claims are submitted to the Claims Process and paid from the Escrow Account.

IV.   NOTICE TO THE CLASS AND COMMUNICATIONS WITH CLASS MEMBERS

A. Duties of the Notice and Settlement Administrator

1. Upon consultation and approval of Class Counsel, Continental shall retain a Notice and Settlement Administrator to help implement the terms of this Agreement. Following the Court's preliminary approval of this Agreement, the Notice and Settlement Administrator shall disseminate notice to the Class as provided for in the Affidavit of the Notice and Settlement Administrator, attached as Exhibit 7 to this Agreement, as specified in the Preliminary Approval Order and the Agreement, and in order to comply with all applicable laws, including, but not limited to, the Due Process Clause of the Constitution.

14

2.  The Notice and Settlement Administrator shall be responsible for, without limitation: (a) printing, mailing or arranging for the mailing of the Class Notice; (b) arranging for the publication of the Summary Settlement Notice; (c) handling returned mail not delivered to Class Members; (d) attempting to obtain updated address information for any Class Notice returned without a forwarding address; (e) making any additional mailings required under the terms of this Agreement; (f) responding to requests for Class Notice; (g) receiving and maintaining on behalf of the Court any Class Member correspondence regarding requests for exclusion and objections to the settlement; (h) forwarding written inquiries to Class Counsel or its designee for a response, if warranted; (i) establishing a post office box for the receipt of any correspondence; (j) responding to requests from Class Counsel and/or Continental's Counsel; (k) establishing a web site and toll-free voice response unit with message capabilities to which Class Members may refer for information about the Action and the settlement; and (l) otherwise implementing and/or assisting with the dissemination of the notice and/or administration of the settlement.

3.  If the Notice and Settlement Administrator makes a material or fraudulent misrepresentation to, or willfully conceals requested material information from, Class Counsel, Continental, or Continental's Counsel, then the Party to whom the misrepresentation is made shall have the right to demand that the Notice and Settlement Administrator immediately be replaced.  If the Notice and Settlement Administrator fails to perform adequately on behalf of Continental or the Class, the Parties may agree to remove the Notice and Settlement Administrator.  The other Party shall not unreasonably withhold consent to remove the Notice and Settlement Administrator, but this shall occur only after Continental and Class Counsel have attempted to resolve any disputes regarding the retention or dismissal of the Notice and

Settlement Administrator in good faith, and, if they are unable to do so, after the matter has been referred to the Court for resolution.

4. The Notice and Settlement Administrator may retain one or more persons to assist in the completion of his or her responsibilities.

5. Not later than ten (10) days before the date of the Fairness Hearing, the Notice and Settlement Administrator shall file with the Court: (a) a list of those persons who had opted out or excluded themselves from the settlement; (b) a list of those persons or entities who have objected to the settlement; and (c) the results of the dissemination of the notice.

6. The Notice and Settlement Administrator shall provide copies of any requests for exclusion, objections, and/or related correspondence to Class Counsel and Continental's Counsel.

B. The Class Notice:

1. Dissemination of the Class Notice

a. Beginning not later than thirty (30) days after entry of the Preliminary Approval Order and which will be substantially completed not later than fifty-one (51) days after entry of the Preliminary Approval Order and subject to the requirements of the Preliminary Approval Order, the Settlement Agreement and the Affidavit of the Notice and Settlement Administrator, the Notice and Settlement Administrator shall send the Class Notice by first-class U.S. mail, postage prepaid, to: (i) each reasonably identifiable Class Member's last known address reasonably obtainable from Chrysler Corporation, Tire Rack, Eligible Tire retailers, and internal Continental customer return profiles; and (ii) each appropriate State and Federal official, as specified in 28 U.S.C. § 1715, and shall otherwise comply with Fed. R. Civ. P. 23 and any

16

other applicable statute, law, or rule, including, but not limited to, the Due Process Clause of the United States Constitution.

b. The Notice and Settlement Administrator(s) shall: (a) re-mail any notices returned by the United States Postal Service with a forwarding address that are received by the Notice and Settlement Administrator at least 35 days before the Fairness Hearing; (b) research any returned notices that do not include a forwarding address, or retain one or more address research firms to conduct such research; and (c) provide the addresses of any returned notices to the address research firm, if applicable, as soon as practicable following receipt. In addition, the address research firm, if retained, shall return to the Notice and Settlement Administrator, as soon as is practicable, either an updated address or a statement that, following due research, it has not been able to update that address, and the Notice and Settlement Administrator shall re-mail notice to any Class Member for whom the address research firm provides an updated address, so long as the updated address is provided to the Notice and Settlement Administrator at least 35 days before the Fairness Hearing, provided, however, that the Notice and Settlement Administrator shall not be obligated to duplicate the efforts of an address research firm that undertook a search for the Class Member's address prior to the initial mailing.

