# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____

WILLIAM W. MCGEE, on behalf
of himself and all others similarly situated,

                      Plaintiff,

         -against-

CONTINENTAL TIRE NORTH AMERICA,
INC.
                    Defendant.

_____

Civil Action No. 2:06-CV-06234
(GEB) (CCC)

## AFFIDAVIT OF JEANNE C. FINEGAN, APR,
## ON IMPLEMENTATION AND ADEQUACY OF
## SETTLEMENT NOTICE PROGRAM

STATE OF OREGON         )
                            ) ss.:
COUNTY OF WASHINGTON   )

Jeanne C. Finegan, being duly sworn, states:

1.     I am a Senior Vice President of The Garden City Group, Inc. ("GCG"), with oversight responsibility for GCG Communications, a division of GCG. This Affidavit is based upon my personal knowledge as well as information provided to me by my associates and staff, including information reasonably relied upon in the fields of advertising, media and communications.

AFFIDAVIT OF JEANNE C. FINEGAN, APR

2.      GCG was appointed by the Court as the Notice and Settlement Administrator to develop and implement a legal notice program ("Notice Program") to inform class members of the proposed class action settlement between plaintiffs and Continental Tire North America, Inc. ("Defendant").   As defined in the parties' *Settlement Agreement*[1] ("Agreement") and the *Order Preliminarily Certifying a Class for Settlement Purposes, Preliminarily Approving the Class Settlement, Appointing Class Counsel, Directing the Issuance of Notice to the Class, Scheduling a Fairness Hearing, and Issuing Related Orders* ("Order"), with some limited exceptions, the Class consists of all persons or entities that purchased or received Eligible Tires as part of an automobile purchase or lease transaction and/or purchased or received Eligible Tires to replace other tires, including, but not limited to, Eligible Tires, from January 1, 2003 up to and including July 14, 2008 (the "Class Members").   The "Class" or "Class Members" does/do not include: (a) Continental or any of its Board members or executive-level officers, including its attorneys; (b) persons or entities who have a claim for personal injury or damage to property, other than for the Eligible Tires themselves; (c) original equipment automobile manufacturers; (d) purchasers of Eligible Tires or of automobiles on which Eligible Tires were installed for the purpose of leasing, renting, resale or distribution; (e) the judge and magistrate judge and their immediate families presiding over the Action or Reibstein v. Continental Tire North America, Inc., 2:07-CV-302-LP (EDPA); (f) governmental entities; and (g) persons or entities that have timely and properly excluded themselves

---

[1] Capitalized terms contained herein have the same meaning as set forth in the Settlement Agreement.

AFFIDAVIT OF JEANNE C. FINEGAN, APR

from the settlement as discussed in the Agreement. The Eligible Tires include the following Continental tires, purchased or otherwise obtained as new tires by Class Members, between January 1, 2003 and July 14, 2008: P215/65R17 98T ContiTouringContact with Conti*Seal; P225/60R18 99H ContiTouringContact with Conti*Seal; and P225/60R18 99H ContiTouringContact without Conti*Seal.

3.       The purpose of this affidavit is to report to the Court, that in compliance with the Order, all elements of the Notice program have been successfully implemented. A detailed description of those elements are described below. The program commenced on July 14, 2008 and was substantially completed on August 3, 2008.

4.       Specifically, this Affidavit explains the basis on which this Court should conclude that this comprehensive Notice Program is the best notice practicable under the circumstances of this case, that it was reasonably calculated to reach the target audience, and that it is consistent with court-approved notice programs for settlements in similar class actions.

5.       GCG's headquarters are located at 105 Maxess Road in Melville, New York. For more than 20 years, GCG has specialized in the design and implementation of notification campaigns for class action and bankruptcy proceedings.  GCG's team has administered more than 1,000 settlements.  In connection with these settlements, GCG has mailed over 150 million notices, processed millions of claims, distributed billions of dollars in compensation, and issued millions of checks in connection with

AFFIDAVIT OF JEANNE C. FINEGAN, APR

highly focused local campaigns for class action proceedings, as well as large domestic and international notice campaigns.

6.      As Senior Vice President of GCG my responsibilities include, among other things, oversight of day-to-day operations for two GCG Communications offices, in Reston, Virginia and Lake Oswego, Oregon, as well as strategic planning, design and implementation of all complex legal notice programs for GCG clients.   GCG Communications is located at 12020 Sunrise Valley Drive, Suite 100, Reston, Virginia 20191 and 4500 S.W. Kruse Way, Suite 300, Lake Oswego, Oregon 97035.

7.      I have more than 20 years of communications and advertising experience.  I have been recognized as an expert in legal notice programs in federal and state courts in the United States, as well as courts in Canada.  I have lectured, published and been cited extensively on various aspects of legal noticing, product recall and crisis communications.   I have also served the Consumer Product Safety Commission ("CPSC") as an expert to determine ways in which the CPSC can increase the effectiveness of its product recall campaigns.

8.      I have designed, implemented or consulted on many of the largest and highest profile legal notice communication programs nationally and internationally for a wide range of class actions, including: *Varacallo, et al. v. Massachusetts Mutual Life Ins. Co., et al.*, Civil Action No. 04-2702 (JLL) (D.N.J. 2004); *In Re Air Cargo Shipping Services Antitrust Litig.*, MDL Master File 06-MD-1775 (JG) (VV) (E.D.N.Y. 2008); *Mayo v. Wal-Mart Stores and Sam's Club*, Case No. 5:06 CV-93-R, (W.D.K.Y.

2007); *In Re Nortel I & II Sec. Litig.,* Civil Action No. 01-CV-1855 (RMB), Master File No. 05 MD 1659 (LAP) (S.D.N.Y. 2006); *DeHoyos v. Allstate Ins. Co.*, Civil Action No SA-01-CA-1010-FB (W.D. Tex. 2006); *In Re Holocaust Victim Assets Litig.*, Nos. CV-96-4849(ERK)(MDG), CV-99-5161, CV-97-461 (E.D.N.Y. 2004); *Deke, et al. v. Cardservice Int'l*, Case No. BC 271679 (Los Angeles County Sup. Ct., Cal. 2004); *Sager v. Inamed Corp. and McGhan (Medical Breast Implant Litigation)*, Case No. 01043771 (Santa Barbara County Sup. Ct., Cal. 2004); *In re: Florida Microsoft Antitrust Litig.*, Index No. 99-27340 (11th Jud. Dist. Ct. of Miami, Dade County, Fla.); *In re: Montana Microsoft Antitrust Litig.,* No. DCV 2000 219 (1st Jud. Dist. Ct., Lewis & Clark County, Mont.); *In re: MCI Non-Subscriber Ratepayers*, MDL No. 1275 (S.D. Ill.); *Sparks v. AT&T Corp.*, No. 96-LM-983 (3d Jud. Cir., Madison County, Ill.); *Pigford v. Glickman*, No. CA 97-19788 (PLF) (D.D.C.); *Schmidt v. Adidas Salomon A.G.*, No. OCN-L-1248-01 (N.J. Super. Ct.); *In re: Louisiana-Pacific Inner Seal Siding*, Nos. 879-JE and 1543JE (D. Or.); *In re: Johns-Manville Phenolic Foam*, No. CV 96-10069 (D. Mass.); *Claybrook v. Sunbeam Corp.*, No. CV-98-C-1546-W (UWC) (N.D. Ala.); *In re: American Cyanamid*, No. CV-97-0581-BH-M (S.D. Ala.); *Bristow v. Fleetwood Enterprises*, No. Civ 00-0082-S-ELJ (D. Idaho); *Spencer v. Shell Oil Co.*, No. CV 94-074 (Harris County Dist. Ct., Tex.); and *In re: StarLink Corn Products*, No. 01 C 1181 (N.D. Ill.).

9.      A number of courts have praised my expertise and the notice programs I designed or implemented.  For example:

- *DeHoyos v. Allstate Insurance Company*, Civil Action No SA-01-CA-1010-FB (W.D. Tex. 2006) ("[t]he undisputed evidence shows the notice program in this case was developed and implemented by a nationally recognized expert in class action notice programs."…The notice program "was massive, generating over 640 million opportunities to see this message' and did an excellent job at reaching the target group.");

- *Lucas v. KMART Corp.*, Civil Action No 99-CV-01923 (JLK) (D. Colo. 2006) ("[t]he Court finds this extensive notice program to be more than adequate and approves it as the 'best notice practicable under the circumstances' and consistent with the requirements of F.R.C.P. 23 and due process");

- *Thomas A. Foster and Linda E. Foster v. ABTco Siding Litig.*, No. 95-151-M (Cir. Ct. of Choctaw County, Alabama 2000) (The Notice Program "constitutes the best notice practicable under the circumstances of this Action.  This finding is based on the overwhelming evidence of the adequacy of the notice program.…The media campaign involved broad national notice through television and print media, regional and local newspapers, and the Internet (see id. ¶¶9-11).  The result: over 90 percent of Abitibi and ABTco owners are estimated to have been reached by the direct media and direct mail campaign.");

- *Varacallo, et al. v. Massachusetts Mutual Life Ins. Co., et al.*, Civil Action No. 04-2702 (JLL) (D.N.J. 2004) ("all of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices");

- *In re: Louisiana-Pacific Inner-Seal Siding*, Civil Action Nos. 879-JE, and 1453-JE (D. Or. 1995, 1999) ("[t]he notice given to the members of the Class fully and accurately informed the Class members of all material elements of the settlement…[through] a broad and extensive multi-media notice campaign. . . ."); and

- *Mayo v. Walmart Stores and Sam's Club*, Case No. 5:06 CV-93-R, (W.D.K.Y. 2007). ("…the Notice was estimated to have reached over 90% of the Settlement Class Members through direct mail.  The Settlement Administrator mailed Notices to 17,895 individuals, representing just under 30,000 transactions and has classified the parties' database as 'one of the most reliable and comprehensive databases [she] has worked with for the purposes of legal notice.'… The Court thus reaffirms its findings and conclusions in the Preliminary Approval Order that the form of the Notice and manner of giving notice satisfy the

requirements of Fed. R. Civ. P. 23 and affords due process to the Settlement Class Members.")

10.     I have also published extensively on various aspects of legal noticing.  Many of the articles I have authored are listed below:

- Author, "*On Demand Media Could Change the Future of Best Practicable Notice*," BNA Class Action Litigation Repot, Vol. 9, No. 7, 4/11/2008, pp. 307-310;

- Co-Author, "*Approaches to Notice in State Court Class Actions*," For The Defense, Vol. 45, No. 11, November, 2003;

- Author, "*The Web Offers Near, Real-Time Cost Efficient Notice*," American Bankruptcy Institute Journal, Vol. XXII, No. 5, 2003;

- Author, "*Determining Adequate Notice in Rule 23 Actions*," For The Defense, Vol. 44, No. 9, September, 2002;

- Co-Author, "*The Electronic Nature of Legal Noticing*," American Bankruptcy Institute Journal,Vol. XXI, No. 3, April, 2002;

- Author, "*Three Important Mantras for CEO's and Risk Managers in 2002*," International Risk Management Institute, irmi.com/, January, 2002;

- Co-Author, "*Used the Bat Signal Lately*," The National Law Journal, Special Litigation Section, February 19, 2001;

- Author, "*How Much is Enough Notice*," Dispute Resolution Alert, Vol. 1, No. 6, March, 2001;

- Author, "*Monitoring the Internet Buzz*," The Risk Report, Vol. XXIII, No. 5, January, 2001;

- Author, "*High-Profile Product Recalls Need More Than the Bat Signal*," International Risk Management Institute, irmi.com/, July 2001;

AFFIDAVIT OF JEANNE C. FINEGAN, APR

- Author, *"What are the best practicable methods to give notice?"* Georgetown University Law Center Mass Tort Litigation Institute, CLE White Paper: Dispelling the communications myth -- A notice disseminated is a notice communicated, November 1, 2001; and

- Author, *"The Great Debate - How Much is Enough Legal Notice?"* American Bar Association -- Class Actions and Derivatives Suits Newsletter, Winter 1999.

11.     Additionally, I have lectured or presented extensively on various aspects of legal noticing.  A sample list includes the following:

- Featured Speaker –American Bar Association 2008 Annual Meeting "Practical Advice for Class Action Settlements:  The Future of Notice In the United States and Internationally – Meeting the Best Practicable Standard." Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee, New York, NY, August 2008.

- Faculty Panelist, Women Lawyers Association of Los Angeles (WLALA) CLE Presentation, "The Anatomy of a Class Action." Los Angeles, CA, February, 2008.

- Faculty Panelist, Practicing Law Institute (PLI) CLE Presentation, 11th Annual Consumer Financial Services Litigation.  Presentation: Class Action Settlement Structures -- "Evolving Notice Standards in the Internet Age."  *New York/Boston* (simulcast) March, 2006; *Chicago*, April, 2006; and *San Francisco*, May, 2006.

- Expert Panelist, U.S. Consumer Product Safety Commission.  I was the only legal notice expert invited to participate as an expert to the Consumer Product Safety Commission to discuss ways in which the CPSC could enhance and measure the recall process.  As an expert panelist, I discussed how the CPSC could better motivate consumers to take action on recalls and how companies could scientifically measure and defend their outreach efforts.   Bethesda, MD, September, 2003.

- Expert Speaker, American Bar Association.  Presentation: "How to Bullet-Proof Notice Programs and What Communication Barriers

Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits, Chicago, August 6, 2001.

12.     I am accredited ("APR") in Public Relations by the Universal Accreditation Board, a program administered by the Public Relations Society of America and I am also a  recognized member of the Canadian Public Relations Society

13.     A more comprehensive list of my class action and bankruptcy noticing experience, along with other judicial comments, is attached to this Affidavit as Exhibit A.

## OVERVIEW OF NOTICE PROGRAM

14.     As discussed below, the Notice Program, through a combination of direct mail, CAFA Order Notice, publication, the Internet, and a toll-free telephone number, was intended to reach the universe of Class Members, which was previously defined above in paragraph two.

15.     Unlike many class action settlements, in this settlement the identities of nearly 85% of the Settlement Class are represented by those persons or entities who purchased or received Eligible Tires as part of an automobile purchase or lease transaction, and are known as a result of the databases maintained by the Defendant and other entities with whom the defendant does business.  I have been informed by the Defendant that the identities of all these Class Members and records of their purchases were maintained in the normal course of business.  These records were

provided to GCG for its direct mail outreach efforts.  Additionally, GCG received some records that were available for the remaining approximate 15% of Class Members who purchased or received Eligible Tires to replace other tires, including, but not limited to, Eligible Tires.  GCG updated the address information through the National Change of Address Database ("NCOA") maintained by the United States Postal Service and, where appropriate performed additional advanced address searches. As a result nearly 84% of the class was estimated to be reached through direct mail.  When combined with the estimated reach of the publication program described in detail below, the overall outreach effort is estimated to have reached over 90% of the Class Members.

## ELEMENTS OF THE NOTICE PROGRAM

16.     There were five elements to this multifaceted, nationwide program:

- Direct notice by first class mail to Class Members in the form of a Long Form Notice and Claim Form (the "Notice Packet");

- Notice of the proposed Settlement as required by the Class Action Fairness Act ("CAFA");

- Publication of a Short-Form Notice ("Summary Notice");

-  A dedicated website through which Class Members can obtain information concerning the Settlement; and

- A toll-free telephone helpline through which Class Members can obtain information concerning the Settlement.

