<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| | : | |
| WILLIAM W. MCGEE, on behalf of | : | |
| himself and others similarly situated | : | |
| Plaintiff, | : | Civ. No. 06-6234 (GEB) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| CONTINENTAL TIRE NORTH | : | |
| AMERICA, INC. | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**BROWN, Chief Judge**

This matter comes before the Court upon (1) the joint motion of Lead Plaintiff William

W. McGee ("McGee") and defendant Continental Tire North America, Inc. ("CTNA") for final

approval of class action settlement [Docket No. 80]; and (2)  Class Counsel's motion for an

award of attorney's fees and reimbursement of expenses [Docket No. 73].  A fairness hearing

was held on October 21, 2008. This Court, having considered the parties' written submissions

and oral argument, and for the reasons discussed herein, will grant both motions.

I.      **BACKGROUND**

On December 27, 2006, McGee initiated this consumer class action on behalf of all

persons who purchased CTNA's ContiSeal model tires since 2004 against CTNA and

Continental AG in connection with premature wear on certain lines of Continental Tires. (Def.'s Br. at 2-3 [Docket No. 87]) (Pl.'s Br. at 1 [Docket No. 88]).[1]  McGee asserted five claims on behalf of the class: (1) violations of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2310; (2) breach of express warranty; (3) breach of implied warranty; (4) declaratory relief; and, (5) on behalf of a subclass of New Jersey resident purchasers, violations of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 et seq. *Id*. 1-2; Def.'s Br. at 3. [2]

On February 28, 2007, CTNA filed a motion to dismiss McGee's MMWA violation claim and request for declaratory relief. [Docket No. 8].[3] On July 18, 2007, the case was reassigned to this Court [Docket No. 28] and on August 27, 2007, this Court denied CTNA's motion but directed McGee to file an Amended Complaint addressing certain Class Action Fairness Act of 2005 ("CAFA") jurisdictional requirements.  (Mem. Op. and Order [Docket Nos. 31 and 32].  The Court also denied McGee's motion to appoint an interim class counsel [Docket No. 11] on that date.  (Order [Docket No. 33]).

McGee filed an Amended Complaint on August 31, 2007 [Docket No. 34], and CTNA filed its Answer on September 20, 2007 [Docket No. 35.  After several months of discovery and

---

[1] The "Class" is more fully defined in the Court's Order Preliminarily Certifying Class, Approving Settlement and Providing for Notice, dated June 12, 2008. [Docket No. 48].

[2] Both parties note that Robert Reibstein ("Reibstein" and together, with McGee "Named Plaintiffs") instituted an action in the Pennsylvania Court of Common Pleas, Philadelphia County, on December 22, 2006 against CTNA in which substantially similar allegations were made, and that this action was later removed to federal court for the Eastern District of Pennsylvania (the "Reibstein Action").  (Def.'s Br. at 3 n. 1; Pl.'s Br. at 2 (citing *Reibstein v. Continental Tire North America, Inc*., No. 2:07-CV-302LP (E.D. Pa.))).

[3] By a stipulation approved on June 29, 2007 [Docket No. 26], Continental AG was dismissed from the instant action without prejudice.

subsequent settlement negotiations, the parties entered into a Settlement Agreement (the "Settlement Agreement") on June 12, 2008 to resolve this matter and the Reibstein Action. [Docket No. 45].  Pursuant to the Settlement Agreement, CTNA has agreed to pay at least $5 million and up to $8 million to resolve the action.  (Pl.'s Br. at 9; *see also* Settlement Agreement § III.A.  Further, unless the amount reaches $8 million, the Settlement Agreement provides that the amounts will be used to pay: (i) valid and timely Class Members' claims; (ii) any incentive awards to the named plaintiffs; (iii) Class Counsel's fees and costs awarded by the Court; (iv) any and all notice and claim processing administrative fees and costs; and (v) any and all bank related fees and costs.  (Settlement Agreement § III.A).

On June 12, 2008, the Court entered an Order Preliminarily Certifying Class, Approving Settlement, Appointing Class Counsel, Directing the Issuance of Notice to the Class, Scheduling a Fairness Hearing and Issuing Related Orders ("Preliminary Approval Order"). [Docket No. 48]. For purposes of settlement, the Court preliminarily found that the Class satisfied the certification requirements of Federal Rule of Civil Procedure ("Rule") 23(a) and (b)(3). *Id.* at ¶ 2. Additionally, the Court preliminarily approved the settlement of the case in accordance with the Settlement Agreement. *Id.* at ¶ 5.

Pursuant to the Preliminary Approval Order, notice of the proposed Settlement Agreement was sent via first class mail to 285,998 potential members of the Class ("Notice"). (Affidavit of Jeanne C. Finnegan ("Finnegan Aff."), ¶ 20 [Docket No. 81]. Notice was also published in over 900 newspapers throughout the United States by way of *Parade Magazine* and *USA Weekend* on August 3, 2008 and Notice was also provided to the appropriate state and federal government officials as required by CAFA on June 19. 2008. *Id.* at ¶¶ 23, 24. Finally,

CTNA also established an official website to provide internet notice as well as a 24-hour toll free telephone helpline where callers could also obtain information regarding the settlement. *Id.* at ¶¶ 25, 26.

The deadline for Class members to object to the settlement or exclude themselves from the Class was September 15, 2008. (Notice, attached as Exh. C to Finnegan Aff.)  Twenty-three ("23") objections were filed in opposition to the proposed Settlement Agreement (the "Objections"). [*See* Docket Nos. 50-65, 68-69, 74-77].[4]  However, four objectors withdrew their objections prior to the October 21, 2008 fairness hearing [*see* Docket Nos. 79, 94-95], leaving a total of nineteen ("19") objections. Additionally, Seventy-five ("75") Class members timely requested to be excluded from the class. (Affidavit of Jennifer M. Keough ("Keough Aff."), ¶ 3 [Docket No. 82].[5]

On October 6, 2008, the parties filed the present joint motion for final approval of the settlement. In addition to final approval of the Settlement Agreement, the parties seek: (1) final certification of the Class for settlement purposes only; (2) a finding that the Notice was the best

---

[4]The Court notes that, although only 22 objections were filed with the Clerk of this Court, Defendant indicates that another Class Member, Mrs. Win Sroufe, also objected to the Plan ("Sroufe Objection). (Def.'s Br. at 4 n. 3).  Although it does not appear that the Sroufe Objection has been filed with the Clerk of this Court, the Court will nevertheless consider it and Defendant's arguments in response to it in determining whether the Settlement Agreement should be approved.