2. Contents of the Class Notice:  The Class Notice, in a form substantially similar to the one attached to the Agreement as Exhibit 1, shall advise Class Members of the following:

a. General Terms:  The Class Notice shall contain a plain and concise description of the nature of the Action, the history of the litigation of the claims, the preliminary certification of the Class, and the proposed settlement, including information on the identity of

Class Members, how the proposed settlement would provide relief to the Class and Class Members, what claims are released under the proposed settlement and other relevant terms and conditions.

b.  Opt-Out Rights:   The Class Notice shall inform Class Members that they have the right to opt out of the settlement.  The Class Notice shall provide the deadlines and procedures for exercising this right.

c.  Objection to Settlement: The Class Notice shall inform Class Members of their right to object to the proposed settlement and appear at the Fairness Hearing. The Class Notice shall provide the deadlines and procedures for exercising these rights.

d.  Fees and Expenses:      The Class Notice shall inform Class Members about the amounts being sought by Class Counsel as Attorneys' Fees and Expenses and shall explain that Continental will pay the fees and expenses awarded to Class Counsel in addition to amounts being made available for relief to Class Members and without reducing such relief amounts.

e.  Claim Form:      The Class Notice shall include the Claim Form, which shall inform the Class Member that he or she must fully complete and timely return the Claim Form within the Claim Period to be eligible to obtain a cash recovery.

C.  The Summary Settlement Notice:  Beginning not later than thirty (30) days after entry of the Preliminary Approval Order and which will be substantially completed not later than fifty-one (51) days after entry of the Preliminary Approval Order, the Notice and Settlement Administrator shall publish the Summary Settlement Notice as described in the Affidavit of the Notice and Settlement Administrator and in such additional newspapers or magazines as shall be

agreed upon by the Parties.  The form of Summary Settlement Notice agreed upon by the Parties is in the form substantially similar to the one attached to the Agreement as Exhibit 6.

     D.  <u>Web site</u>:  The Notice and Settlement Administrator shall establish a stand-alone web site that will inform Class Members of the terms of this Agreement, their rights, dates and deadlines and related information.  The web site shall include, as PDFs, materials agreed to by the Parties.

     E.  <u>Toll-Free Telephone Number</u>:  The Notice and Settlement Administrator shall establish a toll-free telephone number that will provide settlement-related information to Class Members.

     F.  If the Parties decide to issue a written statement, press release or other media notice in connection with the Agreement, the Parties shall mutually agree upon the contents and dissemination.  Any subsequent written or oral statements, press release or other media notice relating to the Agreement shall be exchanged by the Parties sufficiently in advance of public release to provide the other Party with adequate time to prepare its own statement.  Class Counsel and Continental shall ensure that any comments about or descriptions of the Agreement in the media or in any other public forum are balanced, fair, and accurate.

V.     REQUESTS FOR EXCLUSION

     A.  Any Class Member who wishes to be excluded from the Class must mail a written request for exclusion to the Notice and Settlement Administrator at the address provided in the Class Notice, postmarked no later than thirty (30) days before the Fairness Hearing, or as the Court otherwise may direct, and specifying that he or she wants to be excluded.  The Notice and Settlement Administrator shall forward copies of any written requests for exclusion to Class Counsel and Continental's Counsel.  A list reflecting all requests for exclusion shall be filed with

the Court by the Notice and Settlement Administrator no later than one week before the Fairness Hearing.

B. Any potential Class Member who does not file a timely written request for exclusion as provided in the preceding Section V.A shall be bound by all subsequent proceedings, orders, and judgments, including, but not limited to, the Release, in this Action, even if he or she has litigation pending or subsequently initiates litigation against Continental relating to the claims and transactions released in this Action and Related Action.  To the extent practicable, the Notice and Settlement Administrator shall use reasonable efforts to serve the Class Notice on legal counsel for all Class Members who have litigation against Continental that involve the Eligible Tires.  Continental will promptly direct the Notice and Settlement Administrator to serve the Class Notice on counsel for any Class Members who subsequently initiate litigation, arbitration, or other proceedings against Continental relating to claims alleging events occurring during the Class Period, the Eligible Tires, and/or otherwise involving the Release.