## <u>DIRECT MAIL NOTICE</u>

17. Pursuant to the Order, GCG mailed the Class Notice by first-class U.S. mail, postage prepaid, to each reasonably identifiable Class Member's last known address reasonably obtainable from Chrysler Corporation, Tire Rack, Eligible Tire retailers, and internal Continental customer return profiles. On July 3, 2008, Chrysler LLC provided GCG with an electronic data file and advised that it contained a total of 336,943 current or last-known names and addresses of persons or entities who it identified as potential Class Members (the "Mailing List").  GCG updated the Mailing List through the NCOA.  Of the 336,943 records checked against the NCOA database, there were 7,668 address changes.  Once GCG removed duplicate records and excluded vehicles, at counsels' direction and pursuant to Section II.A.10 of the Agreement (e.g. original equipment automobile manufacturers, and purchasers of Eligible Tires or of automobiles on which Eligible Tires were installed for the purpose of leasing, renting, resale or distribution), this file contained a total of 279,747 records.

18. On July 21, 2008, Counsel provided GCG with an additional electronic data file and advised that it contained a total of 3,113 current or last-known names and addresses of persons who fall within the Class.   Once GCG removed duplicate records and excluded vehicles, at counsels' direction and pursuant to Section II.A.10

AFFIDAVIT OF JEANNE C. FINEGAN, APR

of the Agreement, this file contained a total of 1,117 records.  GCG updated the Mailing List through the NCOA database.  Of the 1,117 records checked against the NCOA database, there were 38 address changes.

19.     On July 29, 2008, Counsel provided GCG with two additional electronic data files and advised that they contained a combined total of 7,062 current or last-known names and addresses of persons who fall within the Class.  GCG updated the Mailing List through the NCOA database and updated 480 addresses.  Once GCG removed duplicate records and excluded vehicles, at counsels' direction and pursuant to Section II.A.10 of the Agreement, the files contained a total of 5,134 records.

20.     In aggregate, after removal of duplicate records, the final Mailing List contained records for 285,998 Class Members.  On July 14, 2008, GCG commenced mailing the Class Notice and Claim Form (herein collectively referred to as "Notice Packet") with first class postage and with U.S. Postal Service return service requested to each of the 285,998 persons or entities on the Mailing List.  GCG completed its mailing on July 31, 2008.  The Notice Packet is attached hereto as Exhibit B.

21.     As of September 28, 2008, GCG has received 5,370 packets returned as undeliverable with forwarding address information provided by the U.S. Postal Service.  The Mailing List has been updated and these packets have been promptly remailed to the updated addresses provided by the U.S. Postal Service.  In addition, GCG has arranged for advanced level address searches on 12,515 Notice Packets returned as undeliverable with no forwarding address information.  Of these, GCG

was able to identity 6,065 updated addresses.   GCG promptly remailed to those updated addresses.   As a result of the advanced address searches and remails, as of September 28, 2008, the total number of undeliverable packets received by GCG is 7,864, or 2.7 % of the total Mailing List.

## CLASS ACTION FAIRNESS ACT ("CAFA") NOTICE

22.    On June 19, 2008, pursuant to the Order and at Defendant's direction, GCG provided notice of the proposed settlement under the 28 U.S.C. §1715(b) to the appropriate state and federal government officials.   Attached hereto as Exhibit C is a copy of the CAFA Notice Letter and the list of recipients.

## NOTICE BY PUBLICATION

23.    Because of the availability of extensive and specific Class Member contact information, the publication component of the overall Notice Program served as an enhancement to the direct mail effort to reach Class Members whose (i) names were not available and/or (ii) whose names were available but whose current addresses were unknown.

24.    The Summary Notice was published on August 3, 2008 in over 900 newspapers throughout the United States by way of Parade Magazine and USA Weekend. Combined, these publications have a circulation of over 55 million. The Summary Notice included general information about who might be a Class Member, the case, the terms of the Settlement, Class Member rights and options, and upcoming

deadlines and dates.  The Summary Notice prominently displayed the website address (www.tiresettlement.com), which is an address where Class Members may direct questions in writing. Additionally, the Summary Notice included a toll-free telephone helpline number so that Class Members could obtain more detailed information about the case.  Attached hereto as Exhibit D is a copy of the Summary Notice as it appeared in the publications.

## WEBSITE

25.    GCG established and will continue to maintain an official website (www.tiresettlement.com) to provide Internet notice, to allow Class Members to obtain further information about the Settlement, their rights, dates and deadlines and related information.  The website address was prominently displayed in the direct mail notice and publication notice, and also provided the toll-free telephone helpline. The website is accessible 24 hours a day, 7 days a week.    As of September 28, 2008 the web site has received a total of 9,479 visits, representing 39,424 page views.

## TOLL-FREE TELEPHONE HELPLINE

26.    GCG also maintains a 24-hour toll-free telephone where callers can obtain information about the Settlement.  Once a caller connects to the helpline, he or she is prompted through an Interactive Voice Recording ("IVR").   The IVR provides detailed information to callers about the Settlement.  The IVR also allows callers to leave a message and request a call back to be returned by a live operator.  Again, the telephone number was prominently displayed in the direct mail notice, the publication

notice, and on the website. As of September 28, 2008, GCG's IVR has received a total of 8,561 calls.

27.     To ensure greater understandability, and in accordance with the notice guidelines provided by the Federal Judicial Center on Notice, The Notice Packet and Summary Notice were written in a clear, plain and concise style appropriate for the target audience. Both comported with the plain language standards for legal noticing and provide Class Members with a summary of the case, their rights, and important dates and deadlines. Additionally, the website address and toll-free telephone number were prominently positioned in the Class Notices, so Class Members could easily obtain more detailed information.

28.     Pursuant to the terms of the Agreement, Class Members have until September 15, 2010 (postmarked) to file a Claim Form. As of September 28, 2008, GCG has received 15,812 potentially valid Claim Forms.

## <u>CONCLUSION</u>

29.     Based on our analysis described above and my experience, the proposed Notice Program is reasonably calculated to provide the best notice practicable under the circumstances in this case.

AFFIDAVIT OF JEANNE C. FINEGAN, APR

Dated this _6th_ day of October, 2008

_Jeanne C Finegan_
JEANNE C. FINEGAN, APR

Signed and sworn to before me this _6th_ day of _October_, 2008 by Jeanne C. Finegan

_Tamara J Ollivier_
NOTARY PUBLIC for Oregon
My commission expires: _3/16/2010_

```
OFFICIAL SEAL
TAMARA J OLLIVIER
NOTARY PUBLIC-OREGON
COMMISSION NO. 403743
MY COMMISSION EXPIRES MAR. 16, 2010
```

AFFIDAVIT OF JEANNE C. FINEGAN, APR

16

# Exhibit A

# JEANNE C. FINEGAN, APR

## BIOGRAPHY

Jeanne Finegan is Senior Vice President of The Garden City Group, Inc. ("GCG"), with oversight responsibility for GCG Communications, a division of GCG. She has more than 20 years of communications and advertising experience and is a nationally recognized expert in class action, bankruptcy and mass tort notification campaigns. Finegan is accredited (APR) in Public Relations by the Universal Accreditation Board, a program administered by the Public Relations Society of America. She is also recognized by the Canadian Public Relations Society.

She has provided testimony before Congress on issues of notice. Additionally, she has provided expert testimony in both state and federal courts regarding notification campaigns and conducted media audits of proposed notice programs for their adequacy under Fed R. Civ. P. 23(c)(2) and similar state class action statutes.  Most recently, she has been recognized by Canadian courts as a legal notice expert.

She has lectured, published and has been cited extensively on various aspects of legal noticing, product recall and crisis communications and has served the Consumer Product Safety Commission (CPSC) as an expert to determine ways in which the Commission can increase the effectiveness of its product recall campaigns.

Finegan has developed and implemented many of the nation's largest and most high profile legal notice communication and advertising programs. In the course of her class action experience, courts have recognized the merits of, and admitted expert testimony based on, her scientific evaluation of the effectiveness of notice plans.  She has designed legal notices for a wide range of class actions and consumer matters that include product liability, construction defect, anti-trust, medical/pharmaceutical, human rights, civil rights, telecommunication, media, environment, securities, banking, insurance, mass tort, restructuring and product recall.

## LEGAL NOTICE CASES AND JUDICIAL COMMENTS

*In re: Air Cargo Shipping Services Antitrust Litigation*, MDL Master File 06-MD-1775 (JG) (VV) United States District Court for the Eastern District of New York (2008).

*In re: Canadian Air Cargo Shipping Class Actions*, Ontario Superior Court of Justice, Court File No. 50389CP, Supreme Court of British Columbia, Quebec Superior Court (2008).

In the Endorsement of Settlement, Ontario Superior Court of Justice Regional Senior Justice Lynne C. Leitch stated:  *"I am satisfied the proposed form of notice meets the requirements of s. 17(6) of the CPA  and the proposed method of notice is appropriate."*

*Howard A. Engle, M.D., et al., v. R.J. Reynolds Tobacco Company, Philip Morris, Inc., Brown & Williamson Tobacco Corp.*, Case No. 94-08273 CA (22) Dade County Circuit Court (2008).

*Mayo v. Walmart Stores and Sam's Club*, Case No. 5:06 CV-93-R, United States District Court Western District of Kentucky Paduchah Division (2007).

In the Order Granting Final Approval of Settlement, Judge Thomas B. Russell stated: *"According to defendants' database, the Notice was estimated to have reached over 90% of the Settlement Class Members through direct mail.  The Settlement*

*Administrator …has classified the parties' database as 'one of the most reliable and comprehensive databases [she] has worked with for the purposes of legal notice.'… The Court thus reaffirms its findings and conclusions in the Preliminary Approval Order that the form of the Notice and manner of giving notice satisfy the requirements of Fed. R. Civ. P. 23 and affords due process to the Settlement Class Members."*

***DeHoyos, et al. v. Allstate Insurance Company***, Civil Action No SA-01-CA-1010-FB, United States District Court Western District of Texas San Antonio Division (2006).

In the Final Order Approving the Settlement, Judge Fred Biery stated: " *...the undisputed evidence shows the notice program in this case was developed and implemented by a nationally recognized expert in class action notice programs."*

*"This program was vigorous and specifically structured to reach the African-American and Hispanic class members.  Additionally, the program was based on a scientific methodology which is used throughout the advertising industry and which has been routinely embraced routinely [sic] by the Courts.  Specifically, in order to reach the identified targets directly and efficiently, the notice program utilized a multi-layered approach which included national magazines; magazines specifically appropriate to the targeted audiences; and newspapers in both English and Spanish."*

***Lucas, et al. v. Kmart Corporation***, Case No. 99-cv-01923-JLK, Class Action, United States District Court for the District of Colorado (2006).

In the Final Order Approving the Settlement, Judge John L. Kane stated:  *"The parties submitted a declaration from Jeanne C. Finegan, an expert in the design of notice programs such as the one approved by this Court.  The notice program implemented by the parties to this settlement [was extensive and] goes above and beyond that required by law.  For the reasons set forth in the Preliminary Approval Order, id. at 695-97, the Court holds that the notice program implemented by the parties was the best notice practicable under the circumstances and satisfied the requirements of due process and F.R.C.P. 23."*

***In re: Nortel Network Corp.***, Securities Litigation Civil Action No. 01-CV-1855 (RMB) Master File No. 05 MD 1659 (LAP) (2006). Ms. Finegan designed and implemented the extensive Canadian Notice program, published in both French and English, which targeted virtually all investors of Stock in Canada.  www.nortelsecuritieslitigation.com.

Of the U.S. notice program, New York District Court Judge Loretta A. Preska stated:  *"The form and method of notifying the U.S. Global Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement … constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto."*

*Regarding the  B.C. Canadian Notice effort: Jeffrey v. Nortel Networks*, [2007] BCSC 69 at para. 50, *The Honourable Mr. Justice Groberman said:  " The efforts to give notice to potential class members in this case have been thorough.  There has been a broad media campaign to publicize the proposed settlement and the court processes.  There has also been a direct mail campaign directed at probable investors.  I am advised that over 1.2 million claim packages were mailed to persons around the world.  In addition, packages have been available through the worldwide web site www.nortelsecuritieslitigation.com  on the Internet.  Toll-free telephone lines have been set up, and it appears that class counsel and*

> *the Claims Administrator have received innumerable calls from potential class members. In short, all reasonable efforts have been made to ensure that potential members of the class have had notice of the proposal and a reasonable opportunity was provided for class members to register their objections, or seek exclusion from the settlement."*

***SEC v. Vivendi Universal, S.A., et al.,*** 02 Civ. 5571 (RJH) (HBP) (S.D.N.Y. 2006).  In this case, GCG was engaged by a distribution agent appointed by the SEC to perform the Notice and administration work related to the settlement. The Notice program included publication in 11 different countries and eight different languages. The engagement involved a full range of services, from design and printing of the notice and claim packets through claims processing, and ultimately distribution. The multi-lingual internet site can be found at  www.vivendisecsettlement.com.  A key feature of that website is the ability for class members to file claims online in any of the relevant languages.  This approach is particularly unique in the securities context.

***Levine, et al. v. Dr. Philip C. McGraw, et al***., Case No. BC 312830 (Los Angeles County Super. Ct., Cal. 2004).

> In the Final Order Approving the Settlement, the Honorable Victoria Chaney found that ***"the plan for notice to the Settlement Class … constitutes the best notice practicable under the circumstances and constituted due and sufficient notice to the members of the Settlement Class … and satisfies the requirements of California law and federal due process of law."***

***In re: Epson Cartridge Cases, Judicial Council Coordination Proceeding***, No. 4347, Superior Court of the State of California for the County of Los Angeles (2006).

***UAW v. General Motors Corporation,*** Case No: 05-73991 Class Action, United States District Court for the Eastern District of Michigan, Southern Division (2006).

***Wicon, Inc. v. Cardservice International, Inc***., BC 320215 Class Action, Superior Court of the State of California for the County of Los Angeles (2004).

***Varacallo, et al. v. Massachusetts Mutual Life Insurance Company, et al***., Civil Action No. 04-2702 (JLL), United States District Court for the District of New Jersey (2004).

> Jose L. Linares found that ***"all of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices.***
>
> ***"… By working with a nationally syndicated media research firm, [Finegan's firm] was able to define a target audience for the MassMutual Class Members, which provided a valid basis for determining the magazine and newspaper preferences of the Class Members.  (Preliminary Approval Order at p. 9).  . . .  The Court agrees with Class Counsel that this was more than adequate.  (Id. at § 5.2)."***

***In re: Johns-Manville Corporation (Statutory Direct Action Settlement, Common Law Direct Action and Hawaii Settlement)***, Index No 82-11656 (BRL), United States Bankruptcy Court for the Southern District of New York (2004).  The nearly half-billion dollar settlement incorporated three separate notification programs, which targeted all persons who had asbestos claims whether asserted or unasserted, against the Travelers Indemnity Company.

> In the Findings of Fact and Conclusions of a Clarifying Order Approving the Settlements, the Honorable Chief Judge Burton R. Lifland said: ***"As demonstrated by Findings of***

> *Fact (citation omitted), the Statutory Direct Action Settlement notice program was reasonably calculated under all circumstances to apprise the affected individuals of the proceedings and actions taken involving their interests, Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950), such program did apprise the overwhelming majority of potentially affected claimants and far exceeded the minimum notice required. . . . The results simply speak for themselves."*

*Wilson v. Massachusetts Mutual Life Insurance Company*, Case No. D-101-CV 98-02814, First Judicial District Court, County of Santa Fe , New Mexico (2002). This was a nationwide notification program that included all persons in the United States who owned, or had owned, a life or disability insurance policy with Massachusetts Mutual Life Insurance Company and had paid additional charges when paying their premium on an installment basis.  The class was estimated to exceed 1.6 million individuals. www.insuranceclassclaims.com.