[5]On September 4, 2008, Robert G. Wuller Jr. submitted a document entitled "Confession of Judgment in Favor of Defendant." [Docket No. 78].  On September 12, 2008, Jeremy Schuster also submitted a letter to this court. [Docket No. 66]. It appears that, through these documents, Messrs. Wuller and Schuster indicate that they do not believe that they have a claim against CTNA with respect to the instant class action.  As such, while the Court notes these documents' submission, it also finds that Messrs. Wuller and Schuster do not object to the Settlement.

4

practicable notice under the circumstances and satisfied all Constitutional and other

requirements; (3) confirming Class Members who have submitted timely requests for exclusion;

(4) dismissing the action with prejudice; (5) retaining jurisdiction over the enforcement and

implementation of the Settlement Agreement; and (6) issuing a permanent injunction.

Finally, Lundy, Flitter, Beldecos & Berger, P.A. and Donovan Searles, LLC (collectively,

"Class Counsel"), counsel to Named Plaintiffs and to the Class, also filed a motion requesting

payment of $2,250,000 in attorney's fees and $24,983.71 in expenses as well as incentive awards

to Named Plaintiffs totaling $7,000 ($3,500 to each). (Pls.' Attorney's Fees Br. at 4 [Docket No.

70]).  No objections have been filed to the request for attorney's fees and expenses nor to the

incentive awards. *Id*. at 31.

## II.    DISCUSSION- JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A.    Fairness of Class Action Settlement

#### 1.    Standard of Review For the Judicial Approval of a Class Action Settlement

Under Rule 23(e), the district court must approve any settlement in a class action, and

direct reasonable notice to all class members who may be bound by such settlement. Fed. R. Civ.

P. 23(e). Approval is warranted only if the settlement is "fair, reasonable, and adequate." *Id.*

Acting as a fiduciary responsible for protecting the rights of absent class members, the court is

required to "independently and objectively analyze the evidence and circumstances before it in

order to determine whether the settlement is in the best interest of those whose claims will be

extinguished." *In re Cendant Corp. Litig*., 264 F.3d 201, 231 (3d Cir. 2001) (citations omitted).

This determination rests within the sound discretion of the court. *Girsh v. Jepson*, 521 F.2d 153,

156 (3d Cir. 1975).

In *Girsh*, the Third Circuit identified nine factors that a district court should consider when determining whether a proposed class action settlement warrants approval.  *Id.* at 157. These factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005) (citing *Girsh*, 521 F.2d at 157). The burden of proving that these factors weigh in favor of approval rests on the proponents of a settlement. The *Girsh* factors, however, "do not provide an exhaustive list of factors to be considered when reviewing a proposed settlement." *In re AT&T Corp. Secs. Litig.*, 455  F.3d 160, 165 (3d Cir. 2006).[6]  The Court may take these other factors into consideration, if appropriate, in order to determine whether final approval is warranted.

The  "[a]pproval of a plan of allocation of a settlement fund in a class action is governed

---

[6]Other relevant factors include: "[T]he maturity of the underlying substantive issues, as measured by the experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved- or likely to be achieved- for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorney's fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 323 (3d Cir. 1998).

by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." *Karcich v. Stuart* (*In re Ikon Office Solutions, Inc., Sec. Litig.*), 194 F.R.D. 166, 184 (E.D. Pa. 2000) (citations and internal quotations omitted); *see also Walsh v. Great Atlantic & Pacific Tea Co.*,726 F.2d 956, 964 (3d Cir. 1983) ("The Court's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.")

### 2.    Application of the *Girsh* Factors

Based on the facts and circumstances of this case, as discussed below, the Court concludes that the *Girsh* factors indicate that approval of the proposed settlement is warranted.

### a.    Complexity, Expense and Likely Duration of the Litigation

This class action involves hundreds of thousands of Class Members.  If it were to proceed to trial, the parties would be required to conduct further discovery, hire expert witnesses and complete further briefings on various matters.  Further, CTNA states that, should the litigation continue, it would contest certification of a single nationwide litigation class and that, if it were successful in arguing against the certification of such a class, "Class Counsel would be left with filing and prosecuting numerous single-state class actions, which would arguably suffer from fatal defects, making them uncertifiable as litigation classes." (Def.'s Br. at 16-17). As such, it is clear that litigation of this matter would be time-consuming, uncertain and expensive and that approval of the Settlement would secure a "prompt and efficient resolution of the Class' claims permitting substantial recovery without further litigation, delay, expense or uncertainty." *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 237 (D.N.J. 2005).  Thus, this factor weighs heavily in favor of settlement.

7

### b.      The Reaction of the Class to the Settlement

As described above, Notice was mailed to 285,998 potential class members. (Finnegan Aff., ¶ 20.) Notice was also published in over 900 newspapers throughout the United States by way of *Parade Magazine* and *USA Weekend* on August 3, 2008 and was also provided to the appropriate state and federal government officials as required by CAFA . *Id.* at ¶¶ 23, 24. CTNA also established an official website to provide internet notice as well as a 24-hour toll free telephone helpline. *Id.* at ¶¶ 25, 26. In response to this notice, a mere 23 objections were filed in opposition, with only 19 objections still outstanding.  This figure represents less that .0001% of the Class.  Further, no federal or state officials have objected to the Settlement.  As the Third Circuit articulated in *In re Rite Aid*, "such a low level of objection is a 'rare phenomenon.'" *In re Rite Aid*, 396 F.3d at 305. Consequently, the Court concludes that the small number of objections by Class Members to the Settlement, heavily weighs in favor of approval.

Further, only 75 Class Members, or .02%, timely chose to opt out of the Settlement (the "Opt Outs"). (Keough Aff., ¶ 3.)  Of those Opt Outs, fifty-three ("53") gave no reason for their request to be excluded.  (Def.'s Br. at 18). Of the remaining twenty-two ("22") Opt Outs, several requested to be excluded because they did not have a problem with their tires and a few stated that they believed CTNA was being sued unjustly.  (Def.'s Br. at 18-19)  Such a small number of Opt Outs in relation to the size of the Class also strongly favors approval of the Settlement.  *See O'Keefe v. Mercedes-Benz*, 214 F.R.D. 266, 295 (E.D. Pa. 2003) (holding that where only .02% of the Class opted out, "such implicit support of the settlement weighs heavily in favor of settlement.")