VI.    OBJECTIONS TO SETTLEMENT

A. Any Class Member who has not filed a timely written request for exclusion and who wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed settlement, or to the award of Attorneys' Fees and Expenses, must deliver to one of the Class Counsel identified in the Class Notice and to Continental's Counsel, and file with the Court, no later than thirty (30) days before the Fairness Hearing or as the Court otherwise may direct, a written statement of the objections, as well as the specific reason(s), if any, for each objection, including any legal support the Class Member wishes to bring to the Court's attention, any evidence or other information the Class Member wishes to introduce in support of the objections, a statement of whether the Class Member intends to appear and argue at the Fairness Hearing,

and the Class Member's tire size(s).  Class Members may do so either on their own or through an attorney retained at their own expense.

B.  Any Class Member who files and serves a written objection, as described in the preceding Section VI.A, may appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed settlement, or to the award of Attorneys' Fees and Expenses.  Class Members or their attorneys who intend to make an appearance at the Fairness Hearing must deliver a notice of intention to appear to one of the Class Counsel identified in the Class Notice and to Continental's Counsel, and file said notice with the Court, no later than thirty (30) days before the Fairness Hearing, or as the Court may otherwise direct.

C.  Any Class Member who fails to comply with the provisions of Sections VI.A and VI.B above shall waive and forfeit any and all rights he or she may have to appear separately and/or to object, and shall be bound by all the terms of this Agreement and by all proceedings, orders and judgments, including, but not limited to, the Release, in the Action.

D.  Any Class Member who objects to the settlement shall be entitled to all of the benefits of the settlement if this Agreement and the terms contained therein is approved, as long as the objecting Class Member complies with all requirements of this Agreement applicable to Class Members, including the timely submission of Claim Forms and other requirements discussed herein.

VII.  RELEASE AND WAIVER

A.  The Parties agree to the following release and waiver, which shall take effect upon entry of the Final Order and Judgment.

B.  Release And Waiver of Claims

21

1.  In consideration for the settlement benefits described in this Agreement, Plaintiffs and the Class, on behalf of themselves, their heirs, guardians, assigns, executors, administrators, predecessors, and successors, hereby release, acquit, and discharge the Releasees from and for any and all manner of claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, contracts, agreements, executions, promises, damages, liens, judgments and demands whatsoever, both at law and in equity, whether past, present or future, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, or any claim that Plaintiffs or Class Members ever had, now have, may have, or hereafter can, shall or may ever have in any other court, tribunal, arbitration panel, commission, agency, or before any governmental and/or administrative body, or any other adjudicatory body, on the basis of, connected with, arising from or in any way whatsoever relating to the Action, the Related Action, and/or the Eligible Tires, and more particularly, but without in any way limiting the generality of the foregoing, arising from, directly or indirectly, or in any way whatsoever pertaining or relating to:

a.  the design, testing, marketing, advertising, promotion, manufacture, distribution, operation, performance, functionality, notification, replacement, sale and/or resale by the Releasees of the Eligible Tires;

b.  the purchase, ownership, or use by Plaintiffs and/or Class Members of the Eligible Tires;

c.  any violation of 18 U.S.C. §§ 1961-68 (Racketeer Influenced and Corrupt Organizations Act), or any claim for conspiring to violate same relating to the Eligible Tires;

22

d.  any claims for rescission or restitution or for all damages of any kind, claims for fraud, fraudulent concealment, consumer fraud, civil conspiracy, negligence, misrepresentation, bad faith, strict liability and/or negligent misrepresentation relating to the Eligible Tires;

e.  any violation of Ca. Bus & Prof. Code §§ 17200 - 17500, N.J.S.A. 56:8-1 *et seq.*, or any other deceptive or unfair business practices, fraud or consumer protection statute existing in the remaining 48 states, the District of Columbia, the Commonwealth of Puerto Rico or the Territory of Guam relating to the Eligible Tires;

f.  any violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, the Uniform Commercial Code, any similar federal, state or local statutes, codes, or regulations, or any warranties required or governed by any federal, state, administrative, agency, common or local law, code, or regulation relating to warranties or tires;

g.  any claims for contribution or indemnity relating to the Eligible Tires;

h.  extra-contractual damages, compensatory damages, exemplary damages, punitive damages and/or damage multipliers, disgorgement, declaratory relief, unjust enrichment, emotional distress, or attorneys' fees, judgment and expenses of any type whatsoever relating to the Eligible Tires;