> In granting preliminary approval to the settlement agreement, the Honorable Art Encinias commented: *"The Notice Plan was the best practicable and reasonably calculated, under the circumstances of the action.   …[and] that the notice meets or exceeds all applicable requirements of law, including Rule 1-023(C)(2) and (3) and 1-023(E), NMRA 2001, and the requirements of federal and/or state constitutional due process and any other applicable law."*

*Deke, et al. v. Cardservice International,* Case No. BC 271679, Superior Court of the State of California, County of Los Angeles (2004).

> In the Final Order dated March 1, 2004, The Honorable Charles W. McCoy commented: *"The Class Notice satisfied the requirements of California Rules of Court 1856 and 1859 and due process and constituted the best notice practicable under the circumstances."*

*Sager v. Inamed Corp. and McGhan Medical Breast Implant Litigation,* Case No. 01043771, Superior Court of the State of California, County of Santa Barbara (2004).

> In the Final Judgment and Order, dated March 30, 2004, the Honorable Thomas P. Anderle stated: *"Notice provided was the best practicable under the circumstances."*

*In re: Florida Microsoft Antitrust Litigation Settlement*, Index number 99-27340 CA 11, 11th Judicial District Court of Miami – Dade County, Florida (2003).

> In the Final Order Approving the Fairness of the Settlement, The Honorable Henry H. Harnage said: *"The Class Notice … was the best notice practicable under the circumstances and fully satisfies the requirements of due process, the Florida Rules of Civil Procedure, and any other applicable rules of the Court."*

*In re: Montana Microsoft Antitrust Litigation Settlement*, No. DCV 2000 219, Montana First Judicial District Court, Lewis & Clark Co. (2003).

*In re: South Dakota Microsoft Antitrust Litigation Settlement*, Civ. No. 00-235, State of South Dakota, County of Hughes in the Circuit Court Sixth Judicial Circuit.

*In re: Kansas Microsoft Antitrust Litigation Settlement,* Case No. 99C17089 Division No. 15 Consolidated Cases, District Court of Johnson County, Kansas Civil Court Department.

> In the Final Order and Final Judgment, the Honorable Allen Slater stated: *"The Class Notice provided was the best notice practicable under the circumstances and fully*

*complied in all respects with the requirements of due process and of the Kansas State. Annot. §60-22.3."*

***In re: North Carolina Microsoft Antitrust Litigation Settlement***, No. 00-CvS-4073 (Wake) 00-CvS-1246 (Lincoln), State of North Carolina, Wake and Lincoln Counties in the General Court of Justice Superior Court Division North Carolina Business Court.

In the multiple state cases, Plaintiffs generally alleged that Microsoft unlawfully used anticompetitive means to maintain a monopoly in markets for certain software, and that as a result, it overcharged consumers who licensed its MS-DOS, Windows, Word, Excel and Office software. The multiple legal notice programs targeted both individual users and business users of this software.  The scientifically designed notice programs took into consideration both media usage habits and demographic characteristics of the targeted class members.

***In re: MCI Non-Subscriber RatePayers Litigation***, MDL Docket No. 1275, District Court for Southern District of Illinois (2001).  The advertising and media notice program was designed with the understanding that the litigation affects all persons or entities who were customers of record for telephone lines presubscribed to MCI/World Com, and were charged the higher non-subscriber rates and surcharges for direct-dialed long distance calls placed on those lines. www.rateclaims.com.

> After a hearing to consider objections to the terms of the settlement, Judge David R. Herndon stated: ***"As further authorized by the Court, [Finegan's company] … published the Court-approved summary form of notice in eight general-interest magazines distributed nationally; approximately 900 newspapers throughout the United States and a Puerto Rico newspaper.  In addition, [Finegan's company] caused the distribution of the Court-approved press release to over 2,500 news outlets throughout the United States…  The manner in which notice was distributed was more than adequate…"***

***Sparks v. AT&T Corporation***, Case No. 96-LM-983, Third Judicial Circuit, Madison County, Illinois. The litigation concerned all persons in the United States who leased certain AT&T telephones during the 1980's. Finegan designed and implemented a nationwide media program designed to target all persons who may have leased telephones during this time period, a class that included a large percentage of the entire population of the United States.

> In granting final approval to the settlement, the Court commented: ***"The Court further finds that the notice of the proposed settlement was sufficient and furnished Class Members with the information they needed to evaluate whether to participate in or opt out of the proposed settlement. The Court therefore concludes that the notice of the proposed settlement met all requirements required by law, including all Constitutional requirements."***

***Pigford v. Glickman and U.S. Department of Agriculture,*** Case No. CA No. 97-19788 (PLF), District Court for the District of Columbia (1999).  This was the largest civil rights case to settle in the United States in over 40 years. The highly publicized, nationwide paid media program was designed to alert all present and past African-American farmers of the opportunity to recover monetary damages against the U.S. Department of Agriculture for alleged loan discrimination.

> In his Opinion, the Honorable Paul L. Friedman commented on the notice program by saying: ***"The parties also exerted extraordinary efforts to reach class members through a massive advertising campaign in general and African American targeted publications and television stations."***

Judge Friedman continued: ***"The Court concludes that class members have received more than adequate notice and have had sufficient opportunity to be heard on the fairness of the proposed Consent Decree."***

***In re: SmithKline Beecham Clinical Billing Litigation***, Case No. CV. No. 97-L-1230, Illinois Third Judicial District, Madison County, (2001).  Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning billings for clinical laboratory testing services.

***MacGregor v. Schering-Plough Corp.***, Case No. EC248041, Superior Court of the State of California, County of Los Angeles (2001).  This nationwide notification was designed to reach all persons who had purchased or used an aerosol inhaler manufactured by Schering-Plough. Because no mailing list was available, notice was accomplished entirely through the media program.

***In re: Swiss Banks Holocaust Victim Asset Litigation,*** Case No. CV-96-4849, United States District Court for the Eastern District of New York (1999).  Finegan managed the design and implementation of the Internet site on this historic case.  The site was developed in 21 native languages. It is a highly secure data gathering tool and information hub, central to the global outreach program of Holocaust survivors. www.swissbankclaims.com.

***In re: Louisiana-Pacific Inner-Seal Siding Litigation***, Civil Action Nos. 879-JE, and 1453-JE, United States District Court, District of Oregon (1995) and (1999).  Under the terms of the Settlement, three separate Notice programs were to be implemented at three-year intervals over a period of six years.  In the first Notice campaign, Finegan implemented the print advertising and Internet components of the Notice program.

In approving the legal notice communication plan, the Honorable Robert E. Jones stated: ***"The notice given to the members of the Class fully and accurately informed the Class members of all material elements of the settlement…[through] a broad and extensive multi-media notice campaign."***

In reference to the third-year Notice program for Louisiana-Pacific, Special Master Hon. Judge Richard Unis, commented: ***"In approving the third year notification plan for the Louisiana-Pacific Inner-Seal™ Siding litigation, the court referred to the notice as '…well formulated to conform to the definition set by the court as adequate and reasonable notice.' Indeed, I believe the record should also reflect the Court's appreciation to Ms. Finegan for all the work she's done, ensuring that noticing was done correctly and professionally, while paying careful attention to overall costs." Her understanding of various notice requirements under Fed. R. Civ. P. 23, helped to insure that the notice given in this case was consistent with the highest standards of compliance with Rule 23(d)(2)."***

***Thomas A. Foster and Linda E. Foster v. ABTco Siding Litigation,*** Case No. 95-151-M, Circuit Court of Choctaw County, Alabama (2000).  This litigation focused on past and present owners of structures sided with Abitibi-Price siding.  The notice program that Finegan designed and implemented was national in scope.

In the Order and Judgment Finally approving settlement, Judge J. Lee McPhearson said: ***"The Court finds that the Notice Program conducted by the Parties provided individual notice to all known Class Members and all Class Members who could be identified through reasonable efforts and constitutes the best notice practicable under the circumstances of this Action.  This finding is based on the overwhelming evidence of***

*the adequacy of the notice program  …The media campaign involved broad national notice through television and print media, regional and local newspapers, and the Internet (see id. ¶¶9-11) The result: over 90 percent of Abitibi and ABTco owners are estimated to have been reached by the direct media and direct mail campaign."*

*In re: Exxon Valdez Oil Spill Litigation*, Case No. A89-095-CV (HRH) (Consolidated), United States District Court for the District of Alaska (1997, 2002).  Finegan designed and implemented two media campaigns to notify native Alaskan residents, trade workers, fisherman, and others impacted by the oil spill of the litigation and their rights under the settlement terms.

*In re: Georgia-Pacific Toxic Explosion Litigation,* Case No. 98 CVC05-3535, Court of Common Pleas Franklin County, Ohio (2001).  Finegan designed and implemented a regional notice program that included network affiliate television, radio and newspaper. The notice was designed to alert adults living near a Georgia-Pacific plant that they had been exposed to an air-born toxic plume and their rights under the terms of the class action settlement.

In the Order and Judgment finally approving the settlement, the Honorable Jennifer L. Bunner said: *"…Notice of the settlement to the Class was the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The Court finds that such effort exceeded even reasonable effort and that the Notice complies with the requirements of Civ. R. 23(C)."*

*In re: Johns-Manville Phenolic Foam Litigation* Case No.  CV 96-10069, United States District Court for the District of Massachusetts (1999).  The nationwide multi-media legal notice program was designed to reach all Persons who own any structure, including an industrial building, commercial building, school, condominium, apartment house, home, garage or other type of structure located in the United States or its territories, in which Johns-Manville PFRI was installed, in whole or in part, on top of a metal roof deck.

*In re: James Hardie Roofing Litigation,* Case No. CV.  No. 00-2-17945-65SEA, Superior Court of Washington, King County (2002). The nationwide legal notice program included advertising on television, in print and on the Internet.  The program was designed to reach all persons who own any structure with JHBP roofing products.

In the Final Order and Judgment, the Honorable Steven Scott stated: *"The notice program required by the Preliminary Order has been fully carried out…. [and was] extensive.  The notice provided fully and accurately informed the Class Members of all material elements of the proposed Settlement and their opportunity to participate in or be excluded from it; was the best notice practicable under the circumstances; was valid, due and sufficient notice to all Class Members; and complied fully with Civ. R. 23, the United States Constitution, due process, and other applicable law."*

*In re: First Alert Smoke Alarm Litigation*, Case No. CV-98-C-1546-W (UWC), United States District Court for the Northern District of Alabama, Western Division (2000).  Finegan designed and implemented a nationwide legal notice and public information program.  The public information program ran over a two-year period to inform those with smoke alarms of the performance characteristics between photoelectric and ionization detection.  The media program included network and cable television, magazine and specialty trade publications.

In the Findings and Order Preliminarily Certifying the Class, The Honorable C.W. Clemon wrote that the notice plan:  *"…Constitutes due, adequate and sufficient notice to all Class Members; and meets or exceeds all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process*

*Clause), the Alabama State Constitution, the Rules of the Court, and any other applicable law.”*

***In re: American Cyanamid,*** Civil Action CV-97-0581-BH-M, United States District Court for the Southern District of Alabama (2001).  The media program targeted those Farmers who had purchased crop protection chemicals manufactured by American Cyanamid.

In the Final Order and Judgment, the Honorable Charles R. Butler Jr. wrote: *“The Court finds that the form and method of notice used to notify the Temporary Settlement Class of the Settlement satisfied the requirements of Fed. R. Civ. P. 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all potential members of the Temporary Class Settlement.”*

***Bristow v Fleetwood Enterprises Litigation,*** Case No Civ 00-0082-S-EJL, United States District Court for the District of Idaho (2001).  Finegan designed and implemented a legal notice campaign targeting present and former employees of Fleetwood Enterprises, Inc., or its subsidiaries who worked as hourly production workers at Fleetwood’s housing, travel trailer, or motor home manufacturing plants. The comprehensive notice campaign included print, radio and television advertising.

***In re: New Orleans Tank Car Leakage Fire Litigation***, Case No 87-16374, Civil District Court for the Parish of Orleans, State of Louisiana (2000).  This case resulted in one of the largest settlements in U.S. history.  This campaign consisted of a media relations and paid advertising program to notify individuals of their rights under the terms of the settlement.

***Garria Spencer v. Shell Oil Company***, Case No. CV 94-074, District Court, Harris County Texas (1995).  The nationwide notification program was designed to reach individuals who owned real property or structures in the United States which contained polybutylene plumbing with acetyl insert or metal insert fittings.

***Rene Rosales v. Fortune Insurance Company***, Case No 99-04588 CA (41) Circuit Court of the 11th Judicial Circuit, Miami-Dade County, Florida (2000).  Finegan provided expert testimony in this matter. She conducted an audit on behalf of intervening attorneys for the proposed notification to individuals insured with personal injury insurance. Based upon the audit, Finegan testified that the proposed notice program was inadequate. The Court agreed and signed an Order Granting Intervenors’ Objections to Class Action Settlement.

The Honorable Jose M. Rodriques said: *“The Court finds that Ms. Finegan is qualified as an expert on class notice and effective media campaigns.  The Court finds that her testimony is credible and reliable.”*

Based in part on Finegan’s testimony, the Court ruled in favor of the intervening parties and disapproved the parties’ original settlement agreement, vacating the order of preliminary approval.

***In re: Hurd Millwork Heat Mirror™ Litigation,*** Case No. CV-772488, Superior Court of the State of California, County of Santa Clara (2000).  This nationwide multi-media notice program was designed to reach class members with failed heat mirror seals on windows and doors, and alert them as to the actions that they needed to take to receive enhanced warranties or window and door replacement.

***Laborers District Counsel of Alabama Health and Welfare Fund v. Clinical Laboratory Services, Inc***, Case No. CV–97-C-629-W, United States District Court for the Northern District of Alabama (2000). Finegan designed and developed a national media and Internet site

notification program in connection with the settlement of a nationwide class action concerning alleged billing discrepancies for clinical laboratory testing services.

*In re: StarLink Corn Products Liability Litigation* Case No. 01-C-1181, United States District Court for the Northern District of Illinois, Eastern Division (2002).  Finegan designed and implemented a nationwide notification program designed to alert potential class members of the terms of the settlement.

*In re: Albertson's Back Pay Litigation*, Case No. 97-0159-S-BLW, United States District Court for the District of Idaho (1997).  Finegan designed and developed a secure Internet site, where claimants could seek case information confidentially.

*In re: Georgia Pacific Hardboard Siding Recovering Program,* Case No. CV-95-3330-RG, Circuit Court for the County of Mobile, State of Alabama (1997).  Finegan designed and implemented a multi-media legal notice program, which was designed to reach class members with failed G-P siding and alert them of the pending matter. Notice was provided through advertisements which aired on national cable networks, magazines of nationwide distribution, local newspaper, press releases and trade magazines.

*In re: Diet Drugs* **(Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig**., MDL No. 1203, Civil Action No. 99-20593,(E.D. Pa. Aug. 28, 2000).  Finegan has worked as a consultant to the National Diet Drug Settlement Committee on notification issues.

*In re: ABS II Pipes Litigation*, Case No. 3126, Contra Costa Superior Court, State of California (1998 and 2001). The Court approved regional notification program designed to alert those individuals who owned structures with the pipe that they were eligible to recover the cost of replacing the pipe. www.abspipes.com.

*In re: Avenue A Inc. Internet Privacy Litigation*, Case No: C00-1964C, United States District Court for the Western District of Washington.

*In re: Lorazepam and Clorazepate Antitrust Litigation*, MDL No. 1290 (TFH), United States District Court for the District of Columbia.

*In re: Providian Financial Corporation ERISA Litigation*, Case No C-01-5027, United States District Court for the Northern District of California.

*In re: H & R Block., et al Tax Refund Litigation*, Case No. 97195023/CC4111, Maryland Circuit Court for Baltimore City.

*In re: American Premier Underwriters, Inc, U.S. Railroad Vest Corp.*, Cause No:  06C01-9912, Circuit Court, Boone County, Indiana.