### c.      The State of Proceedings and the Amount of Discovery

The Court should consider this factor to evaluate "the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Cendant*, 264 F.3d at 235 (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.* 55 F.3d 768, 813 (3d Cir. 1995)).  In the instant case, the parties have conducted extensive discovery, motion practice and expert consultation, which has enabled them to evaluate the merits of the case, the risk of litigation and the value of settlement. *Id.* Based upon the amount of time expended in negotiations and the extent of the discovery process, the Court finds that Class Counsel had a thorough appreciation for the merits of the case prior to settlement. Accordingly, the Court concludes that this factor cuts strongly in favor of settlement.

### d.    Risks of Establishing Liability

This factor should be considered to "examine what potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *Cendant*, 264 F.3d at 237 (quoting *GM Trucks*, 55 F.3d at 814). "The inquiry requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" *In re Safety Components Int'l, Inc. Secs. Litig.*, 166 F.Supp.2d 72, 89 (D.N.J.2001) (quoting *Prudential Ins.*, 148 F.3d at 319).

To succeed at trial, Plaintiffs must prove the elements of its claims for (1) MMWA violations; (2) breach of express warranty; (3) breach of implied warranty; (4) declaratory relief; and, (5) the New Jersey Consumer Fraud Act.  While McGee's claims for MMWA violations and declaratory relief have survived one motion to dismiss, McGee contends that other substantial obstacles to resolution still remain, including class certification and the maintenance of the class

through the duration of trial as well as proving liability for the entire claims period. (Pl.'s Br. at 16-17).

This case involves difficult factual and legal issues which would have translated into protracted litigation and accumulating expenses, in both time and money. Accordingly, the Court finds that this Girsch factor weighs strongly in favor of approval.

### e.      Risks of Establishing Damages

This factor also "attempts to measure the expected value of litigating the action rather than settling it at the current time." *Cendant*, 264 F.3d at 238 (quoting *GM Trucks*, 55 F.3d at 816). McGee contends that damages would have been aggressively contested at trial, with both sides presenting expert testimony on the subject, and as such it would be difficult to predict with certainty which testimony would be credited.  (Pl.'s Br. at 18-19).  CTNA also recognizes that there may be several factual and legal impediments that Class Counsel would need to overcome to establish damages, including the fact that the majority of the Class Members may not yet have experienced abnormal or premature treadwear on eligible tires and that other Members may not be entitled to damages under state warranty claims or state consumer protection claims.  (Def.'s Br. at 27 (citing *O'Keefe*, 214 F.R.D. at 301)). Thus, the Court agrees that a significant risk exists in establishing both liability and damages, and concludes this factor strongly weighs in favor of approval.

### f.      Risks of Maintaining the Class Action Through the Trial

There is a risk that class certification in this case would not be maintained though trial. The class has been certified for settlement purposes only, and if this case were to proceed to trial CTNA contends that they would contest class certification on various grounds and further argue

that the risk remains that the class could be decertified at a later stage. (Def.'s Br. at 16). For this

reason, the Court concludes that this factor weighs slightly in favor of approval of the settlement.

### g.     Ability of the Defendants to Withstand Greater Judgment

The seventh factor concerning the ability of defendants to withstand a greater judgment

also slightly favors approval. In *Cendant*, the Third Circuit interpreted this factor as concerning

"whether the defendants could withstand a judgment for an amount sufficiently greater than the

Settlement." *Cendant*, 264 F.3d at 240. Although there is no indication that CTNA has or will

develop serious financial problems, "to withhold approval of a settlement of this size because the

defendants could withstand a greater judgment would make little sense." *In re Automotive*

*Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29161, at *22 (E.D.

Pa. Sept. 27, 2004). Further, CTNA, in addition to the multi-million dollar settlement amount,

has committed to pay Class Counsel's fees and expenses. (Pls.' Mot. for Attorney's Fees at 2). In

light of these considerations, the Court finds that this factor weighs slightly in favor of approval**.**

### h.     Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and Range of Reasonableness of the Settlement Fund to a Possible Recovery in Light of All the Attendant Risks of Litigation.

The eighth and ninth factors concerning the range of reasonableness of the settlement

fund in light of the best possible recovery and the attendant risks of litigation weigh in favor of

settlement. "The fact that a proposed settlement may only amount to a fraction of the potential

recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and

should be disapproved. The percentage recovery, rather must represent a material percentage

recovery to plaintiff in light of all the risks considered under *Girsh*." *In re Cendant Corp. Sec.*

*Litig.*, 109 F.Supp.2d 235, 263 (D.N.J.2000) (citation and quotations omitted). Here, McGee argues, and the Court agrees, that the settlement is more than reasonable because it secures recovery of cash benefits for Class Members with tread wearout before 30,000 miles despite the fact that Continental's written warranty expressly excluded coverage for premature treadwear. (Pl.'s Br. at 20). Further, the relief provided to Class Members is not subject to reduction for expenses and attorney's fees. In light of the foregoing as well as the previously discussed risks and expenses inherent in litigating this matter, these factors weigh in favor of approval.

### 3.    Summary of the Girsh Factors

In conclusion, the Court finds that factors one through five all weigh heavily in favor of approval of the Settlement. Factors six through nine weigh slightly or moderately in favor of approval. The Settlement was reached after arm's-length negotiations between experienced, capable counsel after a significant amount of discovery. Consequently, the Court finds that none of the Girsh factors weigh against settlement. As the above analysis demonstrates, the Court concludes that the settlement of between $5 million and $8 million represents an excellent result for the Class considering the substantial risks Plaintiffs face, the immediate benefits provided and the absence of any guarantee of a favorable verdict. Accordingly, the Court approves the Settlement.

### 4.    Objectors' Arguments

As stated above, the arguments set forth by the small number of objectors are not persuasive. No objections were made concerning the total amount of the Settlement Agreement. The bases for the outstanding 19 objections are as follows: (1) the amount available to the individual objector under the Settlement Agreement [*see* Docket Nos. 50, 52-54, 56, 58, 65, and

76-77]; (2) the time period in which Class Members must file their claims [*see* Docket Nos. 63,68-69, and 75]; (3) that the Settlement does not provide for as much reimbursement as was provided by the treadwear warranty provided on certain replacement Continental tires [*see* Docket No. 60]; (4) that the "Black Side Wall" type of tires were not included in the Settlement [*see* Docket No. 55; Sroufe Objection]; (5) and that the mileage cutoff to obtain reimbursement was 30,000 miles [*see* Docket Nos. 51, 59, and 64].