i.  any of the consideration given by the Releasees to Plaintiffs or Class in connection with this Agreement;

j.  any allegation that the Releasees misinformed, misled or deceived Plaintiffs or Class Members regarding safety, durability, performance, and/or longevity relating to the Eligible Tires;

k.  any allegation that the Releasees failed to warn and/or adequately disclose that the Eligible Tires would incur premature and/or abnormal tread wear;

l.  any allegation regarding increased costs, servicing requirements, and/or duration or longevity limitations of the Eligible Tires;

m.  any allegation that the Releasees failed to conduct appropriate and/or adequate studies or testing of the Eligible Tires;

n.  any allegation that the Releasees failed to honor or abide by the terms of express or implied warranties that would have required them to reimburse Plaintiffs or Class Members and/or repair, correct or replace any Eligible Tires;

o.  any allegation of engaging in unconscionable commercial practices relating to the Eligible Tires or the allegations in the Action or the Related Action; and

p.  any other claims asserted, or that could have been asserted, or which relate to the allegations in this Action and/or the Related Action.

2.  Notwithstanding the language in this section and/or this Agreement, the Plaintiffs and the Class are not releasing any claims of personal injury or wrongful death or property damage other than to the Eligible Tires themselves.

3.  Plaintiffs and all Class Members represent and warrant that they are the sole and exclusive owner of all claims that they are releasing under this Agreement.  Plaintiffs and all Class Members further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action, including without limitation, any claim for benefits, proceeds or value under the Action, and that Plaintiffs and all Class Members are

not aware of anyone other than themselves claiming any interest, in whole or in part, in the Action or in any benefits, proceeds or values under the Action.

4. Plaintiffs and all Class Members further represent that there are no outstanding liens or claims against the Action and/or settlement proceeds, it being recognized that Plaintiffs and all Class Members will solely be charged with the responsibility to satisfy any other liens or claims asserted against the Action, and/or settlement proceeds or arising in any way from this Agreement.

5. Without in any way limiting its scope, this Release covers by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, costs or any other fees, costs, and/or disbursements incurred by Class Counsel, or by Plaintiffs or the Class Members, except to the extent otherwise specified in the Agreement.

6. Plaintiffs and all Class Members expressly agree that this Release will be, and may be raised as, a complete defense to and will preclude any action or proceeding encompassed by this Release, or arising out of or relating to the allegations in the Action and/or the Related Action.

7. Plaintiffs and all Class Members expressly understand and acknowledge that certain principles of law, including, but not limited to, Section 1542 of the Civil Code of the State of California, provide that "a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." To the extent that anyone might argue that these principles of law are applicable – notwithstanding that the Class and the Releasees have chosen New Jersey law to govern this Agreement – Plaintiffs

and all Class Members hereby agree that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived, relinquished and released by Plaintiffs and all Class Members.

8.   Nothing in this Release shall preclude any action to enforce the terms of the Agreement, including participation in any of the processes detailed therein.

9.   Plaintiffs and all Class Members hereby agree and acknowledge that the provisions of this Release together constitute an essential and material term of the Agreement and shall be included in any Final Order and Judgment entered by the Court.

VIII.   ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS

A.   Class Counsel agrees to make and Continental agrees not to oppose, an application for an award of Attorneys' Fees and Expenses in the Action that will not exceed $2,250,000.00 in fees and expenses, which shall be the sole aggregate compensation for all attorneys representing the Class in the Action and/or Related Action.

B.   Class Counsel, in their sole discretion, shall allocate and distribute this award of Attorneys' Fees and Expenses among all of the counsel who have acted on behalf of the Class.

C.   Continental shall pay the entire Attorneys' Fees and Expenses awarded by the Court within thirty (30) days after the occurrence of the Final Settlement Date.

D.   Class Counsel for Plaintiffs may petition the Court for incentive awards of up to $3,500.00 per Plaintiff.  The purpose of such awards, if any, shall be to compensate the named plaintiffs/class representatives for efforts and risks taken by them on behalf of the Class.  Any incentive awards made by the Court shall be paid solely from the Escrow Account, subject to the provisions of section III.A.

26

E.  Continental shall not be liable for or obligated to pay any fees, expenses, costs, or disbursements to, or incur any expense on behalf of, any person or entity, either directly or indirectly, in connection with this Action and/or the Related Action, this Settlement Agreement, or the proposed settlement, other than the amount or amounts expressly provided for in this Settlement Agreement.