*In re: Sprint Corporation Optical Fiber Litigation*, Case No: 9907 CV 284, District Court, Leavenworth County, Kansas.

*In re: Shelter Mutual Insurance Company Litigation*, Case No. CJ-2002-263, District Court, Canadian County. Oklahoma.

*In re: Conseco, Inc. Securities Litigation*, Case No: IP-00-0585-C Y/S CA, Southern District of Indiana, Indianapolis Division.

*In re: National Treasury Employees Union, et al.*, Case No: 02-128C, United States Court of Federal Claims.

*In re: City of Miami Parking Litigation*, Case Nos: 99-21456 CA-10, 99-23765 – CA-10, Circuit Court, 11ᵗʰ Judicial Circuit, Miami-Dade County, Florida.

*In re: Prime Co. Incorporated D/B/A/ Prime Co. Personal Communications*, Civil Action No. L 1:01CV658, United States District Court for the Eastern District of Texas, Beaumont Division.

*Alsea Veneer v. State of Oregon A.A.*, Case No. 88C-11289-88C-11300.


## BANKRUPTCY EXPERIENCE

Finegan has designed and implemented hundreds of domestic and international bankruptcy notice programs.  A sample case list includes the following:

*In re: ACandS, Inc.*, Case No. 0212687, United States Bankruptcy Court for the District of Delaware (2007).

> In the Order Approving Settlement, the Honorable Judith K. Fitzgerald stated: *"Adequate notice of the Motion and of the hearing on the Motion was given."*

*In re: United Airlines*, Case No. 02-B-48191, (Bankr. N.D Illinois, Eastern Division).  Finegan worked with United and its restructuring attorneys to design and implement global legal notice programs.  The notice was published in 11 countries and translated into 6 languages. Finegan worked closely with legal counsel and UAL's advertising team to select the appropriate media and to negotiate the most favorable advertising rates. www.pd-ual.com.

*In re: Enron*, Case No. 01-16034 (Bankr. S.D.N.Y.).  Finegan worked with Enron and its restructuring attorneys to publish various legal notices.

*In re: Dow Corning*, Case No. 95-20512 (Bankr. E.D. Mich.).  Finegan originally designed the information website.  This Internet site is a major information hub that has various forms in 15 languages.

*In re: Harnischfeger Industries*, Case No. 99-2171 (RJW) Jointly Administered, (Bankr., District of Delaware).  Finegan designed and implemented 6 domestic and international notice programs for this case. The notice was translated into 14 different languages and published in 16 countries.

*In re: Keene Corporation*, Case No. 93B 46090 (SMB), (Bankr. E.D. of Missouri, Eastern Division).  Finegan designed and implemented multiple domestic bankruptcy notice programs including notice on the plan of reorganization directed to all creditors and all Class 4 asbestos-related claimants and counsel.

*In re: Lamonts*, Case No. 00-00045 (Bankr. W.D. of Washington).  Finegan designed an implemented multiple bankruptcy notice programs.

*In re: Monet Group Holdings*, Case Nos. 00-1936 (MFW) (Bankr. D. of Delaware).  Finegan designed and implemented a bar date notice.

*In re: Laclede Steel Company*, Case No 98-53121-399 (Bankr. E.D.of MO, Eastern Division).  Finegan designed and implemented multiple bankruptcy notice programs.

*In re: Columbia Gas Transmission Corporation*, Case No. 91-804 (Bankr. S.D.N.Y.).  Finegan developed multiple nationwide legal notice notification programs for this case.

*In re: U.S.H. Corporation of New York, et al*. (Bankr. S.D.N.Y).   Finegan designed and implemented a bar date advertising notification campaign.

*In re: Best Products Co., Inc*., Case No. 96-35267-T, (Bankr. E.D. of Virginia).  Finegan implemented a national legal notice program that included multiple advertising campaigns for notice of sale, bar date, disclosure and plan confirmation.

*In re: Lodgian, Inc., et al.*, Case No. 16345 (BRL) Factory Card Outlet – 99-685 (JCA), 99-686 (JCA), (Bankr. S.D.N.Y).

*In re: International Total Services, Inc., et al.*, Case No: 01-21812, 01-21818, 01-21820, 01-21882, 01-21824, 01-21826, 01-21827 (CD) Under Case No: 01-21812 (Bankr. E.D.N.Y).

*In re: Decora Industries, Inc and Decora, Incorporated*, Case No: 00-4459 and 00-4460 (JJF) (Bankr. D. of Delaware).

*In re: Genesis Health Ventures, Inc., et al*, Case No. 002692 (PJW) (Bankr. D. of Delaware).

*In re: Telephone Warehouse, Inc., et al*, Case No. 00-2105 through 00-2110 (MFW) (Bankr. D. of Delaware).

*In re: United Companies Financial Corporation, et al*, Case No. 99-450 (MFW) through 99-461 (MFW) (Bankr. D. of Delaware).

*In re: Caldor, Inc. New York, The Caldor Corporation, Caldor, Inc. CT, et al.*, Case No: 95-B44080 (JLG) (Bankr. S.D.N.Y).

*In re: Physicians Health Corporation, et al.*, Case No: 00-4482 (MFW) (Bankr. D. of Delaware).

*In re: GC Companies., et al.*, Case Nos:00-3897 through 00-3927 (MFW) (Bankr. D. of Delaware).

*In re: Heilig-Meyers Company, et al.*, Case Nos: 00-34533 through 00-34538 (Bankr. E.D. of Virginia, Richmond Division).

## PRODUCT RECALL AND CRISIS COMMUNICATION

*Reser's Fine Foods.*  Reser's is a nationally distributed brand and manufacturer of food products through giants such as Albertsons, Costco, Food Lion, WinnDixie, Ingles, Safeway and Walmart. Finegan designed an enterprise-wide crisis communication plan that included communications objectives, crisis team roles and responsibilities, crisis response procedures, regulatory protocols, definitions of incidents that require various levels of notice, target audiences, and threat assessment protocols.   Finegan worked with the company through two nationwide, high profile recalls, conducting extensive media relations efforts.

## ARTICLES

Author, "On Demand Media Could Change the Future of Best Practicable Notice," BNA Class Action Litigation Repot, Vol. 9, No. 7, 4/11/2008, pp. 307-310.

Quoted Article, "Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty," Warranty Week, warrantyweek.com/archive/ww20070228.html/ February 28, 2007.

Co-Author, "Approaches to Notice in State Court Class Actions," For The Defense, Vol. 45, No. 11, November, 2003.

Citation, "Recall Effectiveness Research: A Review and Summary of the Literature on Consumer Motivation and Behavior," U.S. Consumer Product Safety Commission, CPSC-F-02-1391, p.10, Heiden Associates, July 2003.

Author, "The Web Offers Near, Real-Time Cost Efficient Notice," American Bankruptcy Institute, ABI Journal, Vol. XXII, No. 5., 2003.

Author, "Determining Adequate Notice in Rule 23 Actions," For The Defense, Vol. 44, No. 9, September, 2002.

Author, "Legal Notice, What You Need To Know and Why," Monograph, July 2002.

Co-Author, "The Electronic Nature of Legal Noticing," The American Bankruptcy Institute Journal, Vol. XXI, No. 3, April 2002.

Author, "Three Important Mantras for CEO's and Risk Managers in 2002," International Risk Management Institute, irmi.com, January 2002.

Co-Author, "Used the Bat Signal Lately," The National Law Journal, Special Litigation Section, February 19, 2001.

Author, "How Much is Enough Notice," Dispute Resolution Alert, Vol. 1, No. 6. March 2001.

Author, "Monitoring the Internet Buzz," The Risk Report, Vol. XXIII, No. 5, Jan. 2001.

Author, "High-Profile Product Recalls Need More Than the Bat Signal," International Risk Management Institute, irmi.com, July 2001.

Co-Author, "Do You Know What 100 Million People are Buzzing About Today?" Risk and Insurance Management, March 2001.

Quoted Article, "Keep Up with Class Action," Kentucky Courier Journal, March 13, 2000.

Author, "The Great Debate - How Much is Enough Legal Notice?" American Bar Association – Class Actions and Derivatives Suits Newsletter, Winter edition 1999.


### SPEAKER/EXPERT PANELIST/PRESENTER

American Bar Association        Speaker - 2008 Annual Meeting – "Practical Advice for Class Action Settlements: The Future of Notice In the United States and Internationally – Meeting the Best Practicable Standard."

| | |
|---|---|
| | Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee New York, NY, August 2008. |
| Women Lawyers Association of Los Angeles | Faculty Panelist, Women Lawyers Association of Los Angeles (WLALA) CLE Presentation, "The Anatomy of a Class Action." Los Angeles, CA, February, 2008. |
| Warranty Chain Management | Faculty Panelist, Presentation Product Recall Simulation. Tampa, Florida - March 2007. |
| Practicing Law Institute | Faculty Panelist, CLE Presentation, 11th Annual Consumer Financial Services Litigation. Presentation: Class Action Settlement Structures – Evolving Notice Standards in the Internet Age. New York/Boston (simulcast), NY March 2006; Chicago, IL April 2006 and San Francisco, CA May 2006. |
| U.S. Consumer Product Safety Commission | Ms. Finegan participated as an expert panelist to the Consumer Product Safety Commission to discuss ways in which the CPSC could enhance and measure the recall process. As a panelist, Ms Finegan discussed how the CPSC could better motivate consumers to take action on recalls and how companies could scientifically measure and defend their outreach efforts. Bethesda MD, September 2003. |
| Weil, Gotshal & Manges | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." New York, June 2003. |
| Sidley & Austin | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." Los Angeles, May 2003. |
| Kirkland & Ellis | Speaker to restructuring group addressing "The Best Practicable Methods to Give Notice in a Tort Bankruptcy." Chicago, April 2002. |
| Georgetown University Law Center Mass Tort Litigation Institute | Faculty, CLE White Paper: "What are the best practicable methods to give notice? Dispelling the communications myth – A notice disseminated is a notice communicated," Mass Tort Litigation Institute. Washington D.C., November 1, 2001. |
| American Bar Association | Presenter, "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits. Chicago, IL, August 6, 2001. |
| McCutchin, Doyle, Brown & Enerson | Speaker to litigation group in San Francisco and simulcast to four other McCutchin locations, addressing the definition of effective notice and barriers to communication that affect due process in legal notice. San Francisco, CA, June 2001. |
| Marylhurst University | Guest lecturer on public relations research methods. Portland, OR, February 2001. |

| University of Oregon | Guest speaker to MBA candidates on quantitative and qualitative research for marketing and communications programs. Portland, OR, May 2001. |
| --- | --- |
| Judicial Arbitration & Mediation Services (JAMS) | Speaker on the definition of effective notice.  San Francisco and Los Angeles, CA, June 2000. |
| International Risk Management Institute | Past Expert Commentator on Crisis and Litigation Communications. www.irmi.com. |
| The American Bankruptcy Institute Journal (ABI) | Past Contributing Editor – Beyond the Quill. www.abi.org. |

## **BACKGROUND**

Prior to joining The Garden City Group, Inc., Finegan co-founded Huntington Advertising, a nationally recognized leader in legal notice communications.  After Fleet Bank purchased her firm in 1997, she grew the company into one of the nation's leading legal notice communication agencies.

Prior to that, Finegan spearheaded Huntington Communications, (an Internet development company) and The Huntington Group, Inc., (a public relations firm).  As a partner and consultant, she has worked on a wide variety of client marketing, research, advertising, public relations and Internet programs.  During her tenure at the Huntington Group, client projects included advertising (media planning and buying), shareholder meetings, direct mail, public relations (planning, financial communications) and community outreach programs. Her past client list includes large public and privately held companies: Code-A-Phone Corp., Thrifty-Payless Drug Stores, Hyster-Yale, The Portland Winter Hawks Hockey Team, U.S. National Bank, U.S. Trust Company, Morley Capital Management, and Durametal Corporation.

Prior to Huntington Advertising, Finegan worked as a consultant and public relations specialist for a West Coast-based Management and Public Relations Consulting firm.

Additionally, Finegan has experience in news and public affairs. Her professional background includes being a reporter, anchor and public affairs director for KWJJ/KJIB radio in Portland, Oregon, as well as reporter covering state government for KBZY radio in Salem, Oregon. Finegan worked as an assistant television program/promotion manager for KPDX directing $50 million in programming. Additionally she was the program/promotion manager at and KECH-22 television.

Finegan's multi-level communication background gives her a thorough, hands-on understanding of media, the communication process, and how it relates to creating effective and efficient legal notice campaigns.

## **MEMBERSHIPS AND PROFESSIONAL CREDENTIALS**

**APR - Accredited Public Relations** - The Universal Board of Accreditation Public Relations Society of America.

**Member of the Public Relations Society of America.**
**Member Canadian Public Relations Society.**

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WILLIAM W. MCGEE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>CONTINENTAL TIRE NORTH AMERICA, INC.<br>Defendant.<br>_____ | Civil Action No. 2:06-CV-06234 (GEB) (CCC) |

## NOTICE OF CLASS ACTION, PROPOSED SETTLEMENT, AND FAIRNESS HEARING

*A Federal Court authorized this notice.  This is not a solicitation from a lawyer.*

**YOU ARE <u>NOT</u> BEING SUED.**

**If you purchased or leased a Chrysler or Dodge vehicle with certain factory installed Continental Tires or purchased proper replacement Continental tires since 2003, the proposed settlement of a class action lawsuit may affect your rights.**

Your legal rights are affected whether you act or don't act.  **Read this notice carefully because it explains decisions you must make and actions you must take <u>now</u>.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | | |
|---|---|---|
| **DO NOTHING** | You get no payment.  You give up your rights. | |
| **SUBMIT A CLAIM FORM** | This is the only way to get a payment. | The Claim Form, which is attached to this notice as Appendix B, must be completed and **postmarked** on or before September 15, 2010, subject to the qualifications and requirements addressed below. |
| **EXCLUDE YOURSELF** | You get no payment under the settlement.  This is the only choice that will allow you to sue Continental on your own about the claims discussed in this notice. | An exclusion request must be in writing and **postmarked** on or before September 15, 2008. |
| **OBJECT** | You can write to the Court about why you do not agree with the settlement. | An objection must be in writing and filed and received on or before September 15, 2008**.** |
| **GO TO A HEARING** | You can ask to speak to the Court about the "fairness" of the settlement, after you submit your objection. | A Notice of Intention to Appear must be in writing, filed and received on or before September 15, 2008 in addition to submitting a timely objection**.** |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court still has to decide whether to approve the settlement.  Payments will be distributed if the Court approves the settlement and after appeals, if any, are resolved in favor of the settlement.  Please be patient.

- If you do not exclude yourself from the Class, the proposed settlement (if approved) will release certain claims, which are reprinted in full in Appendix A to this notice, and will affect your right to start or continue any other lawsuit or proceeding involving your Eligible Tires.