With respect to the objections regarding the individual reimbursement amounts, the Settlement Agreement provides for the reimbursement of a significant amount of the purchase price of the tires at issue in this action.  (Pl.'s Resp. at 3 (replacement value for the 17" Continental tire falls between 78% and 98% of the cost of replacement and the replacement value for the 18" Continental tire falls between 72% and 96% of the cost of replacement)).  This amount is reasonable in light of the size of the class and the fact that, as McGee points out, any class settlement, must involve compromise.  *Id.* at 3.  Further, those objecting to the claim filing deadline were apparently under the mistaken impression that they had to have replaced their tires by July 14, 2008 when in reality the replacement deadline is September 15, 2010. (*Id.* at 4). Class Counsel has contacted each of the Class Members who objected on that basis to alert them of the accurate deadline.  *Id.* (citing Certification fo Cary L. Flitter ("Flitter Certif."), ¶¶ 13-14 & Exh. A).  Class Counsel has also addressed the objector's concern regarding the treadwear warranty on her replacement Continental tires, having negotiated that any Class Member may submit both a warranty claim to the Continental Warranty Department and the Claims Administrator herein, and that both claims will be honored without offset. (Pl.'s Resp. at 5 (citing Affidavit of Harald Morgenstern, [Docket No. 83]; Flitter Certif., ¶ 17).  Class Counsel has also notified the two

13

objectors that "Black Side Wall" type of tires are in fact included in the settlement. (Pl.'s Resp. at 4 n. 3 (citing Certification fo Michael D. Donovan ("Donovan Certif."), ¶ 3 & Exh. B)).  Finally, Class Counsel argues that, when agreeing to a 30,000 mile cutoff, it considered both CTNA's positions taken during settlement discussions as well as the fact that those Class Members who replaced their tires after fewer miles received less value than those who replaced them after more miles and decided that the  "negotiated ceiling . . . reflected a fair mileage return under the circumstances consistent with typical consumer expectations." *Id.* at 5-6 (citing Flitter Certif. at ¶¶ 3-4, 12, 22).  Thus, despite these few objections, for the reasons stated above, this Court concludes that the Plan satisfies the standard set forth in Federal Rule 23(e).

### B.     Class Certification for Purposes of Settlement

In its Preliminary Approval Order, the Court conditionally certified the Settlement Class, defined in the Settlement Agreement as:

> [A]ll persons or entities that purchased or received Eligible Tires as part of an automobile purchase or lease transaction and/or purchased or received Eligible Tires to replace other tires, including, but not limited to, Eligible Tires.

Settlement Agreement § II.A.10.  Further, the Settlement Agreement also defined "Eligible Tires" as "Continental's tires, with or without sealant, purchased or otherwise obtained as new tires by Class Members during the Class Period" that meet certain enumerated specifications and "Class Period" is defined as "from January 1, 2003 up to and including the date of the first dissemination of the Summary Settlement Notice or Class Notice, whichever is earlier." *Id.* at § II.A.13,17.  The Court also preliminarily approved Messrs. McGee and Reibstein as  and class representatives, who are themselves represented by Class Counsel.

14

Rule 23 of the Federal Rules of Civil Procedure requires this Court to engage in a two-step analysis to determine whether it should certify a class action for settlement purposes. First, the Court must determine whether Plaintiffs have satisfied the prerequisites for maintaining a class action as set forth in Fed. R. Civ. P. 23(a). If Plaintiffs can satisfy these prerequisites, the Court must then determine whether the alternative requirements of Rule 23(b)(2) or 23(b)(3) are met. *See* Fed. R. Civ. P. 23(a) Advisory Committee's note. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997).

### 1.    Rule 23(a) Requirements

Rule 23(a) provides that class members may maintain a class action as representatives of a class if they show the court that:

(a) the class members are so numerous that joinder of all members is impracticable;

(b) the action addresses questions of law or fact common to the class;

(c) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and

(d) the class representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

### a.    Numerosity

Courts will ordinarily discharge the prerequisite of numerosity if the class is so large that "joinder of all members is impracticable." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th

Cir. 1998). Plaintiffs "need not precisely enumerate the potential size of the proposed class, nor [are] plaintiff[s] required to demonstrate that joinder would be impossible." *Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540, 543 (D.N.J. 1999).

In this case, over 280,000 notices were mailed to potential class members nationwide who purchased Eligible Tires as defined by the Settlement Agreement. "There can be no serious question that joinder of all these parties, geographically dispersed throughout the United States, would be impracticable." *In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 247 (S.D. Tex.1978). The class thus easily satisfies the numerosity requirement, as "numbers in excess of forty, particularly those exceeding one hundred or one thousand have sustained the [numerosity] requirement." *Weiss v. York Hosp.*, 745 F.2d 786, 808 n. 35 (3d Cir. 1984).

### b.      Commonality

Plaintiffs must demonstrate that there are questions of fact or law that are common to the class to satisfy the commonality requirement, though the Third Circuit has determined that the threshold to satisfy the requirement is "not high." Fed. R. Civ. P. 23(a)(2); *In re School Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986). "[C]ommonality does not require an identity of claims or facts among class members"; rather, "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001) (citation omitted). Class treatment is not precluded "[e]ven where individual facts and circumstances do become important to the resolution [of a case]." *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994).

In this case, there are many common questions of law and fact. As McGee notes, these

16

include, *inter alia*, (1) whether CTNA, acting individually or collectively with its agents, failed to conduct appropriate, reasonable and adequate testing of the ContiSeal tires to determine the durability and longevity of the tires and their conformity to the reasonable expectations of consumers in the United States and New Jersey; (2) whether CTNA, acting individually or collectively with its agents, failed to warn or otherwise inform McGee and other members of the Class and Subclass of the premature and abnormal wear caused by degradation of the tread on the ContiSeal tires; (3) whether CTNA omitted to adequately disclose and/or affirmatively concealed, in its affirmations and promotional materials, among other things, the premature and/or abnormal wear associated with the use of ContiSeal tires; (4) whether CTNA violated the MMWA, the Uniform Commercial Code and common law; and (5) whether CTNA engaged in unconscionable commercial practices, including the failure to abide by the terms of a written warranty and/or bait and switch tactics, in connection with warranty assertions, interpretations, claims and denials, in violation of the New Jersey Consumer Fraud Act. (Pl.'s Br. at 23).   The commonality requirement is clearly satisfied here.

### c.   Typicality

The typicality requirement "is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." Fed. R. Civ. P. 23(a)(3). As with numerosity, the Third Circuit has "set a low threshold for satisfying" typicality, holding that "[i]f the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established." *Newton*, 259 F.3d at 183-84; see also *Baby Neal*, 43 F.3d at 58. The typicality requirement "does not mandate that all putative class members share identical claims." *Newton*, 259 F.3d at 84; *see also Hassine v.*

*Jeffes*, 846 F.2d 169, 176-77 (3d Cir. 1988).