IX.   PRELIMINARY APPROVAL, FINAL ORDER AND JUDGMENT AND RELATED ORDERS

A.  The Parties shall seek, within fifteen (15) days after the execution of this Agreement, a Preliminary Approval Order in a form substantially similar to Exhibit 5 from the Court.  The Preliminary Approval Order shall, among other things:

1.  Certify a nationwide settlement-only class, approve Plaintiff McGee as a class representative, appoint Plaintiff Reibstein as a Class Representative, and appoint their counsel as Class Counsel, pursuant to Fed. R. Civ. P. 23;

2.  Preliminarily approve the settlement;

3.  Require the dissemination of the notice and the taking of all necessary and appropriate steps to accomplish this task;

4.  Determine that the notice complies with all legal requirements, including, but not limited to, the Due Process Clause of the United States Constitution;

5.  Schedule a date and time for a Fairness Hearing to determine whether the Preliminary Approval Order should be finally approved by the Court;

6.  Require Class Members who wish to exclude themselves to submit an appropriate and timely written request for exclusion as directed in the Agreement and Class Notice and that a failure to do so shall bind those Class Members who remain in the Class;

7. Require Class Members who wish to object to the Agreement to submit an appropriate and timely written statement as directed in the Agreement and Class Notice;

8. Require Class Members who wish to appear to object to the Agreement to submit an appropriate and timely written statement as directed in the Agreement and Class Notice;

9. Require attorneys representing Class Members, at the Class Members' expense, to file a notice of appearance as directed in the Agreement and Class Notice;

10. Issue a preliminary injunction;

11. Appoint the Notice and Settlement Administrator;

12. Authorize Continental to take all necessary and appropriate steps to establish the means necessary to implement the Agreement;

13. Issue a protective order requiring the execution of a Confidentiality Agreement, attached hereto as Exhibit 8, for those Class Members or their counsel that seek to review the documents produced in this Action; and

14. Issue other related orders to effectuate the preliminary approval of the Agreement.

B. After the Fairness Hearing, the Parties shall seek to obtain from the Court a Final Order and Judgment in the forms substantially similar to Exhibits 3 and 4, respectively. The Final Order and Judgment shall, among other things:

1. Find that the Court has personal jurisdiction over all Class Members, the Court has subject matter jurisdiction over the claims asserted in the Amended Complaint and/or Action, and that venue is proper.

2. Finally approve the Agreement and settlement, pursuant to Fed. R. Civ. P. 23;

3.  Finally certify the Class for settlement purposes only;

4.  Find that the notice and the notice dissemination methodology complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution;

5.  Dismiss the Action with prejudice;

6.  Incorporate the Release set forth in the Agreement and make the Release effective as of the date of the Final Order and Judgment;

7.  Issue a permanent injunction;

8.  Authorize the Parties to implement the terms of the Agreement;

9.  Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of the Agreement, the Final Order and Judgment, and for any other necessary purpose; and

10. Issue related orders to effectuate the final approval of the Agreement and its implementation.

X.     MODIFICATION OR TERMINATION OF THIS AGREEMENT

A. The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however that, after entry of the Final Order and Judgment, the Parties may by written agreement effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Class or approval by the Court if such changes are consistent with the Court's Final Order and Judgment and do not limit the rights of Class Members under this Agreement.

B. This Agreement shall terminate at the discretion of either Continental or the Plaintiffs, through Class Counsel, if: (1) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Agreement or the proposed settlement that the terminating

party in its (or their) sole judgment and discretion reasonably determine(s) is material, including, without limitation, the terms of relief, the findings, or conclusions of the Court, the provisions relating to notice, the definition of the Class, and/or the terms of the Release; or (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Final Order and Judgment, or any of the Court's findings of fact or conclusions of law, that the terminating party in its (or their) sole judgment and discretion reasonably determine(s) is material. The terminating party must exercise the option to withdraw from and terminate this Agreement, as provided in this Section X, no later than 20 days after receiving notice of the event prompting the termination. The Parties will be returned to their positions status quo ante.

C. No later than 20 days after receiving notice of the event prompting the termination, Continental may unilaterally withdraw from and terminate this Agreement if:

1. those Class Members who elect to exclude themselves from the Class represent more than 1% of the total number of tires sold by Continental during the Class Period, provided, however, that in order to exercise the right to terminate the Agreement under this subsection, Continental must do so prior to the Fairness Hearing;

2. any state attorney general, federal agency, or regulatory or administrative authority institutes a proceeding against Continental arising out of or otherwise related to the Release and any of the terms or conditions of this Agreement; or

3. any federal or state regulator or agency: (a) objects either to any aspect or term of the Agreement; or (b) requires any modification to the Agreement, including without limitation, a constriction or expansion of the scope of the contemplated relief that Continental in its sole discretion deems reasonably material.