QUESTIONS?  VISIT WWW.TIRESETTLEMENT.COM OR CALL TOLL-FREE 1 (800) 430-8741

## WHAT THIS NOTICE CONTAINS

**PART I:  WHY YOU HAVE RECEIVED THIS NOTICE** ....................................................... 3
   **1.**  WHY DID I RECEIVE THIS NOTICE? ............................................................................ 3
   **2.**  WHAT IS THIS LAWSUIT ABOUT AND WHY DID IT SETTLE? ............................... 3
   **3.**  WHAT DOES THE SETTLEMENT PROVIDE? .............................................................. 3

**PART II:  DESCRIPTION OF THE CLASS** ........................................................................... 4
   **4.**  WHY IS THIS A CLASS ACTION? ................................................................................ 4
   **5.**  AM I A MEMBER OF THE CLASS? ............................................................................... 4
   **6.**  ARE THERE EXCEPTIONS TO BEING INCLUDED? .................................................. 4
   **7.**  WHAT ARE "ELIGIBLE TIRES"? ................................................................................. 4
   **8.**  I'M STILL NOT SURE IF I'M INCLUDED. .................................................................... 5

**PART III:  DECISIONS YOU MUST MAKE NOW** ............................................................... 5
   **9.**  WHAT DO I NEED TO DO NOW? ................................................................................. 5
  **10.**  WHAT DO I GIVE UP IF I CHOOSE TO STAY IN THE CLASS? ............................... 5
  **11.**  DO I HAVE TO SIGN A RELEASE? ............................................................................... 5
  **12.**  WHAT IF I DO NOTHING? ............................................................................................. 5

**PART IV:  SETTLEMENT BENEFITS – WHAT YOU CAN GET** ........................................ 6
  **13.**  WHAT CAN I GET FROM THE SETTLEMENT? .......................................................... 6
  **14.**  HOW CAN I MAKE A CLAIM? ...................................................................................... 6
  **15.**  WHAT IS THE CLAIM REVIEW PROCESS? ............................................................... 6
  **16.**  HOW MUCH IS THE CLAIM REVIEW PROCESS WORTH TO THE CLASS? ......... 7
  **17.**  WHAT HAPPENS AFTER ALL CLAIMS ARE PROCESSED AND THERE ARE FUNDS REMAINING? ........ 7
  **18.**  WHEN WILL I GET MY PAYMENT, IF ANY? .............................................................. 8
  **19.**  WILL THE SETTLEMENT HAVE TAX CONSEQUENCES FOR ME? ........................ 8

**PART V:  CAN I FILE A LATER LAWSUIT MAKING SIMILAR CLAIMS?** ..................... 8

**PART VI:  THE LAWYERS REPRESENTING THE CLASS** .................................................. 8
  **20.**  DO I HAVE A LAWYER IN THIS CASE? ..................................................................... 8
  **21.**  HOW WILL THE LAWYERS AND CLASS REPRESENTATIVES BE PAID? ............ 9

**PART VII:  EXCLUDING YOURSELF FROM THE SETTLEMENT** .................................... 9
  **22.**  HOW DO I GET OUT OF OR EXCLUDE MYSELF FROM THE SETTLEMENT? ...... 9
  **23.**  WHAT HAPPENS IF I EXCLUDE MYSELF FROM THE CLASS? ............................ 10
  **24.**  IF I DON'T EXCLUDE MYSELF, CAN I SUE CONTINENTAL LATER? .................. 10

**PART VIII:  OBJECTING TO THE SETTLEMENT** ............................................................ 10
  **25.**  HOW CAN I OBJECT TO THE PROPOSED SETTLEMENT? .................................... 10
  **26.**  WHAT IS THE DIFFERENCE BETWEEN "OBJECTING" AND "EXCLUDING"? ........ 11

**PART IX:  THE COURT'S FAIRNESS HEARING** ............................................................... 11
  **27.**  WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT? ......... 11
  **28.**  DO I HAVE TO COME TO THE HEARING? ................................................................ 11
  **29.**  MAY I SPEAK AT THE FAIRNESS HEARING? ......................................................... 11
  **30.**  WHAT DO I HAVE TO DO TO SPEAK AT THE FAIRNESS HEARING? .................. 12

**PART X:  GETTING ADDITIONAL INFORMATION** .......................................................... 12

## PART I:  WHY YOU HAVE RECEIVED THIS NOTICE

### 1.      WHY DID I RECEIVE THIS NOTICE?

You received this notice because you may be eligible to receive payment from the proposed settlement of a class action lawsuit that was brought on behalf of a Class of persons or entities who purchased or received Eligible Tires, as further discussed below, from Continental Tire North America, Inc. ("Continental"), an automobile tire manufacturer.

The Court sent you this notice because you have a right to know about the proposed settlement of this class action lawsuit, and about your rights and options, before the Court decides whether to approve the settlement.  If the Court approves the class action settlement, and after any appeals are resolved in favor of the settlement, an Administrator appointed by the Court will make the payments that the settlement allows. You will be informed of the progress of this settlement and may receive payment if you are a Class Member and submit a completed and timely Claim Form.

This package explains: (1) this lawsuit, (2) the proposed settlement, (3) your legal rights, (4) what payments are available, (5) who is eligible for what payments under the settlement, (6) how to get a payment, and (7) other important information.

The essential terms of the settlement are summarized below.  The Settlement Agreement sets forth in greater detail the rights and obligations of the parties.  If there is any conflict between this notice and the Settlement Agreement, the Settlement Agreement governs.

### 2.      WHAT IS THIS LAWSUIT ABOUT AND WHY DID IT SETTLE?

The lawsuit, *William W. McGee v. Continental Tire North America*, alleged that Continental breached certain warranties and violated a consumer fraud statute relating to the performance of certain of its tires that were installed on some Chrysler, Dodge and other manufacturers' automobiles between 2003 and 2008.  McGee alleged that Continental failed to disclose at the time they marketed, warranted, sold or delivered the ContiSeal tires to consumers that the tires would incur abnormal and premature treadwear, often requiring replacement within the first 20,000 miles of use.  Continental denies any and all allegations of wrongdoing and does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been or could have been alleged in this lawsuit or in any similar action.

The parties negotiated the proposed settlement with an understanding of the factual and legal issues that would affect the outcome of this class action.  A related lawsuit is pending in Pennsylvania, *Robert Reibstein v. Continental Tire North America, Inc.*, Civil Action No. 2:07-cv-302-LP (E.D. Pa.) ("*Reibstein*"), which is also being settled as part of the Settlement Agreement.  The plaintiffs, through their attorneys, thoroughly examined and investigated the facts and law relating to the issues in both cases, extensively reviewed thousands of pages of documents produced by Continental, and conducted interviews with various Continental witnesses.

The parties believe that the settlement is fair, reasonable and adequate and will provide substantial benefit to the Class, based on their knowledge of the litigation, and their experience.

The Court has not decided whether the plaintiffs' claims or Continental's defenses have any merit, and it will not do so if the proposed settlement is approved.  The proposed settlement does not suggest that Continental has or has not done anything wrong, or that the plaintiffs and the Class would or would not win their case if it were to go to trial.

### 3.      WHAT DOES THE SETTLEMENT PROVIDE?

The settlement provides that Continental will pay no less than $5 million and no more than $8 million to resolve all timely and valid Claims submitted through the Claim Process, as further described below.

If you are a Class Member who purchased or received any of the Eligible Tires from January 1, 2003 to July 14, 2008, as further described below, you may be eligible for payment if you complete and submit a Claim Form with documentation before the deadline, subject to certain conditions and limitations.  In return for the benefits in this settlement, and if the settlement is implemented, the Class will release Continental and others for the claims discussed in Appendix A, and this case and *Reibstein* will be dismissed with prejudice, among other terms.

## PART II:  DESCRIPTION OF THE CLASS

### 4.    WHY IS THIS A CLASS ACTION?

This case is known as *William W. McGee v. Continental Tire North America*, Case No. 2:06-CV-06234.  The Court in charge of this case is the United States District Court for the District of New Jersey.  The named person who sued is the Plaintiff, and the company he sued, Continental, is the Defendant.

In a class action, one or more people, called Class Representatives (in this case, William W. McGee and Robert Reibstein), sue on behalf of people who have similar claims. All these people are a Class or are Class Members.  One Court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

### 5.    AM I A MEMBER OF THE CLASS?

With some limited exceptions, described below, the Class encompasses all persons or entities that purchased or received Eligible Tires as part of an automobile purchase or lease transaction and/or purchased or received Eligible Tires to replace other tires, including, but not limited to, Eligible Tires, between January 1, 2003 and July 14, 2008.

### 6.    ARE THERE EXCEPTIONS TO BEING INCLUDED?

The Class does not include the following persons or entities:

* Continental or any of its Board members or executive level officers, including its attorneys;
* Persons or entities who have a claim for personal injury or damage to property, other than to the Eligible Tires themselves;
* Original equipment automobile manufacturers;
* Purchasers of Eligible Tires or of automobiles on which Eligible Tires were installed for the purpose of leasing, renting, resale or distribution;
* The Judge and Magistrate Judge and their immediate families presiding over this lawsuit or *Reibstein*;
* Governmental entities; and
* Persons or entities that have timely and properly excluded themselves from the settlement.

### 7.    WHAT ARE "ELIGIBLE TIRES"?

"Eligible Tires" include the following Continental tires, purchased or otherwise obtained as new tires by Class Members, between January 1, 2003 and July 14, 2008:

| |
|---|
| P215/65R17 98T ContiTouringContact with Conti*Seal |
| P225/60R18 99H ContiTouringContact with Conti*Seal |
| P225/60R18 99H ContiTouringContact without Conti*Seal |

Tires purchased as used tires or that were otherwise not new tires are not Eligible Tires.

For illustrative purposes and not by way of limitation, Eligible Tires also were installed as original equipment on the following Chrysler (formerly DaimlerChrysler) and Dodge vehicle models from model year 2003 up to and including model year 2008:

| | |
|---|---|
| Chrysler 300 | Dodge Magnum SXT |
| Chrysler 300 Touring | Dodge Magnum R/T |
| Chrysler 300 Limited | Dodge Charger SE |
| Chrysler 300C | Dodge Charger SXT |
| Dodge Magnum SE | Dodge Charger R/T |

Eligible Tires may have been installed on makes and models of other vehicles during this same time period as proper replacements.

QUESTIONS?  VISIT WWW.TIRESETTLEMENT.COM OR CALL TOLL-FREE 1 (800) 430-8741

**8.      I'M STILL NOT SURE IF I'M INCLUDED.**

If you do not understand whether or not you are a Class Member, you can visit our web site, www.tiresettlement.com, or you can contact Class Counsel.

## PART III:  DECISIONS YOU MUST MAKE NOW

**9.      WHAT DO I NEED TO DO <u>NOW</u>?**

**FIRST**, you must decide <u>now</u> whether you wish to remain in the Class or to exclude yourself from the Class.  If you want to be excluded from the Class, you must notify the Court as described below **no later than September 15, 2008**.  **If you exclude yourself**:

- You will **<u>not</u>** be eligible for payment under the settlement.
- You will **<u>not</u>** be able to object to the proposed settlement and to appear at the Fairness Hearing.
- You will **<u>not</u>** be bound by any orders or judgments entered in this case, if the proposed settlement is approved.

**SECOND**, if you remain in the Class, you may object to any part of the proposed settlement by filing a written objection with the Court.  The Court and the parties must **<u>receive</u>** your written objection **no later than September 15, 2008**.

Additionally, if you file an objection, you may also decide to appear and speak at the Court's Fairness Hearing regarding the settlement of this lawsuit.  If you wish to appear and speak at the Court's Fairness Hearing, you must have first submitted an objection and file a Notice of Intention to Appear at the Fairness Hearing that must be **<u>received</u> by September 15, 2008**.

**10.      WHAT DO I GIVE UP IF I CHOOSE TO STAY IN THE CLASS?**

**If you choose to remain in the Class, you may submit a Claim Form and may receive payment under the settlement if you satisfy the requirements of the Settlement Agreement, but you will also be bound by all orders, injunctions, and judgments in this case, whether favorable or unfavorable.  You will not be able to start, continue or otherwise participate in any other claim, lawsuit or other proceeding against Continental if those claims have been (or could have been) asserted in this lawsuit.**

**11.      DO I HAVE TO SIGN A RELEASE?**

**No.  If you remain in the Class, you automatically give up your rights to pursue or continue any action against Continental relating to your Eligible Tires and the claims at issue in this lawsuit.**  Class members are releasing a wide range of claims in order to receive the benefits in the Settlement Agreement.  A word-for-word copy of the Release is attached to this notice as Appendix A.

**12.      WHAT IF I DO NOTHING?**

**If you do nothing, you will <u>not</u> get benefits from the settlement.**  You must complete and send a Claim Form before the deadline, which is September 15, 2010, in order to be considered for payment under the settlement.

Unless you exclude yourself from the Class, all of the Court's orders will apply to you and you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Continental about the claims in this lawsuit, ever again, regardless of whether you submit a Claim Form.

**PART IV:  SETTLEMENT BENEFITS – WHAT YOU CAN GET**

**13.     WHAT CAN I GET FROM THE SETTLEMENT?**

The amount of the cash payment you may be entitled to under the proposed settlement depends upon the size of the tire, the number of tires at issue, the number of miles driven on the Eligible Tires and other factors.  The assumed purchase price for an Eligible Tire is **$60 for <u>each</u> 17" Eligible Tire** and **$120 for <u>each</u> 18" Eligible Tire**, subject to the <u>deductions</u> discussed below.

If you do not indicate the size of your Eligible Tire on your Claim Form, any potential payment you may be entitled to will be based on the 17" tire refund amount.

For each Eligible Tire you submit a Claim for through the Claim Form, you may receive, subject to any reductions and limitations discussed below:

• **75%** of the refund amount for each Eligible Tire driven between **0 miles** and **12,000 miles**;

• **50%** of the refund amount for each Eligible Tire driven between **12,001 miles** and **20,000 miles**;

• **25%** of the refund amount for each Eligible Tire driven between **20,001 miles** and **30,000 miles**.

| Miles | Payment for 17" Tire | Payment for 18" Tire |
|---|---|---|
| 0 – 12,000 | 75% x $60 = $45 | 75% x $120 = $90 |
| 12,001 – 20,000 | 50% x $60 = $30 | 50% x $120 = $60 |
| 20,001 – 30,000 | 25% x $60 = $15 | 25% x $120 = $30 |

If you previously received a warranty or policy adjustment or credit, this amount will be deducted from any settlement amount.

**14.     HOW CAN I MAKE A CLAIM?**

To receive a payment under the settlement, you must send in a Claim Form.  A Claim Form and directions are attached as **Appendix B** to this notice.  You may also print a Claim Form and other relevant documents at www.tiresettlement.com. Read the instructions and certification carefully, fill out the form completely and accurately, include all the documents the Claim Form requests, sign it and mail it **postmarked** no later than September 15, 2010.

**15.     WHAT IS THE CLAIM REVIEW PROCESS?**

You will be eligible for payment provided that you are a Class Member and you complete and timely submit the Claim Form to the Court-appointed Notice and Settlement Administrator ("Administrator"), together with any required documentation, demonstrating purchase or receipt of an Eligible Tire between January 1, 2003 and July 14, 2008.  **The deadline to submit Claim Forms is September 15, 2010.**

Shortly after receipt of the Claim Form, the Administrator will review, prepare, and forward the Claim Form to Continental. Continental may review the Claim Form and approve or contest any Claim.  If Continental does not contest a Claim, the Administrator will pay that Claim.

If Continental contests a Claim, including but not limited to, requesting supporting documentation, Continental will notify the Administrator, who will mail, within ten (10) business days, a letter that advises you of the reason(s) why the Claim Form was contested and request, if applicable, any and all additional information and/or documentation to validate the Claim and have it submitted for payment.  You will have thirty-five (35) days from the date of the **postmarked** letter sent by the Administrator to respond to the Administrator's request.

If you timely provide the requested information and/or documentation, the Claim will be deemed validated and shall be paid by the Administrator.  If you do not timely and completely provide the requested information and/or documentation, the Administrator will send you a letter stating that the Claim has been denied.  The Administrator's determination of a Claim is final and may not be appealed by anyone.

### 16.    HOW MUCH IS THE CLAIM REVIEW PROCESS WORTH TO THE CLASS?

Continental will pay not less than $5 million and not more than $8 million to resolve all timely and valid Claims submitted to the Claim Process.  Pursuant to Court Order, Continental has deposited $5 million into an Escrow Account for distribution by the Administrator and will make additional deposits, if necessary, until the $8 million cap is reached.