Here, the claims made by Named Plaintiffs and those made on behalf of the Class Members are indistinguishable, encompassing identical allegations that CTNA committed violations of the MMWA and New Jersey Consumer Fraud Act and breaches of implied and express warranty.  These claims arise in each case from for the premature wear of specific lines of Continental's Tires. Consequently, the Named Plaintiffs' claims are typical of those brought by the Class Members at large. *See, e.g., Bogosian Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977) (finding that because "[t]he claims pressed by the representatives are identical to those which they press on behalf of the class generally," the named plaintiffs' claims satisfied the typicality requirement); *Grasty v. Amalgamated Clothing and Textile Workers Union*, 828 F.2d 123, 130 (3d Cir.1987), *cert. denied*, 484 U.S. 1042 (1988) (finding the typicality requirement met because the claims brought by the named plaintiffs and those brought on behalf of the class "stemmed from a single course of conduct").

### d.      Adequacy of Representation

The Third Circuit has held that the final requirement of Rule 23(a), that the class representatives "fairly and adequately protect the interests of the class," can be deemed met only after two factors are satisfied: (i) that counsel for the class is "qualified, experienced, and generally able to conduct the proposed litigation" and (ii) that the class representatives "must not have interests antagonistic to those of the class." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992); *accord Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 630 (3d. Cir.1996); *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975).

As to the first factor, Class Counsel, Lundy, Flitter, Beldecos & Berger, P.A. and

Donovan Searles, LLC, have successfully prosecuted many class actions, including many

consumer class actions, in this circuit and elsewhere. (Pl.'s Br. at 25).  Michael D. Donovan, co-

lead Class Counsel, is a principal in the law firm Donovan Searles, LLC. (Donovan Certif., ¶ 1).

He graduated from Vermont Law School *cum laude* in 1984 and has served as co-lead counsel in

dozens of securities and consumer justice class actions, having argued before the United States

Supreme Court in *Smiley v. Citibank (South Dakota) N.A.*, No. 95-860, 116 S. Ct. 806 (argued

Apr. 24, 1996). (Certification of Michael D. Donovan in Support of Motion for Attorney's Fees

[Docket No. 73-3] ("Donovan Fees Certif.")).  Cary L. Flitter, who also serves as co-lead

counsel, graduated from Delaware Law School of Widener University in 1981; is admitted to

practice law before many courts, including the United State Supreme Court, the United States

Court of Appeals for the Third, Fourth and Eighth Circuit; and has guest lectured at various

academic institutions on consumer class action litigation and litigation conferences over the past

twenty-seven years.  (Certification of Cary L. Flitter in Support of Motion for Attorney's Fees

[Docket No. 73-2] ("Flitter Fees Certif.")  These attorneys are thus clearly "well qualified and

experienced class action attorneys who have been involved in similar . . . litigation around the

country." *In re Warfarin Sodium Antitrust Litig*., 212 F.R.D. 231, 250 (D. Del. 2002), *aff'd*, 391

F.3d 516 (3d Cir. 2004).

As to the second factor, in order to find an "antagonism between [named plaintiffs']

objectives and the objectives of the [class]", there would need to be a "legally cognizable conflict

of interest" between the two groups. *Jordan v. Commonwealth Financial Systems, Inc.*, 237

F.R.D. 132, 139 (E.D. Pa. 2006). In fact, courts have found that a conflict will not be sufficient to

defeat class action "unless [that] conflict is apparent, imminent, and on an issue at the very heart

of the suit." *In re Flat Glass Antitrust Litigation*, 191 F.R.D. 472, 482 (W.D. Pa. 1999) (citing *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 513 (S.D.N.Y. 1996)). Here, it is clear that the Named Plaintiffs' interests are not antagonistic to those of the absent class members. The central questions in this case regarding CTNA's alleged conduct, and the impact of that conduct on both the name Named Plaintiffs and the absent class members, animates in an identical fashion the claims of both groups. In addressing these common questions, the Named Plaintiffs have advocated as vigorously for the absent class members as they have for themselves. Consequently, the adequacy requirement has been met. With this last requirement satisfied, it is clear that the class in this case has demonstrated compliance with each of the four prongs of Rule 23(a).

### 2.    The Requirements of Rule 23(b)(3)

The Court must next address the question of whether the class action also comports with the requirements of either Rule 23(b)(3) or Rule 23(b)(2). McGee has asked this Court to consider only whether the class meets the standards set forth in Rule 23(b)(3), which requires the court to find both that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).  As explained below, the class action in this case readily meets these requirements of predominance and superiority.

### a.    Questions of Law and Fact Common to the Class Predominate

To satisfy the predominance requirement, parties must do more than merely demonstrate a "common interest in a fair compromise"; instead, they must provide evidence that the proposed

class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). However, the "presence of individual questions . . . does not mean that the common questions of law and fact do not predominate." *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir.1985) (finding that, in the context of a securities class action, even the presence of individual questions as to the reliance of each individual class member did not negate the predominance of the class's common claims).

Here, as discussed in the sections on commonality and typicality, the identical claims of both the Named Plaintiffs and the absent class members arise from the same set of facts regarding the common design and manufacture of specific lines of Continental tires that proved to yield consistently lower wear than should reasonably be anticipated.  Consequently, the predominance requirement is satisfied.

### b.        A Class Action is Superior to Other Available Methods

To demonstrate that a class action is "superior to other available methods" for bringing suit in a given case, the Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." *Georgine*, 83 F.3d at 632 (citing *Katz v. Carte Blanche Corp*., 496 F.2d 747, 757 (3d Cir.1974) (*en banc*), *cert. denied*, 419 U.S. 885 (1974)). One consideration is the economic burden that class members would have to bear in bringing suits on a case-by-case basis; class actions have been held to be especially appropriate where it would be "it would be economically infeasible for [individual class members] to proceed individually." *Stephenson v. Bell Atlantic Corp*., 177 F.R.D. 279 (D.N.J.1997). Another consideration is judicial economy.  In a case with many thousands or even millions of class members, whose individual cases would each "require[ ] weeks or months" to

litigate, would result in "needless duplication of effort" by all parties and the court, and would raise the very real "possibility of conflicting outcomes," the balance may weigh "heavily in favor of the class action." *In re Corrugated Container Antitrust Litigation*, 80 F .R.D. 244, 252-53 (D.C. Tex.1978); *see also Klay v. Humana, Inc*., 382 F.3d 1241 (11th Cir.2004) (finding a class action to be the superior method because it was costly, inefficient, and would burden the court system to "forc[e] individual plaintiffs to repeatedly prove the same facts and make the same legal arguments before different courts"); *Sollenbarger v. Mountain States Tel. & Tel. Co.*, 121 F.R.D. 417, 436 (D.N.M.1988) (finding that, in contrast to the multiple lawsuits that members of a class would have to file individually, the "efficacy of resolving all [of] plaintiffs' claims in a single proceedings is beyond discussion").