D. If an option to withdraw from and terminate this Agreement arises under Sections X.B and X.C above, neither Continental nor Plaintiffs are required for any reason or under any circumstance to exercise that option and any exercise of that option shall be in good faith.

E. If this Agreement is terminated pursuant to Sections X.B and X.C, above, then:

1.  this Agreement shall be null and void and shall have no force or effect, and no Party to this Agreement shall be bound by any of its terms, except for the terms of Sections X.E herein;

2.  the Parties will petition to have any stay orders entered pursuant to this Agreement lifted;

3.  all of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of Continental, Plaintiffs or any Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement, except that the Parties shall cooperate in requesting that the Court set a new scheduling order such that neither Party's substantive or procedural rights is prejudiced by the attempted settlement;

4.  Releasees, as defined in Section II, above, including, without limitation, Continental, expressly and affirmatively reserve all defenses, arguments, and motions as to all claims that have been or might later be asserted in the Action, including, without limitation, the argument that the Action or any other Related Action may not be litigated as a class action;

5.  Plaintiffs and all Class Members, on behalf of themselves and their heirs, assigns, executors, administrators, predecessors, and successors, expressly and affirmatively reserve and do not waive all motions as to, and arguments in support of, all claims, causes of actions or remedies that have been or might later be asserted in the Action and/or the Related

Action including, without limitation, any argument concerning class certification, consumer fraud, and treble or other damages;

      6.   neither this Agreement, the fact of its having been made, nor the negotiations leading to it, nor any discovery or action taken by a Party or Class Member pursuant to this Agreement shall be admissible or entered into evidence for any purpose whatsoever;

      7.   any settlement-related order(s) or judgment(s) entered in this Action after the date of execution of this Agreement shall be deemed vacated and shall be without any force or effect;

      8.   all costs incurred in connection with the settlement, including, but not limited to, notice, publication, and customer communications, will be borne by Continental.  Neither Plaintiffs nor Class Counsel shall be responsible for any of these costs or other settlement-related costs, except as otherwise provided for in the Agreement.  Continental is not responsible for any of Class Counsel's attorneys' fees and/or internal costs for the settlement, including, but not limited to, any investigative, expert and/or actuarial costs, or any other claims for fees or expenses; and

      9.   notwithstanding the terms of this paragraph, if settlement is not consummated, Class Counsel may include any time spent in settlement efforts as part of any statutory fee petition filed at the conclusion of the case, and Continental reserves the right to object to the reasonableness of such requested fees.

XI.    GENERAL MATTERS AND RESERVATIONS

    A. The obligation of the Parties to conclude the proposed settlement is and shall be contingent upon each of the following:

1.  entry by the Court of the Final Order and Judgment approving the settlement, from which the time to appeal has expired or which has remained unmodified after any appeal(s);

2.  resolution, acceptable to Continental, of any governmental, regulatory, or other federal, state or local governmental issues presented by the proposed settlement; and

3.  any other conditions stated in this Agreement.

B.  The Parties and their counsel agree to keep the existence and contents of this Agreement confidential until the date on which the Motion for Preliminary Approval is filed; provided, however, that this section shall not prevent Continental from disclosing such information, prior to the date on which notice is first mailed to the Class, to state and federal agencies, independent accountants, actuaries, advisors, financial analysts, insurers or attorneys, nor shall it prevent the Parties and their counsel from disclosing such information to persons or entities (such as experts, courts, co-counsel, and/or administrators) to whom the Parties agree disclosure must be made in order to effectuate the terms and conditions of this Agreement.

C.  Plaintiffs and Class Counsel agree that the confidential information made available to them through the settlement process was made available, as agreed to, on the condition that neither Plaintiffs nor their counsel may disclose it to third parties (other than experts or consultants retained by Plaintiffs in connection with this case); that it not be the subject of public comment; that it not be used by Plaintiffs or Class Counsel in any way in this litigation should the settlement not be achieved, and that it is to be returned if a settlement is not concluded; provided, however, that nothing contained herein shall prohibit Plaintiffs from seeking such information through formal discovery if not previously requested through formal discovery or

from referring to the existence of such information in connection with the settlement of this litigation.