Unless all of the timely, valid and approved Claims submitted amount to or exceed $8 million, all funds deposited into the Escrow Account by Continental will be used to pay:

> (i)     All timely, valid and approved Claims;
> (ii)    Any incentive awards to the Class Representatives awarded by the Court;
> (iii)   Class Counsel's fees and costs awarded by the Court;
> (iv)    Any and all notice and Claim processing administrative fees and costs; and
> (v)     Any bank fees and costs associated with administering the settlement.

The Escrow Account will not be used to pay Continental's attorneys' fees and costs.

**The payment of approved Claims will occur between six and twenty-four months after the beginning of the Claim Period, which begins on September 15, 2008.**  However, if there are appeals or similar activity, there will be a delay in the payment of Claims until the appeals or other acts are resolved in favor of the settlement.

Additionally, if the total amount of timely, valid and approved Claims exceeds the amount specified for a particular Claim determination period, then the latest filed approved Claims shall be placed into the next period for payment until the maximum amount specified for the affected Claim determination period is not exceeded.  If, during the last Claim determination period, there are too many eligible Claimants, each Claimant's award shall be reduced *pro rata*.

The amounts for the Claim determination periods are:

- If, at the end of six months the total amount of approved Claims is less than $4 million, all of these pending Claims will be paid in full.

- If the total amount of approved Claims to be paid during the sixth through twelfth month period is less than $2 million, all of these pending Claims will be paid in full.

- If the total amount of approved Claims to be paid during the twelfth through eighteenth month period is less than $1 million, all of these pending Claims will be paid in full.

- If the total amount of approved Claims to be paid during the eighteenth through twenty-fourth month period is less than $1 million, all of these pending Claims will be paid in full.

### 17.    WHAT HAPPENS AFTER ALL CLAIMS ARE PROCESSED AND THERE ARE FUNDS REMAINING?

If, after the full distribution of funds, there are any funds remaining and the Escrow Account has paid out **less than $5 million** for all purposes indicated above, the parties may either: (a) make a recommendation to the Court for the distribution of the remaining funds to a non-profit organization that would benefit the Class as a whole as part of a *cy pres* award; or (b) agree to extend the period in which Claims are submitted to the Claims Process and paid, to the extent that the amount paid from the Escrow Account does not exceed $5 million.

**18.    WHEN WILL I GET MY PAYMENT, IF ANY?**

The Court will hold a Fairness Hearing on October 21, 2008 at 12:00 noon to decide whether or not to approve the proposed settlement.  The Court must approve the proposed settlement before any payments can be made.  The Court will grant its approval only if it finds that the proposed settlement is fair, reasonable and adequate.  In addition, the Court's order may be subject to appeals.  It is always uncertain whether these appeals can be resolved, and resolving them takes time, sometimes more than a year.  Finally, there remains a possibility that this settlement may be terminated for other reasons.  Everyone who sends in a Claim Form will be informed of the progress of the settlement.  Please be patient.

**19.    WILL THE SETTLEMENT HAVE TAX CONSEQUENCES FOR ME?**

Your receipt of a payment under the proposed settlement may have tax consequences for you.    You should consult your own tax advisors to determine any Federal, state, local, or foreign tax consequences that could result from accepting or pursuing any payment under the proposed settlement.

## PART V:  CAN I FILE A LATER LAWSUIT MAKING SIMILAR CLAIMS?

**No.  If you remain a member of the Class and the Settlement is finally approved, you will be automatically enjoined and barred from initiating or continuing any lawsuit or other proceeding against Continental if those claims have been (or could have been) asserted in this lawsuit.**

As part of this settlement, the Court has preliminarily enjoined all Class Members and/or their representatives (who do not timely exclude themselves from the Class) from filing, commencing, prosecuting, maintaining, intervening in, participating in, conducting, or continuing litigation as Class Members or otherwise against Continental (or against any of its related parties or affiliates), and/or from receiving any benefits from, any lawsuit, administrative, or regulatory proceeding or order in any jurisdiction, based on or relating to the claims or causes of actions or the facts, and circumstances relating thereto, in the class action.

The Court has also preliminarily enjoined all persons from filing, commencing, or prosecuting a lawsuit against Continental (or against any of its related parties or affiliates) as a class action, a separate class, or group for purposes of pursuing a putative class action (including by seeking to amend a pending complaint to include class allegations or by seeking class certification in a pending action in any jurisdiction) on behalf of Class Members who do not timely exclude themselves from the Class, arising out of, based on or relating to the claims, causes of action, facts and/or circumstances relating thereto, in the class action.

Upon final approval of the settlement, plaintiffs and Continental will ask the Court to enter a permanent injunction enjoining all Class Members and/or their representatives and/or personally organizing Class Members from engaging in the activities described above.  All Class Members will be bound by this permanent injunction.

## PART VI:  THE LAWYERS REPRESENTING THE CLASS

**20.    DO I HAVE A LAWYER IN THIS CASE?**

The Court has designated the law firms of **Donovan Searles LLC** and **Lundy, Flitter, Beldecos & Berger, P.C.** to represent you and the other Class Members in this lawsuit.  The lawyers representing you and the other Class Members are called Class Counsel. **You will not be charged for the services of the Class Counsel.**

You may contact Class Counsel about this lawsuit and proposed settlement:

| | |
|---|---|
| Cary L. Flitter | Michael D. Donovan |
| Lundy, Flitter, Beldecos & Berger, P.C. | Donovan Searles LLC |
| 450 N. Narberth Avenue | 1845 Walnut Street, Suite 1100 |
| Narberth, PA 19072 | Philadelphia, PA 19103 |

QUESTIONS?  VISIT WWW.TIRESETTLEMENT.COM OR CALL TOLL-FREE 1 (800) 430-8741

You have the right to retain your own lawyer to represent you in this case, but you are not obligated to do so.  If you do hire your own lawyer, you will have to pay his or her fees and expenses.  You also have the right to represent yourself before the Court without a lawyer.

### 21.   HOW WILL THE LAWYERS AND CLASS REPRESENTATIVES BE PAID?

Class Counsel have prosecuted this case on a completely contingent fee and have not been paid anything to date for their services.  Class Counsel will make an application for an award of Attorneys' Fees and Expenses in the Action that will not exceed $2,250,000.00, which shall be the sole aggregate compensation for all attorneys representing the Class in the Action and/or Related Action.  Class Counsel, in their sole discretion, shall allocate and distribute this award of Attorneys' Fees and Expenses among all of the counsel who have acted on behalf of the Class.  Continental shall pay the entire Attorneys' Fees and Expenses awarded by the Court within thirty (30) days after the settlement is final and approved, including any appeals that must be resolved in favor of the settlement.

Class Counsel will petition the Court for incentive awards of up to $3,500.00 for each of the named Plaintiffs, William McGee and Robert Reibstein.  The purpose of such awards, if any, shall be to compensate the named plaintiffs/class representatives for efforts and risks taken by them on behalf of the Class.

Continental shall not be liable for or obligated to pay any fees, expenses, costs, or disbursements to, or incur any expense on behalf of, any person or entity, either directly or indirectly, in connection with this case and/or the <u>Reibstein</u> case, the Settlement Agreement, or the proposed settlement, other than the amount or amounts expressly provided for in the Settlement Agreement.

## PART VII:  EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want a payment from this settlement, but you want to keep the right to sue or continue to sue Continental on your own about the legal issues in this case, then you must take steps to get out of the Class.  This is called excluding yourself or "opting out" of the Class.

### 22.   HOW DO I GET OUT OF OR EXCLUDE MYSELF FROM THE SETTLEMENT?

If you want to be excluded from the Class, you <u>must</u> notify the Court.  To exclude yourself from the settlement, you must send a letter by mail.  Your exclusion request letter must be **postmarked** no later than September 15, 2008.  Send your letter to:

Continental Tire Settlement Claims
c/o The Garden City Group Inc.
P.O. Box 9287
Dublin, OH 43017-4687

Your letter requesting exclusion does not need to be in any particular form, but it **must** include the following information in order to be effective:

(1)  your name;
(2)  your address;
(3)  your telephone number;
(4)  the Eligible Tire model(s) for which you are requesting exclusion;
(5)  a statement that you wish to be excluded from the Class;
(6)  your signature; and
(7)  the case name and number: *McGee v. Continental Tire North America*, Case No. 2:06-CV-06234 (D.N.J.).

Please write **"EXCLUSION REQUEST"** on the lower left-hand corner of the *front* of the envelope.

**23.   WHAT HAPPENS IF I EXCLUDE MYSELF FROM THE CLASS?**

If you request exclusion from the Class, then for each of the excluded Eligible Tires:

- You will **not** be eligible for payment under the proposed settlement;

- You will **not** be allowed to object to the terms of the proposed settlement, and

- You will **not** be bound by any subsequent rulings entered in this case if the proposed settlement is finally approved.

**However, if your request for exclusion is <u>late or deficient</u>, you will still be a part of the Class, you will be bound by the settlement and by all other orders and judgments in this lawsuit, and you will not be able to participate in any other lawsuits based on the claims in this case.**

**24.   IF I DON'T EXCLUDE MYSELF, CAN I SUE CONTINENTAL LATER?**

**No.**  If the Court approves the proposed settlement and you do not exclude yourself from the Class, you release (give up) all claims that have been or could have been asserted in this lawsuit with respect to your Eligible Tires.

## PART VIII:  OBJECTING TO THE SETTLEMENT

You have the right to tell the Court that you do not agree with the settlement or any or all of its terms.

**25.   HOW CAN I OBJECT TO THE PROPOSED SETTLEMENT?**

If you choose to remain a Class Member, you have a right to object to any parts of the proposed settlement.  The Court will consider your views.

To object, you must send a letter saying that you object to *McGee v. Continental Tire North America*, Case No. 2:06-CV-06234.  Your written objection must include:

(1)  your name;
(2)  your address;
(3)  your telephone number;
(4)  the Eligible Tire model(s) that make you a member of the Class;
(5)  a statement of your objection(s), and any supporting evidence you wish to introduce;
(6)  your signature; and
(7)  the case name and number: *McGee v. Continental Tire North America*, Case No. 2:06-CV-06234 (D.N.J.).

If you choose to object, in order to be considered by the Court, your written objections must be **filed and <u>received</u> by all of the following recipients no later than September 15, 2008**:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court **United States District Court District of New Jersey** Clarkson S. Fisher Building and U.S. Courthouse 402 East State Street Room 2020 Trenton, NJ 08608 | Cary L. Flitter **Lundy, Flitter, Beldecos & Berger, P.C.** 450 N. Narberth Avenue Narberth, PA 19072 | John P. Hooper **REED SMITH LLP** 599 Lexington Avenue New York, NY 10022 |

You (and/or your attorney) may, at your own expense, review materials applicable to this Action.  Those documents will be made available by appointment with Class Counsel during regular business hours at a place designated by Class Counsel.  To obtain access to certain materials you (and/or your attorney) must first sign a Confidentiality Agreement, which Class Counsel will provide.

If you an file objection, but the Court approves the settlement as proposed, you can still complete a Claim Form to be eligible for payment under the settlement, subject to the terms and conditions discussed in this Notice and in the Settlement Agreement.

### 26.      WHAT IS THE DIFFERENCE BETWEEN "OBJECTING" AND "EXCLUDING"?

Objecting is simply a way of telling the Court that you don't like something about the settlement.   You can only object if you stay in the Class.

If you object to the settlement, you still remain a member of the Class and you will still be eligible to submit a Claim Form.  You will also be bound by any subsequent rulings in this case and you will not be able to file or participate in any other lawsuit or proceeding based upon or relating to the claims, causes of action, facts or circumstances of this case.  Excluding yourself is telling the Court that you don't want to be a part of the Class.  If you exclude yourself, you have no basis to object to the settlement or appear at the Fairness Hearing because it no longer affects you.

## PART IX:  THE COURT'S FAIRNESS HEARING

The Court will hold a hearing (called a Fairness Hearing) to decide whether to finally approve the settlement.  You may attend and you may ask to speak, but you don't have to.

### 27.      WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

On October 21, 2008, at 12:00 noon, the Court will hold a Fairness Hearing at the United States District Court for the District of New Jersey, before the Honorable Garrett E. Brown, Jr., in Courtroom 4E, Clarkson S. Fisher Building and U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608.

At the hearing, the Court will consider whether to grant final certification to the Class for settlement purposes, whether to approve the proposed settlement as fair, reasonable and adequate, whether to award attorneys' fees and costs, whether to award the Class Representatives an award for their help, whether to issue a permanent injunction, and to consider related settlement issues.

### 28.      DO I HAVE TO COME TO THE HEARING?

No.  Class Counsel will answer questions the Court may have at the Fairness Hearing.  But you are welcome to come at your own expense.  Please note that the Court has the right to change the date and/or time of the Fairness Hearing without further notice.  If you are planning to attend the hearing, you should confirm the date and time before going to the Court.

### 29.      MAY I SPEAK AT THE FAIRNESS HEARING?

Yes, if you have filed an objection, you may ask the Court for permission to speak at the hearing.  To do so, you must submit an objection and also file a document called a "Notice of Intention to Appear."

**30.      WHAT DO I HAVE TO DO TO SPEAK AT THE FAIRNESS HEARING?**

If you are a member of the Class, and you (or your attorney) want to appear and speak at the Fairness Hearing, you (or your attorney) must have submitted an objection and must file a **Notice of Intention to Appear at the Fairness Hearing** with the Clerk of the Court, and deliver that Notice on the attorneys for both sides, at the addresses listed above.   **Your Notice of Intention to Appear at the Fairness Hearing must be filed and <u>received</u> by all recipients specified in Part VIII, question number 25 no later than September 15, 2008.**

If you file an objection and appear at the Fairness Hearing, but the Court approves the settlement as proposed, you can still complete a Claim Form to be eligible for payment under the settlement, subject to the terms and conditions discussed in this Notice and in the Settlement Agreement.

## PART X:  GETTING ADDITIONAL INFORMATION

This Notice and the accompanying documents summarize the proposed settlement.   More details are contained in the Settlement Agreement.   The full Settlement Agreement is on file with the Clerk of the Court.   For a more detailed statement of the matters involved in this case, the complaint and the other papers and Court orders on file in the Clerk's office at any time during normal business hours, Monday through Friday, 9:00 a.m. to 4:00 p.m. EDT.

If you have questions after reading this notice, you can visit www.tiresettlement.com to obtain additional information about the proposed settlement and the Claim Form or you can call, toll-free, 1-800-430-8741 to obtain additional information about the settlement.   You may also direct your questions about the settlement to Class Counsel, whose names and addresses are listed in Part VI, question number 20 of this Notice.