To litigate the individual claims of even a tiny fraction of the 285,998 potential class members would place a heavy burden the judicial system and require unnecessary duplication of effort by all parties.  In addition, the parties have already conducted a significant amount of discovery; as such, it would also not have been economically feasible for most of the class members to seek individual redress. The litigation of such claims in one action is thus far more desirable than numerous separate actions litigating the same issues. The superiority requirement is therefore met in this case.

### 3.    Conclusion with Respect to Class Certification

Because McGee has satisfied all of the requirements under Fed.R.Civ.P. 23(a) and the requirements of Fed.R.Civ.P. 23(b)(3), this Court certifies the proposed class for purposes of this settlement.

**III.    DISCUSSION- MOTION FOR ATTORNEY'S FEES**

Class Counsel also filed a motion requesting payment of $2,250,000 in attorney's fees and $24,983.71 in expenses as well as incentive awards to the Named Plaintiffs totaling $7,000 ($3,500 to each). (Pls.' Attorney's Fees Br. at 4).

**A.    Standard for Judicial Approval of Fees**

The awarding of fees is within the discretion of the court, so long as the court employs the proper legal standards, follows the proper procedures, and makes findings of facts that are not clearly erroneous. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 727 (3d Cir. 2001). Notwithstanding this deferential standard, a district court is required to clearly articulate the reasons which support its conclusion. *In re Rite Aid*, 396 F.3d at 301. The Third Circuit identified several factors that a district court should consider. These factors include:

> (1) the size of the fund created and the number of persons benefitted;
> (2) the presence or absence of substantial objections by members of the
> class to the settlement terms and/or fees requested by counsel; (3) the skill
> and efficiency of the attorneys involved; (4) the complexity and duration of
> the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to
> the case by plaintiff's counsel; and (7) the awards in similar cases.

*Id.* at 301 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000)). The Court need not apply these fee award factors in a formulaic way. Certain factors may be afforded more weight than others. *In re Rite Aid*, 396 F.3d at 301.  The Third Circuit emphasized in *In re Rite Aid*, however, that the district court must engage in a robust assessment of these factors. *Id.* at 302; see also *Gunter*, 223 F.3d at 196 (vacating district court's ruling because the fee-award issue was resolved in a "cursory and conclusory" fashion).

In the instant case, a common fund was recovered for the benefit of Class members and

CTNA has agreed to pay attorney's fees in addition to this common fund.  (Pls.' Attorney's Fees Br. at 2).[7]  As such, Class Counsel argues, and the Court agrees, that this case is analogous to *In re Insurance Brokerage*, MDL No. 1663, Civ. Nos. 04-5184, 05-1079, 2007 U.S. Dist. LEXIS 74711  (D.N.J. Oct. 5, 2007), where this Court analyzed a fee petition with a similar structure under the common fund doctrine.  (Pls.' Attorney's Fees Br. at 12 (citing *In re Insurance Brokerage*, 2007 U.S. Dist. LEXIS 74711 at *43 (citing *Varacallo*, 226 F.R.D. at 249)).

"Relevant law evidences two basic methods for evaluating the reasonableness of a particular attorneys' fee request -- the lodestar approach and the percentage-of-recovery approach. Each has distinct attributes suiting it to particular types of cases." *In re Prudential Ins. Co. of America Sales Practices Litig. (Prudential I),* 962 F. Supp. 450, 478 (D.N.J. 1997).  The percentage-of-recovery method is used in common fund cases where the attorney's fees and the clients' award are drawn from the same source, as Courts have determined that "class members would be unjustly enriched if they did not adequately compensate counsel responsible for generating the fund." *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 128 (D.N.J. 2002). "While either the lodestar or percentage-of-recovery method should ordinarily serve as the primary basis for determining the fee, the Third Circuit has instructed that it is sensible to use the alternative method to double check the reasonableness of the fee." *Prudential I*, 962 F. Supp. at 478.

**B.      Application of the Gunter Factors**

---

[7]The Court notes that Class Counsel indicates that these fees may be offset against the common fund amounts before any *cy pres* or extended claims period is proposed should the claims of class members fall below either the low ($5 million) or high ($8 million) amounts of the Settlement. (Pls.' Attorney's Fees Br. at 2).

The Court finds that the totality of the Gunter factors weighs strongly in favor of approval of the fee award for the same reasons provided in this Court's previous analysis of the *Girsh* factors.  Given the similarity and overlap of the *Girsh* factors with the factors the Court must consider here, the Court incorporates by reference the reasons given above for approval of the Settlement. The Court will now discuss additional reasons that support approval of attorneys' fees in this matter.

### 1.      Size of the Fund Created and Number of Persons Benefitted

With regard to the size and nature of the common fund and the number of persons benefitted by the Settlement, Class Counsel was able to obtain the significant result of no less than $5 million and as much as $8 million for of the Class, plus notice and administration costs, attorney's fees and reimbursement expenses, despite the substantial risks of establishing liability and damages. Further, a significant number of people are expected to benefit from this award considering the Notices of Settlement were sent to over 280,000 of potential Class Members. Further, this award will also not be reduced by attorney's fees and expenses. As such, this factor weighs in favor of approval.

### 2.      Presence or Absence of Substantial Objections by Members of the Class to Settlement Terms and/or Fees Requested by Counsel

The absence of substantial objections by class members to the fees requested by Class Counsel strongly supports  approval. There are only 19 outstanding objections to the settlement and no objections to Class Counsel's petition for fees. As such, this factor weighs in favor of approving the fee application.

### 3.      Skill and Efficiency of Attorneys

The factor concerning the skill and efficiency of the attorneys prosecuting the action also favors approval of the fee award. As previously discussed, Class Counsel are highly skilled attorneys with experience in consumer class action litigation. The substantial Settlement amount negotiated by Class Counsel further evidences their competence. *In re Warfarin Sodium Antitrust Litig*, 212 F.R.D. at 261 (D. Del. 2002) (class counsel "showed their effectiveness . . . through the favorable cash settlement they were able to obtain"). Moreover, CTNA was represented by highly skilled attorneys from a prominent firm with experience in these matters. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsel's work.").