D. All information provided by Continental to Plaintiffs, Class Counsel, any individual Class Member, counsel for any individual Class Member, and/or administrators, pursuant to the implementation of this Agreement, constitutes trade secrets and highly confidential and proprietary business information and shall be deemed "Confidential" pursuant to the protective orders that have been or will be entered in the Action and in the Related Action, and shall be subject to all of the provisions thereof. Any materials inadvertently produced shall be promptly returned to Continental's Counsel, and there shall be no implied or express waiver of any privileges, rights and defenses.

E. Within ninety (90) days after the Final Settlement Date (unless the time is extended by agreement of the Parties), Class Counsel, Class Members, their counsel, and any expert or other consultant employed in such capacity or any other individual with access to documents provided by Continental shall return to Continental's Counsel, at Continental's cost, all such documents and materials (and all copies of such documents in whatever form made or maintained) produced by Continental in the Action and/or the Related Action and any and all handwritten notes summarizing, describing or referring to such documents; provided, however, that this section shall not apply to any documents made part of the record in connection with a Claim, nor to any documents made part of a Court filing, nor to Class Counsel's work product. Continental's Counsel agrees to hold all documents returned by Class Counsel, Class Members, their counsel, and any expert or other consultant or any other individual with access to documents provided by Continental until ninety days after the end of the Claim Period. Six months after the completion of the Claim Process, the Notice and Settlement Administrator shall

34

return all documents and materials to Continental and Plaintiffs' Counsel that produced the documents and materials, except that it shall destroy any and all Claims, including any and all information and/or documentation submitted by Class Members.

F. Continental's execution of this Agreement shall not be construed to release - and Continental expressly does not intend to release - any claim Continental may have or make against any insurer for any cost or expense incurred in connection with this settlement, including, without limitation, attorneys' fees and costs.

G. Class Counsel represent that: (1) they are authorized by the Plaintiffs to enter into this Agreement on behalf of Plaintiffs, their respective present or past law firms and any other attorneys who have represented or who now represent Plaintiffs in this Action with respect to the claims in this Action; and (2) they are seeking to protect the interests of the Class.

H. Plaintiffs represent and certify that: (1) they have agreed to serve as representatives of the Class proposed to be certified herein; (2) they are willing, able, and ready to perform all of the duties and obligations of representatives of the Class, including, but not limited to, being involved in discovery and fact finding; (3) they have read the pleadings in this Action and the Related Action, including the complaint and/or the Amended Complaint, or has had the contents of such pleadings described to them; (4) they are familiar with the results of the fact-finding undertaken by Class Counsel; (5) they have been kept apprised of settlement negotiations among the Parties, and have either read this Agreement, including the exhibits annexed hereto, or have received a detailed description of it from Class Counsel and they have agreed to its terms; (6) they have consulted with Class Counsel about the Action, the Related Action, this Agreement and the obligations imposed on representatives of the Class; (7) they have authorized Class Counsel to execute this Agreement on their behalf; and (8) they shall remain and serve as

35

representatives of the Class until the terms of this Agreement are effectuated, this Agreement is terminated in accordance with its terms, or the Court at any time determines that said Plaintiff(s) cannot represent the Class.

     I.  Continental represents and warrants that the individual(s) executing this Agreement is authorized to enter into this Agreement on behalf of Continental.

     J.  This Agreement, complete with its exhibits, sets forth the sole and entire agreement among the Parties with respect to its subject matter, and it may not be altered or modified except by written instrument executed by Class Counsel and Continental's Counsel.  The Parties expressly acknowledge that no other agreements, arrangements, or understandings not expressed in this Agreement exist among or between them and that in deciding to enter into this Agreement, they rely solely upon their judgment and knowledge.  This Agreement supersedes any prior agreements, understandings, or undertakings (written or oral) by and between the Parties regarding the subject matter of this Agreement.

     K.  This Agreement and any amendments thereto shall be governed by and interpreted according to the law of the State of New Jersey, excluding its conflict of laws provisions.

     L.  Any disagreement and/or action to enforce this Agreement shall be commenced and maintained only in the Court in which this Action is pending.