**PLEASE DO NOT CALL THE COURT OR THE CLERK OF THE COURT**

Dated:  June 12, 2008                                      Clerk of the Court for the United States
                                                           District Court for the District of New Jersey

## APPENDIX A

### Release And Waiver of Claims

1.   In consideration for the settlement benefits described in this Agreement, Plaintiffs and the Class, on behalf of themselves, their heirs, guardians, assigns, executors, administrators, predecessors, and successors, hereby release, acquit, and discharge the Releasees from and for any and all manner of claims, actions, causes of action, suits, debts, sums of money, payments, obligations, reckonings, contracts, agreements, executions, promises, damages, liens, judgments and demands whatsoever, both at law and in equity, whether past, present or future, mature or not yet mature, known or unknown, suspected or unsuspected, whether based on federal, state or local law, statute, ordinance, regulation, contract, common law, or any other source, or any claim that Plaintiffs or Class Members ever had, now have, may have, or hereafter can, shall or may ever have in any other court, tribunal, arbitration panel, commission, agency, or before any governmental and/or administrative body, or any other adjudicatory body, on the basis of, connected with, arising from or in any way whatsoever relating to the Action, the Related Action, and/or the Eligible Tires, and more particularly, but without in any way limiting the generality of the foregoing, arising from, directly or indirectly, or in any way whatsoever pertaining or relating to:

(a)   the design, testing, marketing, advertising, promotion, manufacture, distribution, operation, performance, functionality, notification, replacement, sale and/or resale by the Releasees of the Eligible Tires;

(b)   the purchase, ownership, or use by Plaintiffs and/or Class Members of the Eligible Tires;

(c)   any violation of 18 U.S.C. §§ 1961-68 (Racketeer Influenced and Corrupt Organizations Act), or any claim for conspiring to violate same relating to the Eligible Tires;

(d)   any claims for rescission or restitution or for all damages of any kind, claims for fraud, fraudulent concealment, consumer fraud, civil conspiracy, negligence, misrepresentation, bad faith, strict liability and/or negligent misrepresentation relating to the Eligible Tires;

(e)   any violation of CA. Bus. & Prof. Code §§ 17200 - 17500, N.J.S.A. 56:8-1 *et seq.*, or any other deceptive or unfair business practices, fraud or consumer protection statute existing in the remaining 48 states, the District of Columbia, the Commonwealth of Puerto Rico or the Territory of Guam relating to the Eligible Tires;

(f)   any violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, the Uniform Commercial Code, any similar federal, state or local statutes, codes, or regulations, or any warranties required or governed by any federal, state, administrative, agency, common or local law, code, or regulation relating to warranties or tires;

(g)   any claims for contribution or indemnity relating to the Eligible Tires;

(h)   extra-contractual damages, compensatory damages, exemplary damages, punitive damages and/or damage multipliers, disgorgement, declaratory relief, unjust enrichment, emotional distress, or attorneys' fees, judgment and expenses of any type whatsoever relating to the Eligible Tires;

(i)   any of the consideration given by the Releasees to Plaintiffs or Class in connection with this Agreement;

(j)   any allegation that the Releasees misinformed, misled or deceived Plaintiffs or Class Members regarding safety, durability, performance, and/or longevity relating to the Eligible Tires;

(k)   any allegation that the Releasees failed to warn and/or adequately disclose that the Eligible Tires would incur premature and/or abnormal tread wear;

(l)   any allegation regarding increased costs, servicing requirements, and/or duration or longevity limitations of the Eligible Tires;

QUESTIONS?  VISIT WWW.TIRESETTLEMENT.COM OR CALL TOLL-FREE 1 (800) 430-8741

(m)   any allegation that the Releasees failed to conduct appropriate and/or adequate studies or testing of the Eligible Tires;

(n)   any allegation that the Releasees failed to honor or abide by the terms of express or implied warranties that would have required them to reimburse Plaintiffs or Class Members and/or repair, correct or replace any Eligible Tires;

(o)   any allegation of engaging in unconscionable commercial practices relating to the Eligible Tires or the allegations in the Action or the Related Action; and

(p)   any other claims asserted, or that could have been asserted, or which relate to the allegations in this Action and/or the Related Action.

2.   Notwithstanding the language in this section and/or this Agreement, the Plaintiffs and the Class are not releasing any claims of personal injury or wrongful death or property damage other than to the Eligible Tires themselves.

3.   Plaintiffs and all Class Members represent and warrant that they are the sole and exclusive owner of all claims that they are releasing under this Agreement.  Plaintiffs and all Class Members further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action, including without limitation, any claim for benefits, proceeds or value under the Action, and that Plaintiffs and all Class Members are not aware of anyone other than themselves claiming any interest, in whole or in part, in the Action or in any benefits, proceeds or values under the Action.

4.   Plaintiffs and all Class Members further represent that there are no outstanding liens or claims against the Action and/or settlement proceeds, it being recognized that Plaintiffs and all Class Members will solely be charged with the responsibility to satisfy any other liens or claims asserted against the Action, and/or settlement proceeds or arising in any way from this Agreement.

5.   Without in any way limiting its scope, this Release covers by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, costs or any other fees, costs, and/or disbursements incurred by Class Counsel, or by Plaintiffs or the Class Members, except to the extent otherwise specified in the Agreement.

6.   Plaintiffs and all Class Members expressly agree that this Release will be, and may be raised as, a complete defense to and will preclude any action or proceeding encompassed by this Release, or arising out of or relating to the allegations in the Action and/or the Related Action.

7.   Plaintiffs and all Class Members expressly understand and acknowledge that certain principles of law, including, but not limited to, Section 1542 of the Civil Code of the State of California, provide that "a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."  To the extent that anyone might argue that these principles of law are applicable – notwithstanding that the Class and the Releasees have chosen New Jersey law to govern this Agreement – Plaintiffs and all Class Members hereby agree that the provisions of all such principles of law or similar federal or state laws, rights, rules, or legal principles, to the extent they are found to be applicable herein, are hereby knowingly and voluntarily waived, relinquished and released by Plaintiffs and all Class Members.

8.   Nothing in this Release shall preclude any action to enforce the terms of the Agreement, including participation in any of the processes detailed therein.

9.   Plaintiffs and all Class Members hereby agree and acknowledge that the provisions of this Release together constitute an essential and material term of the Agreement and shall be included in any Final Order and Judgment entered by the Court.

<table>
<tr><td>

**MUST BE POSTMARKED NO LATER THAN SEPTEMBER 15, 2010**

</td><td>

**Continental Tire Settlement Claims**
**c/o The Garden City Group, Inc.**
**P.O. Box 9287**
**Dublin, OH 43017-4687**
**Toll-Free 1 (800) 430-8741**

</td><td>

TIR 

</td></tr>
</table>

Claim Number: _____    Control Number: _____

**WRITE ANY VEHICLE INFORMATION CORRECTIONS IN THE SPACES PROVIDED BELOW.** IF THERE IS NO PREPRINTED VEHICLE INFORMATION, YOU MUST PROVIDE IT.

**Make:** _____

**Model:** _____

**Year:** _____

**VIN:** _____

**Date of Purchase:** _____

**Tire Model:** _____

# CLAIM FORM
## CONTINENTAL TIRE SETTLEMENT

This Claim Form should be used to request a payment if you purchased or leased an automobile equipped with one of the tires listed below, or purchased such tire(s) from a tire retailer, between January 1, 2003 and July 14, 2008, and experienced less than 30,000 miles in treadwear. Eligible Class members who submit timely and complete Claim Forms may get a payment if the settlement is approved. The enclosed notice describes your legal rights and options. Please visit www.TireSettlement.com or call toll-free 1 (800) 430-8741 for more information.

**Tires purchased used or that were otherwise not new tires are not included in the settlement.**

If you qualify, your settlement payment will be based on the assumed purchase price allowance of $60 per tire for each 17" Tire and $120 for each 18" Tire, subject to the deductions and other limitations discussed further in the Notice. The amount of money you can get depends on the number of miles you drove before replacing your tires, and on the size and number of new tires you had replaced.

Please print clearly in blue or black ink. This Claim Form and any required documentation must be postmarked no later than **September 15, 2010**. The sooner you submit your claim, the sooner it will be processed.

---

## 1. CLASS MEMBER INFORMATION

Name: _____

Mailing Address: _____
*Number and Street*

*City*: _____    *State*: _____    *Zip Code*: _____

Best Telephone Number: ( ___ ) ___ - ___    E-mail Address: _____

*(E-mail address is not required, but if you provide it you authorize the Settlement Administrator to use it in providing you with information relevant to your claim.)*

***Please continue this Claim Form on the reverse side.***

| 2. **TIRE INFORMATION - CONTINENTAL TIRES THAT WERE REPLACED DUE TO EARLY WEAR** |
|---|

A. **Chrysler or Dodge Vehicle Purchase or Lease:** *Fill out this section if you purchased or leased a Chrysler or Dodge vehicle that was equipped with one of the listed Continental Tires that you replaced due to early wear.*

Number of miles driven on tires prior to replacement of original tires:

☐ 0 – 12,000   ☐ 12,001 – 20,000   ☐ 20,001 – 30,000

Please attach documentation showing the number of miles driven prior to replacement of original tires and the date of replacement.

Date of tire replacement: _____ / _____
                          *Month*      *Year*

Number of tires that were replaced:

☐ 0   ☐ 1   ☐ 2   ☐ 3   ☐ 4

Type of Continental Tires replaced:

☐ P215/65R17 98T ContiTouringContact with Conti*Seal

☐ P225/60R18 99H ContiTouringContact with Conti*Seal

☐ P225/60R18 99H ContiTouringContact without Conti*Seal

Size of Continental Tires replaced:

☐ 17"   ☐ 18"

Date of purchase of vehicle with Continental Tires: _____ / _____
                                                    *Month*      *Year*

Name and address of dealership where Chrysler or Dodge vehicle with Continental Tire(s) was purchased:

_____
*Name of Dealership*

_____
*City*                                              *State*

If you received a reimbursement or credit off of your replacement tire purchase, due to early treadwear, indicate the amount here:  $_____

B. **Tire Retail Purchase**: *Fill out this section if you purchased one or more of the listed Continental Tires from a tire retailer, online retailer or other replacement tire source, and replaced them due to early wear.*

Number of miles driven on purchased tires prior to replacement:

☐ 0 – 12,000   ☐ 12,001 – 20,000   ☐ 20,001 – 30,000

Please attach documentation showing the number of miles driven prior to replacement of purchased tires and the date of replacement.



Type of Continental Tires:

☐ P215/65R17 98T ContiTouringContact with Conti*Seal

☐ P225/60R18 99H ContiTouringContact with Conti*Seal

☐ P225/60R18 99H ContiTouringContact without Conti*Seal

Size of Continental Tires:

☐ 17"   ☐ 18"

Number of replacement tires purchased:

☐ 0   ☐ 1   ☐ 2   ☐ 3   ☐ 4

Date of tire replacement: _____ / _____
　　　　　　　　　　　　　 *Month*　　 *Year*

If you received a reimbursement or credit off of your replacement tire purchase, due to early treadwear, indicate the amount here:  $_____

**C.**   **Additional Tire Dealership Purchase:** *Fill out this section only if you purchased Continental Tires from a tire retailer, online retailer or other replacement tire source, and these tires (in addition to your original Chrysler / Dodge Continental Tires) were replaced due to early wear.*

Number of miles driven on <u>second</u> set of purchased tires prior to replacement:

☐ 0 – 12,000   ☐ 12,001 – 20,000   ☐ 20,001 – 30,000

Please attach documentation showing the number of miles driven prior to replacement of purchased tires and the date of replacement.

Type of Continental Tires:

☐ P215/65R17 98T ContiTouringContact with Conti*Seal

☐ P225/60R18 99H ContiTouringContact with Conti*Seal

☐ P225/60R18 99H ContiTouringContact without Conti*Seal

Size of Continental Tires:

☐ 17"   ☐ 18"

Number of tires purchased as replacement for second set of Continental Tires:

☐ 0   ☐ 1   ☐ 2   ☐ 3   ☐ 4

Date of tire replacement: _____ / _____
　　　　　　　　　　　　　 *Month*　　 *Year*

If you received a reimbursement or credit off of your replacement tire purchase, due to early treadwear, indicate the amount here:  $_____

## 3. <u>REQUIRED DOCUMENTATION</u>

Attach copies of any of the following documents that show that you replaced your Continental Tires: (check the box next to each document you are enclosing) (Do not send original documents):

☐ Vehicle Bill of Sale

☐ Bill of Sale or Invoice for purchase of any replacement tires

☐ Tire Manufacturer's Warranty

☐ Report from Dealership or Service Provider Identifying Tire(s) on the Vehicle

☐ Other (specify): _____

_____

## 4. <u>SIGN AND DATE YOUR CLAIM FORM</u>

I declare that the information provided above is true and correct and that all copies submitted with this Claim Form are authentic and unaltered copies of the original documents. I understand that my Claim Form may be subject to audit, verification and Court review and that I may need to submit additional information to be paid on this Claim. I understand that if I am found to have made a willfully false statement as to any material matter in this Claim Form, I can be prosecuted. I also understand and acknowledge that, pursuant to the terms of the Settlement Agreement and orders of the Court, as a Class Member I have fully, finally and forever released all claims against Continental and other specified entities relating to Eligible Tires.

_____
*Signature*

_____    _____ / _____ / _____
*Print Name*                                                                          *Month      Day        Year*

## 5. <u>MAIL YOUR CLAIM FORM BY SEPTEMBER 15, 2010</u>

In order to be eligible to receive a payment from this settlement you must mail this Claim Form so that it is postmarked no later than **September 15, 2010** to the following address:

Continental Tire Settlement Claims
c/o The Garden City Group Inc.
P.O. Box 9287
Dublin, OH 43017-4687

# Exhibit C



**The Garden City Group, Inc.**

815 Western Avenue
Suite 200
Seattle, WA 98104
Phone 206-876-5300
Fax 206-876-5201
Toll Free 1-888-404-8013
www.gardencitygroup.com

June 19, 2008

**BY OVERNIGHT MAIL**

Michael Mukasey
Attorney General of the United States of America
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Re:    <u>McGee v. Continental Tire, North America, Inc. 06-CV-06234 (GEB) (CCC) (D.N.J.)</u>
       <u>Notification Pursuant to the Class Action Fairness Act</u>

Dear Mr. Mukasey:

I am writing to you as the Court-appointed Notice and Settlement Administrator in the above-referenced matter.  We are acting on behalf of Continental Tire North America, Inc. ("Continental"), the defendant in the above-referenced action to give you  notice of a proposed nationwide class action settlement that has been preliminarily approved by the Court in an order dated June 12, 2008.  This letter constitutes notice pursuant to 28 U.S.C. § 1715, the Class Action Fairness Act of 2005, and the Court's preliminary approval order.  The nationwide settlement in <u>McGee</u> will also resolve a related action pending in federal court in Philadelphia, Pennsylvania captioned <u>Robert Reibstein v. Continental Tire North America, Inc.</u>, No. 2:07-cv-302-LP (E.D. Pa.).

Please take notice that the Fairness Hearing for the settlement has been set for October 21, 2008 at 12:00 noon before the Honorable Garrett E. Brown, Jr. in Courtroom 4E, Clarkson S. Fisher Building and U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608.

I have also enclosed certain documents from <u>McGee</u> and <u>Reibstein</u> and information required by 28 U.S.C. § 1715, which include the following:

1)      Plaintiff's original complaint in both <u>McGee</u> and <u>Reibstein</u>;

2)      Plaintiff's amended complaint in both <u>McGee</u> and <u>Reibstein</u>;

3)      The order and separate opinion denying Continental's motion for partial dismissal in <u>McGee</u>;

4)      The Settlement Agreement and exhibits, of which attached are the proposed Class Notice (Exhibit 1) and Summary Notice (Exhibit 6), which, pursuant to Court order, are to be disseminated to notify the Class as discussed in the Settlement Agreement (§ 4) and in the Notice and Settlement Administrator's Affidavit (Exhibit 7), all of which were filed in <u>McGee</u>; and



5)    The <u>McGee</u> Court's preliminary approval order, which contains the date, time and location of the Fairness Hearing and also contains the dates by which one must opt out or object and, if applicable, file their notice of intention to appear at the Fairness Hearing.

The complete docket sheets and entries for <u>McGee</u> and <u>Reibstein</u> are available on the federal court's online PACER docketing system.

Although it is not feasible at this time to identify the names of all class members who reside in each state, the parties estimate that the settlement class is comprised of those persons or entities who or which purchased or received approximately 1.4 million Eligible Tires across the country and that the number of class members residing in each state and their share of the claims is generally roughly proportionate to the state's population.