### 4.  The Complexity and Duration of the Litigation

As noted above in the Court's approval of the Settlement, this factor weighs strongly  in favor of approval. This action involved the complexities of measuring damages, establishing classwide liability, defects in design and choice of law issues.  Further, Class Counsel engaged in extensive discovery and motion practice, and the litigation of this matter was a costly and lengthy process for all parties. *See In re Warfarin Sodium Antitrust Litig*., 391 F.3d 526, 535-36 (3d Cir. 2004).

### 5.  The Risk of Non-Payment

Class Counsel submits that they undertook this action on a contingent fee basis, assuming a substantial risk that they might not be compensated for their efforts. Class Counsel contends that courts recognize the risk of non-payment as a major factor in considering an award of attorney's fees. *See In re Prudential-Bache Energy Income P'ships Sec. Litig*., No. 888, 1994 U.S. Dist. LEXIS 6621, *16 (E.D. La. May 18, 1994) (stating that "[c]ounsel's contingent fee risk

is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable."). Class Counsel invested a substantial amount of time and effort to reach this point and obtain the favorable Settlement. Class Counsel accepted the responsibility of prosecuting this class action on a contingent fee basis and without any guarantee of success or award. Accordingly, this factor weighs in favor of approval.

### 6. The Amount of Time Devoted to the Litigation

Class Counsel claims that they have devoted a substantial amount of time to litigate this action. Specifically, Class Counsel submits that through September 15, 2008, they spent nearly 2,000 hours in prosecuting this case on behalf of the Settlement Class for an aggregate lodestar of approximately $860,138 and have incurred $24,983.71 in expenses. (Pls.' Attorney's Fees Br. at 22).  Class Counsel asserts that a large portion of that time was devoted to document and data analyses related to the development of a suitable and defensible structure for a class wide settlement. *Id.* at 22. Based on the amount of time expended on this matter and the number of attorneys involved in the negotiation and ongoing litigation, this factor weighs in favor of approval.

### 7. Awards in Similar Cases

The Court must also take into consideration amounts awarded in similar actions when approving attorneys' fees. Specifically, the Court must: (1) compare the actual award requested to other awards in comparable settlements; and (2) ensure that the award is consistent with what an attorney would have received if the fee were negotiated on the open market. *In re  Direct Purchaser Antitrust Litig*., No. 03-0085, 2005 U.S. Dist. LEXIS 27013, *42-*46 (D.N.J. Nov. 9,

2005). "Courts within the Third Circuit often award fees of 25% to 33 1/3% of the recovery." *In re Remeron Direct Purchaser Antitrust Litig*, No. 03-0085, 2005 U.S. Dist. LEXIS 27013 at \*44 (D.N.J. Nov. 9. 2005) (citing *In re Linerboard Antitrust Litig*., 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. June 2, 2004) (approving 30% fee of a $202 million settlement in an antitrust class action); *GM Trucks*, 55 F.3d at 822 (3d Cir. 1995) (in common fund cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund" (citation omitted)); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000) ("the award of one-third of the fund for attorneys' fees is consistent with fee awards in a number of recent decisions within this district"); *In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS 10532, at \*43 (citing with approval "a recent Federal Judicial Center study that found that in federal class actions generally median attorney fee awards were in the range of 27 to 30 percent.").

According to Class Counsel, the requested award in this matter is as low as 22% and no more than 31% of the common fund. (Pls.' Attorney's Fees Br. at 23).   This percentage is below or within the range found acceptable in this district.

The second part of this analysis involves whether the requested fee is consistent with a privately negotiated contingent fee in the marketplace.  The percentage-of-the-fund method of awarding attorney's fees in class actions should approximate the fee which would be negotiated if the lawyer were offering the services in the private marketplace. *In re Remeron*, 2005 U.S. Dist. LEXIS 27013, at \*45-\*46. "The object . . . is to give the lawyer what he would have gotten in the way of a fee in an arms' length negotiation, had one been feasible." *In re Continental Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992); *In re Synthroid Marketing Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) ("When deciding on appropriate fee levels in common-fund cases,

courts must do their best to award counsel the market price for legal services, in light of the risk

of nonpayment and the normal rate of compensation in the market at the time." (citations

omitted)). To determine the market price for an attorney's services, the Court should look to

evidence of negotiated fee arrangements in comparable litigation. *In re Continental Illinois Sec.*

*Litig.*, 962 F.2d at 573 (stating that the judge must try to simulate the market "by obtaining

evidence about the terms of retention in similar suits, which differ only because, as they are not

class actions, the market fixes the terms"). "Attorneys regularly contract for contingent fees

between 30% and 40% with their clients in non-class, commercial litigation." *In re Remeron*

*Direct Purchaser Antitrust Litig.*, 2005 U.S. Dist. LEXIS 27013, at * 46 (citing *In re Ikon Office*

*Solutions, Inc*. 194 F.R.D. 166, 194 (E.D. Pa. 2000)); *Durant v. Traditional Invest., Ltd.*, No.

88-9048, 1992 U.S. Dist. LEXIS 12273, *7 n. 7 (S.D.N.Y. Aug. 12, 1992). Accordingly, Class

Counsel's requested fee amount is within the range of privately negotiated contingent fees.

### 8.    Conclusion

In sum, for all the reasons stated above, the Court concludes that the requested fee by

Class Counsel is fair and reasonable according to the Gunter factors.

### C.    Lodestar Cross-Check

The Third Circuit has articulated that when an award is based on percentage of recovery,

it is sensible to confirm the reasonableness of the award using the lodestar method. *In re Rite*

*Aid*, 396 F.3d at 305-06. The lodestar analysis is performed by "multiplying the number of hours

reasonably worked on a client's case by a reasonable hourly billing  rate for such services based

on the given geographical area, the nature of the services provided, and the experience of the

attorneys." *Id.* at 305. When performing this analysis, the court "should apply blended billing

rates that approximate the fee structure of all the attorneys who worked on the matter." *Id.* at 306. Thus, the lodestar multiplier is equal to the proposed fee award divided by the product of the total hours and the blended billing rate. If the lodestar multiplier is large, the award calculated under the percentage-of-recovery method may be deemed unreasonable, and a trial judge may consider reducing the award appropriately. *Id.*

The multiplier, however, "need not fall within any pre-defined range, provided that the [d]istrict [c]ourt's analysis justifies the award." *Id.* at 307. Further, the court is not required to engage in this analysis with mathematical precision or "bean-counting." *Id.* at 306. Instead, the court may rely on summaries submitted by the attorneys, and is not required to scrutinize every billing record. *Id.* at 306-07.