     M.  Whenever this Agreement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by facsimile and/or next-day (excluding Sunday) express delivery service as follows:

          1.  If to Continental, then to:

               John P. Hooper
               Reed Smith
               599 Lexington Avenue
               22nd Floor

New York, New York 10022
Tel. 212-205-6125
Fax 212-521-5450

with a copy to:

Continental Tire, North America, Inc.
Office of the General Counsel
1800 Continental Blvd.
Charlotte, North Carolina 28273

2.  If to Plaintiffs, then to:

Cary L. Flitter
Lundy, Flitter, Beldecos & Berger, P.C.
Five Greentree Center
Suite 302
Marlton, New Jersey
Tel. 856-338-1300
Fax 856-338-1288

N.  All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Agreement or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.  As used in this section "legal holiday" includes New Year's Day, Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Patriot's Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President or the Congress of the United States.

O. The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

P. The Class, Plaintiffs, Class Counsel, Continental and/or Continental's Counsel shall not be deemed to be the drafter of this Agreement or of any particular provision, nor shall they argue that any particular provision should be construed against its drafter or otherwise resort to the contra proferentem canon of construction. All Parties agree that this Agreement was drafted by counsel for the Parties during extensive arm's length negotiations. No parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Agreement was made or executed.

Q. The Parties expressly acknowledge and agree that this Agreement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state. In no event shall this Agreement, any of its provisions or any negotiations, statements or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to enforce this Agreement or the rights of the Parties or their counsel. Without limiting the foregoing, neither this Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence or an admission or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to,

Releasees, Plaintiffs, or the Class or as a waiver by Releasees, Plaintiffs or the Class of any applicable privileges, claims or defenses.

R.  Plaintiffs expressly affirm that the allegations contained in the Amended Complaint were made in good faith and have a basis in fact, but consider it desirable for the Action to be settled and dismissed because of the substantial benefits that the proposed settlement will provide to Class Members.

S.  The Parties, their successors and assigns, and their counsel undertake to implement the terms of this Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Agreement.

T.  The waiver by one Party of any breach of this Agreement by another Party shall not be deemed a waiver of any prior or subsequent breach of this Agreement.

U.  If one Party to this Agreement considers another Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

V.  No opinion concerning the tax consequences of the proposed settlement to individual Class Members is given or will be given by Continental, Continental's Counsel, Plaintiffs or Class Counsel, nor are any representations or warranties in this regard made by virtue of this Agreement.  The Class Notice shall direct Class Members to consult their own tax advisors regarding the tax consequences of the proposed settlement, including any payments, or credits provided hereunder, and any tax reporting obligations they may have with respect thereto.  Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the

Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

W. The Parties, their successors and assigns, and their counsel agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use their best efforts to effect the prompt consummation of this Agreement and the proposed settlement.

X. This Agreement may be signed with a facsimile signature and in counterparts, each of which shall constitute a duplicate original.

Agreed to on the date indicated below.

APPROVED AND AGREED TO BY AND ON BEHALF OF THE PLAINTIFFS, IN THEIR INDIVIDUAL AND REPRESENTATIVE CAPACITIES

BY _____        DATE 6-08-08 _____
        WILLIAM W. MCGEE


BY _____        DATE _____
        ROBERT REIBSTEIN


BY _____        DATE _____
        MICHAEL D. DONOVAN
        DONOVAN SEARLES, LLC

40

Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

W. The Parties, their successors and assigns, and their counsel agree to cooperate fully with one another in seeking Court approval of this Settlement Agreement and to use their best efforts to effect the prompt consummation of this Agreement and the proposed settlement.

X. This Agreement may be signed with a facsimile signature and in counterparts, each of which shall constitute a duplicate original.

Agreed to on the date indicated below.

APPROVED AND AGREED TO BY AND ON BEHALF OF THE
PLAINTIFFS, IN THEIR INDIVIDUAL AND REPRESENTATIVE
CAPACITIES

BY_____       DATE_____
    WILLIAM W. MCGEE

BY _____      DATE_____June 7, 2008_____
    ROBERT REIBSTEIN

BY _____      DATE_____6/9/08_____
    MICHAEL D. DONOVAN   Michael D. Donovan
    DONOVAN SEARLES, LLC   with permission

40

BY_____         DATE___6/7/08___

       CARY L. FLITTER
       LUNDY, FLITTER, BELDECOS & BERGER, P.C.

12.JUN.2008  17:56     CONTINENTAL AG RECHTSABTEILUNG          NR.937    S.2/2
08/12/2008 10:58 FAX  12122761133     ANDERSONKILLOLICK,P.C.              002/002

APPROVED AND AGREED TO BY AND ON BEHALF OF CONTINENTAL TIRE NORTH
AMERICA, INC.


BY _____          DATE  6/12/08
Name: George R. Jurch III
Title: General Counsel & Secretary

42