Should you have any questions regarding this submission, please contact either:

> John P. Hooper
> Reed Smith
> 599 Lexington Avenue
> 22nd Floor
> New York, New York 10022
> Tel. 212-205-6125
> Fax 212-521-5450

or

> Joe Kernen
> DLA Piper US LLP
> One Liberty Place
> 1650 Market Street, Suite 4900
> Philadelphia, PA 19103
> Tel. 215-656-3345
> Fax 215-656-3301.

Sincerely,

Jennifer M. Keough

Jennifer Keough
Senior Vice President and Managing Director,
West Coast Operations
The Garden City Group, Inc.

Enclosures

cc:    John P. Hooper (without enclosures)
       Joseph Kernen (without enclosures)
       Dennis M. Reznick (without enclosures)
       Michael D. Donovan (without enclosures)
       Cary L. Flitter (without enclosures)



**The Garden City Group, Inc.**

815 Western Avenue
Suite 200
Seattle, WA 98104
Phone 206-876-5300
Fax 206-876-5201
Toll Free 1-888-404-8013
www.gardencitygroup.com

June 19, 2008

<u>**BY OVERNIGHT MAIL**</u>

The States Attorneys General
identified on Attached Exhibit A

Re:  <u>McGee v. Continental Tire, North America, Inc. 06-CV-06234 (GEB) (CCC) (D.N.J.)</u>
<u>Notification Pursuant to the Class Action Fairness Act</u>

Dear Sir or Madam:

I am writing to you as the Court-appointed Notice and Settlement Administrator in the above-referenced matter.  We are acting on behalf of Continental Tire North America, Inc. ("Continental"), the defendant in the above-referenced action to give you  notice of a proposed nationwide class action settlement that has been preliminarily approved by the Court in an order dated June 12, 2008.  This letter constitutes notice pursuant to 28 U.S.C. § 1715, the Class Action Fairness Act of 2005, and the Court's preliminary approval order.  The nationwide settlement in <u>McGee</u> will also resolve a related action pending in federal court in Philadelphia, Pennsylvania captioned <u>Robert Reibstein v. Continental Tire North America, Inc.</u>, No. 2:07-cv-302-LP (E.D. Pa.).

Please take notice that the Fairness Hearing for the settlement has been set for October 21, 2008 at 12:00 noon before the Honorable Garrett E. Brown, Jr. in Courtroom 4E, Clarkson S. Fisher Building and U.S. Courthouse, 402 East State Street, Trenton, New Jersey 08608.

I have also enclosed certain documents from <u>McGee</u> and <u>Reibstein</u> and information required by 28 U.S.C. § 1715, which include the following:

1)      Plaintiff's original complaint in both <u>McGee</u> and <u>Reibstein</u>;

2)      Plaintiff's amended complaint in both <u>McGee</u> and <u>Reibstein</u>;

3)      The order and separate opinion denying Continental's motion for partial dismissal in <u>McGee</u>;

4)      The Settlement Agreement and exhibits, of which attached are the proposed Class Notice (Exhibit 1) and Summary Notice (Exhibit 6), which, pursuant to Court order, are to be disseminated to notify the Class as discussed in the Settlement Agreement (§ 4) and in the Notice and Settlement Administrator's Affidavit (Exhibit 7), all of which were filed in <u>McGee</u>; and

5)      The <u>McGee</u> Court's preliminary approval order, which contains the date, time and location of the Fairness Hearing and also contains the dates by which one must opt out or object and, if applicable, file their notice of intention to appear at the Fairness Hearing.



June 19, 2008
Page 2

The complete docket sheets and entries for <u>McGee</u> and <u>Reibstein</u> are available on the federal court's online PACER docketing system.

Although it is not feasible at this time to identify the names of all class members who reside in each state, the parties estimate that the settlement class is comprised of those persons or entities who or which purchased or received approximately 1.4 million Eligible Tires across the country and that the number of class members residing in each state and their share of the claims is generally roughly proportionate to the state's population.

Should you have any questions regarding this submission, please contact either:

> John P. Hooper
> Reed Smith
> 599 Lexington Avenue
> 22nd Floor
> New York, New York 10022
> Tel. 212-205-6125
> Fax 212-521-5450

or

> Joe Kernen
> DLA Piper US LLP
> One Liberty Place
> 1650 Market Street, Suite 4900
> Philadelphia, PA 19103
> Tel. 215-656-3345
> Fax 215-656-3301.

Sincerely,

Jennifer Keough
Senior Vice President and Managing Director,
West Coast Operations
The Garden City Group, Inc.

Enclosures

cc:   John P. Hooper (without enclosures)
      Joseph Kernen (without enclosures)
      Dennis M. Reznick (without enclosures)
      Michael D. Donovan (without enclosures)
      Cary L. Flitter (without enclosures)

Current as of 6/17/08

Michael Mukasey
Attorney General of the United States of America
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC  20530-0001
202-353-1555

Talis J. Colberg
Attorney General of the State of Alaska
PO Box 110300
Juneau, AK  99811-0300
907-465-3600

Dustin McDaniel
Attorney General of the State of Arkansas
323 Center St., Suite 200
Little Rock, AR  72201-2610
800-482-8982

John W. Suthers
Attorney General of the State of Colorado
1525 Sherman St., 7th Floor
Denver, CO  80203
303-866-4500

Joseph R. Biden III
Attorney General of the State of Delaware
Carvel State Office Bldg.
820 N. French St.
Wilmington, DE  19801
302-577-8400

Bill McCollum
Attorney General of the State of Florida
The Capitol, PL-01
Tallahassee, FL  32399-1050
850-414-3300

Mark J. Bennett
Attorney General of the State of Hawaii
425 Queen St.
Honolulu, HI  96813
808-586-1500

Troy King
Attorney General of the State of Alabama
Alabama State House
11 S. Union St., 3rd Floor
Montgomery, AL  36130
334-242-7300

Terry Goddard
Attorney General of the State of Arizona
1275 W. Washington St.
Phoenix, AZ  85007
602-542-5025

Edmund G. Brown Jr.
Attorney General of the State of California
P.O. Box 944255
Sacramento, CA  94244-2550
916-445-9555

Richard Blumenthal
Attorney General of the State of Connecticut
55 Elm St.
Hartford, CT  06106
860-808-5318

Peter Nickles (Acting)
Office of the Attorney General
Government of the District of Columbia
One Judiciary Square
441 4th St. NW, Suite 1060N
Washington, DC  20001
202-727-3400

Thurbert E. Baker
Attorney General of the State of Georgia
40 Capitol Square, SW
Atlanta, GA  30334-1300
404-656-3300

Lawrence Wasden
Attorney General of the State of Idaho
700 W. State St.
P.O. Box 83720
Boise, ID  83720-0010
208-334-2400

Lisa Madigan
Attorney General of the State of Illinois
100 West Randolph Street
Chicago, IL  60601
312-814-3000

Current as of 6/17/08

Tom Miller
Attorney General of the State of Iowa
Hoover State Office Building
1305 E. Walnut St.
Des Moines, IA  50319
515-281-5164

Jack Conway
Attorney General of the Commonwealth of Kentucky
The Capitol, Suite 118
700 Capitol Ave.
Frankfort, KY  40601-3449
502-696-5300

G. Steven Rowe
Attorney General of the State of Maine
6 State House Station
Augusta, ME  04333
207-626-8800

Martha Coakley
Attorney General of the Commonwealth of Massachusetts
1 Ashburton Place
Boston, MA  02108
617-727-2200

Lori Swanson
Attorney General of the State of Minnesota
1400 Bremer Tower
445 Minnesota St.
St. Paul, MN  55101
651-296-3353

Jeremiah W. Nixon
Attorney General of the State of Missouri
Supreme Court Building
207 W. High St.
P.O. Box 899
Jefferson City, MO  65102
573-751-3321

Steve Carter
Attorney General of the State of Indiana
302 W. Washington St.
Indianapolis, IN  46204
317-232-6201

Stephen N. Six
Attorney General of the State of Kansas
Memorial Hall, 2nd Floor
120 S.W. 10th Ave.
Topeka, KS  66612
785-296-2215

James D. "Buddy" Caldwell
Attorney General of the State of Louisiana
P.O. Box 94005
Baton Rouge, LA  70804
225-326-6705

Douglas F. Gansler
Attorney General of the State of Maryland
200 St. Paul Place
Baltimore, MD  21202-2202
410-576-6300

Mike Cox
Attorney General of the State of Michigan
G. Mennen Williams Bldg., 7th Flr.
525 W. Ottawa St.
PO Box 30212
Lansing, MI  48909-0212
517-373-1110

Jim Hood
Attorney General of the State of Mississippi
P.O. Box 220
Jackson, MS  39205
601-359-3680

Mike McGrath
Attorney General of the State of Montana
Department of Justice
P.O. Box 201401
Helena, MT  59620-1401
406-444-2026

Jon Bruning
Attorney General of the State of Nebraska
2115 State Capitol
Lincoln, NE  68509
402-471-2682

Current as of 6/17/08

Kelly A. Ayotte
Attorney General of the State of New Hampshire
33 Capitol St.
Concord, NH  03301
603-271-3658

Gary King
Attorney General of the State of New Mexico
PO Drawer 1508
Santa Fe, NM  87504-1508
505-827-6000

Roy Cooper
Attorney General of the State of North Carolina
9001 Mail Service Center
Raleigh, NC  27602-9001
919-716-6400

Nancy H. Rogers
Attorney General of the State of Ohio
State Office Tower
30 E. Broad St., 17th Floor
Columbus, OH  43215-3428
614-466-4320

Hardy Myers
Attorney General of the State of Oregon
1162 Court St., NE
Salem, OR  97301-4096
503-378-4732

Patrick Lynch
Attorney General of the State of Rhode Island
150 S. Main St.
Providence, RI  02903
401-274-4400

Catherine Cortez Masto
Attorney General of the State of Nevada
100 N. Carson St.
Carson City, NV  89701-4717
775-684-1100

Anne Millgram
Attorney General of the State of New Jersey
P.O. Box 080
Trenton, NJ  08625-0080
609-292-8740

Andrew Cuomo
Attorney General of the State of New York
The Capitol
Albany, NY  12224-0341
518-474-7330

Wayne Stenehjem
Attorney General of the State of North Dakota
State Capitol
600 E. Blvd. Ave., Dept. 125
Bismarck, ND  58505
701-328-2210

W.A. Drew Edmondson
Attorney General of the State of Oklahoma
313 NE 21st St.
Oklahoma City, OK 73105
405-521-3921

Tom Corbett
Attorney General of the Commonwealth of Pennsylvania
16th Floor, Strawberry Square
Harrisburg, PA  17120
717-787-3391

Henry McMaster
Attorney General of the State of South Carolina
P.O. Box 11549
Columbia, SC  29211
803-734-3970

Larry Long
Attorney General of the State of South Dakota
1302 E Hwy 14
Suite 1
Pierre, SD  57501-8501
605-773-3215

Greg Abbott
Attorney General of the State of Texas
Capitol Station
P.O. Box 12548
Austin, TX  78711-2548
512-463-2100

William H. Sorrell
Attorney General of the State of Vermont
109 State St.
Montpelier, VT  05609-1001
802-828-3171

Current as of 6/17/08

Rob McKenna
Attorney General of the State of Washington
1125 Washington St., SE
PO Box 40100
Olympia, WA  98504-0100
360-753-6200

J.B. Van Hollen
Attorney General of the State of Wisconsin
PO Box 7857
Madison, WI  53707-7857
606-267-2774

Robert E. Cooper, Jr.
Attorney General of the State of Tennessee
P.O. Box 20207
Nashville, TN  37202-0207
615-741-5860

Mark Shurtleff
Attorney General of the State of Utah
Utah State Capitol Complex
350 N. State St., Suite 230
Salt Lake City, UT  84114-2320
801-538-9600

Robert F. McDonnell
Attorney General of the Commonwealth of Virginia
900 E. Main St.
Richmond, VA  23219
804-786-2071

Darrell McGraw
Attorney General of the State of West Virginia
State Capitol Complex
Bldg. 1, Room E-26
Charleston, WV  25305
304-558-2021

Bruce A. Salzburg
Attorney General of the State of Wyoming
123 Capitol Building
200 W. 24th St.
Cheyenne, WY  82002
307-777-7841

# Exhibit D

**LEGAL NOTICE**

## If you purchased or leased a Chrysler or Dodge vehicle with certain factory installed Continental tires or purchased proper replacement Continental tires since 2003, your rights may be affected by a proposed class action settlement.

*Para una notificación en Español, llamar o visitar nuestro website.*

A settlement has been proposed in a class action lawsuit regarding warranties on certain tires manufactured by Continental Tire North America ("Continental").

The United States District Court for the District of New Jersey has authorized this notice. The Court will hold a hearing to consider final approval of the settlement.

### ARE YOU AFFECTED?

You are a Class Member and may be eligible to receive a payment if you purchased or entered into a lease transaction for certain Chrysler, Dodge or other vehicles between January 1, 2003 and July 14, 2008 that came equipped with tires manufactured by Continental or if during this time period you purchased certain Continental tires as proper replacement tires.

| Eligible Tires |
| --- |
| P215/65R17 98T ContiTouringContact with Conti*Seal |
| P225/60R18 99H ContiTouringContact with Conti*Seal |
| P225/60R18 99H ContiTouringContact without Conti*Seal |

### WHAT IS THIS CASE ABOUT?

The lawsuit alleged that Continental breached certain warranties and violated a consumer fraud statute relating to the tires listed above between 2003 and 2008. Continental denies all wrongdoing. The Court did not decide which side was right. Instead, the parties have decided to settle this case. The parties believe that the proposed settlement is fair, reasonable and adequate and that it will provide substantial benefit to the Class.

### WHAT DOES THIS SETTLEMENT PROVIDE?

The settlement will provide between $5 million and $8 million to pay claims to eligible Class Members, subject to certain terms, requirements and deductions as described in the Settlement Agreement.

### HOW DO YOU ASK FOR A PAYMENT?

To be eligible for a payment if you are a Class Member, you must send in a completed claim form **postmarked by September 15, 2010**.

| Affected Vehicles | |
| --- | --- |
| Chrysler 300 | Dodge Magnum SXT |
| Chrysler 300 Touring | Dodge Magnum R/T |
| Chrysler 300 Limited | Dodge Charger SE |
| Chrysler 300C | Dodge Charger SXT |
| Dodge Magnum SE | Dodge Charger R/T |

or other cars or trucks on which the
Eligible Tires were proper replacements

### WHAT ARE YOUR OPTIONS?

If you are a Class Member, you may (1) do nothing; (2) send in a claim form; (3) exclude yourself; or (4) object.

If you don't want to be legally bound by the settlement, you must exclude yourself by letter **postmarked by September 15, 2008**. If you exclude yourself, you can't get a payment from this settlement, but you can sue Continental on your own for these claims. If you stay in the Class, you may object to the settlement if your objection is **received by September 15, 2008**. The detailed notice describes how to file a claim, object, or exclude yourself and provides other important information. The Court will hold a hearing in this case (*McGee v. Continental Tire North America*, No. 2:06-CV-06234 (D.N.J.)) on **October 21, 2008 at 12:00 noon** in the Federal Courthouse, courtroom 4E, Trenton, NJ to consider final approval of the settlement, payment of attorneys' fees and expenses of up to $2.25 million and related issues. You may appear at the hearing, but you don't have to.

### HOW CAN YOU GET MORE INFORMATION?

If you have questions or want a detailed notice, claim form or other documents, visit **www.tiresettlement.com** or call, toll-free, 1-800-430-8741, or request a notice and claim form by writing to Administrator, P.O. Box 9287, Dublin, OH 43017-4687.

**www.TireSettlement.com**