In the present case, the proposed fee award presented by Class Counsel is 22% and no more than 31% of the common fund, or $2,250,000. (Pls.' Attorney's Fees Br. at 23).  Class Counsel submits that the total number of hours expended by the attorneys and paraprofessionals in this case as of September 19, 2008 is 1956.62 hours. *See* Flitter Fees Certif. & Donovan Fees Certif. at Exhs. A. The Court further notes that this lodestar value is based on the blended billing rates of all attorneys and paraprofessionals who were involved with this case. Accordingly, the Court accepts these calculations as the basis for performing the lodestar cross-check.

Class Counsel claims that its lodestar is $860,138.[8]  Class Counsel submits that this

---

[8] The Court will rely upon the December 29, 2006 settlement date in performing the lodestar cross-check. See *Varacallo*, 226 F.R.D. at 252 (D.N.J. 2005) (fee award will be sole compensation for counsel "despite the continuing responsibilities [counsel] will have in responding to Class Member inquiries, assisting the Claim Evaluator, consulting on individual cases, and any post-judgment proceedings and appeals."); *In re Remeron*, 2005 U.S. Dist. LEXIS 27013 (D.N.J. 2005) , at *42 ("Class Counsel will likely incur hundreds of additional hours in connection with administering the settlement, without prospect for further fees." (citation

results in a multiplier of approximately 2.6. (Pls.' Attorney's Fees Br. at 26, 26 n. 10). This multiplier is within an accepted range. See, e.g. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 734, 742 (approving a suggested multiplier of 3 and stating that multipliers "ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied") (citation omitted); *Nichols v. Smithkline Beecham Corp.*, 2005 U.S. Dist. LEXIS 7061, at *79 (approving a multiplier of 3.15); *In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS 10532, *49-*50 (approving a 2.66 multiplier).

The reasonable attorney rate is determined by reference to the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989) ("we have consistently looked to the marketplace as our guide to what is 'reasonable'"). The Third Circuit, as well as other courts, have held that an attorney's customary billing rate is the proper starting point for calculating fees. *Cunningham v. City of McKeesport*, 753 F.2d 262, 268 (3d Cir. 1985). However, the Third Circuit has determined that once a party meets its prima facie burden of establishing the "community market rate," and the opposing party does not produce contradictory evidence, the trial court does not have discretion to adjust the requested rate downward. *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996).

To establish a market rate, the prevailing party must offer evidence that the attorney's usual rate is in line with the market rate in the community. *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). This evidence takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate, *Glover v. Johnson*, 934 F.2d 703, 716 (6th Cir. 1991), and a court may not vary the rates competently set forth in uncontested affidavits. *Black Grievance Comm. v.*

_____

omitted)).

*Philadelphia Elec. Co.*, 802 F.2d 648, 657 (3d Cir. 1986) (*vacated on other grounds*, 483 U.S. 1015 (1987). The market rate to be used is the current prevailing market rate at the time the request for fees is made. *Lanni v. New Jersey*, 259 F.3d 146, 149-50 (3d Cir. 2001) (citation omitted).

Messrs. Litter and Donovan state that their hourly rates are $495 and $600, respectively. (Flitter Fees Certif, Exh. A; Donovan Fees Certif., Exh. A).  Class Counsel has submitted several declarations from counsel in New Jersey and elsewhere attesting that their own hourly rates as consumer class attorneys range from $410 to $700 and also stating their belief that Messrs. Litter and Donovan fees and the fees of their associates are reasonable in light of market rates.  *See* Declarations of Lisa J. Rodriguez, Sherrie R. Savett, Jonathan Shub, Michael J. Boni, Christopher Placitella and Mark A. Kearney (Docket Nos. 73-4 through 73-8). In light of this evidence as well as the lack of objections to attorney's fees and the experience of Class Counsel, this Court will consider Class Counsel's hourly rate reasonable.

### D.    Reimbursement of Expenditures

Class Counsel also requests reimbursement for expenses incurred during this litigation. Class Counsel incurred expenses in the amount of $24,983.71. (Def.'s Br. at 28 (citing Flitter Fees Certif. & Donovan Fees Certif. at Exhs. B)).  "Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig*., 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (citing *Abrams v. Lightolier, Inc*., 50 F.3d 1204, 1225 (3d Cir. 1995)) (further citations omitted). Class Counsel contends that these expenses reflect costs expended for the purposes of litigating this action, including fees for experts, document

translations and foreign service of process, document copying, notice consultations, electronic legal research, court fees, travel and lodging, expenses, meals, mail and long distance telephone expenses. (Pls.' Attorney's Fees Br. at 29). The Court concludes that these expenses were reasonably and appropriately incurred during the prosecution of this case. Consequently, the Court approves Class Counsel's request for reimbursement.

### E.    Incentive Awards for Named Plaintiffs

Class Counsel also requests that the Court approve the payment of incentive awards for Named Plaintiffs in the amount of $3,500 each, totaling $7,000. Class Counsel contends that the Named Plaintiffs spent a significant amount of their own time and expense litigating these cases for the benefit of the absent members of the Settlement Class, and should be compensated for their efforts. *Id.; see also In re Lorazepam & Clorazepate Antitrust Litig*., 205 F.R.D. 369, 400 (D.D.C. 2002) ("Incentive awards are 'not uncommon in class action litigation and particularly where . . . a common fund has been created for the benefit of the entire class.'") (citation omitted). Class Counsel claims that the amount requested for the class representatives is similar to awards in analogous settlements. (Pls.' Attorney's Fees Br. at 30-31) (citing *Perry v. Fleetboston Financial Corp.*, 229 F.R.D. 105, 125 (E.D. Pa. 2005) (awarding $5,000 to each of three class representatives); *Greenwich Pharms. Secs. Litig.*, No. 92-3071, 1995 U.S. Dist. LEXIS 5717, at *20 (Apr. 27, 1995) (awarding $5,000 to five class representatives); *In re SmithKline Beckman Corp. Sec. Litig*., 751 F. Supp. 525, 535 (E.D. Pa. 1991) (awarding $5,000 to class representatives)).

In light of the foregoing and because no objections were made to the requested amount, and as such, this Court will approve the $3,500 payment of incentive awards for each Named

Plaintiff, totaling $ 7,000.

**IV.     CONCLUSION**

For these reasons, the parties' joint motion for final approval of class action settlement

[Docket No. 80]; and (2)  Class Counsel's motion for an award of attorney's fees and

reimbursement of expenses [Docket No. 73] are granted. An appropriate form of order is filed

herewith.

Dated: March 4, 2009

        /s/ Garrett E. Brown, Jr.
        GARRETT E. BROWN, JR., U.S.D.J.